**JON M. SANDS**
Federal Public Defender
District of Arizona

**SYLVIA J. LETT** (Ariz. Bar No. 017326)
**LETICIA MARQUEZ** (Ariz. Bar No. 017357)
Assistant Federal Public Defenders
407 West Congress Street, Suite 501
Tucson, Arizona 85701-1310
Telephone: (520) 879-7614
Facsimile: (520) 622-6844

Counsel for Petitioner

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barry Lee Jones, | NO: CV 01-0592-TUC-FRZ |
| Petitioner, | |
| v. | DEATH PENALTY CASE |
| Dora B. Schriro, et al., | SUPPLEMENT TO SUPPLEMENTAL BRIEF RE: FUNDAMENTAL MISCARRIAGE OF JUSTICE AND EVIDENTIARY DEVELOPMENT AS TO CLAIM 1D |
| Respondents. | |

Petitioner, Barry Lee Jones ("Petitioner") hereby submits this Supplement to his Supplemental Brief on his fundamental miscarriage of justice claim and evidentiary development request as to Claim 1D. This Court ordered Petitioner to file a Supplemental Brief on September 28, 2004. [Dist. Ct. Doc. No. 115]. As was fully

1

explained in the *"Schlup* innocence" Supplemental Brief, evidence of Petitioner's actual innocence may serve as a gateway to have this Court hear Claim 1D (ineffectiveness of trial counsel) on the merits to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 315-16 & n. 32 (1995). [Dist. Ct. Doc. No. 128].

Petitioner is actually innocent of first degree murder. In light of the reliable, newly presented supplemental information (attached as Exhibits 1, 2 and 3), *id.*, 513 U.S. at 324, "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329.

**I.     Evidence of Petitioner's *Schlup* Innocence.**

**Exhibit 1:   Supplemental Report by Joel Hardin (Forensic Footprint Examiner)**

Exhibit 1 is a report dated June 19, 2008, by Joel Hardin, a forensic footprint examiner retained by Petitioner's habeas counsel to identify any footprint markings on the victim's body. Based on his 40 years of forensic footprint examinations in a variety of conditions, Hardin identified at least three footprint impressions on the victim's body. The barefoot impressions he identified "are impacted solidly on [the victim's] body as though 'stomped' deliberately trying to cause bruising or pain." Ex. 1 at ¶ 2. The first footprint impression is "of a right foot, impressed solidly, just below the rib cage on the stomach area." Ex. 1 at ¶ 1. The second and third

2

impressions are "of a left foot appearing on the left side of the stomach midline, just below the rib cage on the stomach area." Ex. 1 at ¶ 1. These impressions indicate a double stomping as they are superimposed on top of each other. Ex. 1 at ¶ 1.

In other words, Hardin sees barefoot footprints indicating that someone stomped on the victim's abdomen. Hardin's forensic analysis of the footprint bruises on Rachel Gray's body generally indicate that they were caused by a child between the ages of 4 and 8 years old. Ex. 1 at ¶ 2.

**Exhibit 2:   Supplemental Report by Janice J. Ophoven, M.D. (Pediatric Forensic Pathologist)**

Exhibit 2 is a supplemental report dated July 25, 2008, by Dr. Janice J. Ophoven, a pediatric forensic pathologist who noted, in her initial report, that in her opinion the bruises on the victim's abdomen had the appearance of footprints. Dr. Ophoven recommended that a footprint expert should evaluate the bruise pattern for evidence of possible foot or shoe marks on the abdomen of the victim. Based on Dr. Ophoven's review of Hardin's analysis that the bruises were barefoot imprints consistent with a small person such as a child 5-10 years of age, she reports that Rachel Gray's internal injuries "are consistent with stomping type blunt force trauma . . . consistent with a child or small person stomping or jumping on [the victim's] abdomen." Ex. 2 at ¶ 4.

**Exhibit 3:   Declaration of George E. Barnett (Trial Investigator)**

Exhibit 3 is a supplemental declaration dated January 1, 2008, by George E. Barnett, who was trial counsel's investigator in the case.[1] In addition to Barnett's 18 years as a private investigator, he served the Tucson Police Department (TPD) for 22 years. His time with TPD included assignment as lead investigator for at least 12 homicides. Ex. 3 at ¶ 2. Of the dozens of homicides Barnett investigated, this case is the only one "where [he] was strongly influenced that the person was not guilty." Ex. 3 at ¶ 16 (emphasis added).

Barnett's declaration describes how his inadequate funding of $500 precluded him from following up on many leads that he believes would have enabled him to "prove [Petitioner's] innocence." Ex. 3 at ¶ 3. Upon meeting with defense counsel, Barnett requested additional funds to pursue those leads that he said would have corroborated his belief that Petitioner was innocent. Ex. 3 at ¶ 6. However, trial counsel never requested more funds and told Barnett, "it is over and done with now." Ex. 3 at ¶ 6. The next Barnett heard of the case was a newspaper account of Petitioner's conviction, at which point Barnett "was surprised that [he] was never called to testify." Ex. 3 at ¶ 6.

Of the many leads Barnett would have pursued are numerous allegations of physical and sexual abuse of the victim, Rachel Gray, by family members and other

---

[1] Mr. Barnett submitted a previous declaration as Exhibit 16 to Petitioner's Second Motion to Expand the Record. [Dist. Ct. Doc. No. 89].

4

adults and children in the area, and investigation into the alleged murder weapon. Ex. 3 at ¶¶ 8-11. Of particular note, however, is Barnett's statement that he would have contacted Stephanie Fleming and her family. Ex. 3 at ¶ 11. Through interviews with Petitioner's neighbors, Barnett learned that one of Stephanie Fleming's children allegedly hit the victim in the stomach the day before her death. Barnett also learned that the victim was seen playing with other children the day before her death. Finally, Barnett also heard that when Stephanie Fleming was told that her children could have caused the victim's death, she packed up her entire family and within hours of Petitioner's arrest, had fled the mobile home park permanently. Ex. 3 at ¶ 11.

Even with Barnett's limited investigation, "[I]t was evident to [Barnett] that [Petitioner] was not involved in the death of Rachel Gray." Ex. 3 at ¶ 4. Further, Barnett told Petitioner's trial counsel that he believed Petitioner was innocent. Ex. 3 at ¶ 6.

## II. Conclusion

For the reasons stated above as well as those articulated in Petitioner's *Schlup* innocence Supplemental Brief [Dist. Ct. Doc. No. 128], this Court should hold that Petitioner has proven his actual innocence, providing a gateway to hear Claim 1D on the merits. In the alternative, if this Court is not satisfied that Petitioner has sufficiently demonstrated his innocence, an evidentiary hearing on the innocence issue

must be held so that he may present additional proof of his innocence, in order to pass through the gateway exception to procedural default.

Respectfully submitted this 28th day of July, 2008.

**JON M. SANDS**
Federal Public Defender
District of Arizona

**SYLVIA J. LETT**
**LETICIA MARQUEZ**
Assistant Federal Public Defenders


By  s/Sylvia J. Lett
   **SYLVIA J. LETT**
   Counsel for Petitioner

CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of July, 2008, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants[2]:

J. D. NIELSEN, Assistant
Office of the Attorney General
1275 West Washington
Phoenix, Arizona 85007-2997

KRISTINE FOX
Capital Case Staff Attorney
United States District Court


By: s/Tamelyn McNeill
    Tamelyn McNeill
    Secretary, Capital Habeas Unit
    Federal Public Defender's Office

---

[2] Hand delivery of Exhibit 1 (Joel Hardin Report) to this Supplement was hand-delivered to Capital Case Staff Attorney, Kristine Fox, and Assistant Attorney General, J.D. Nielsen. A Motion for Leave to file said exhibit non-electronically has been filed with this Court.