**Exhibit 72**

# DECLARATION OF PHILLIP W. ESPLIN, Ed.D.

I, Phillip W. Esplin, Ed.D., declare the following:

1.  I am a psychologist licensed to practice in the State of Arizona. I am currently licensed by the Arizona Board of Psychologist Examiners and have been so licensed since November 1978. I hold License #0769.

2.  I received my Bachelor of Science from Utah State University, Logan, Utah in 1967 with a major in psychology. I received my Master of Arts in psychology in 1973 and by Doctorate of Education in Psychology in 1978 from Northern Arizona University, Flagstaff, Arizona.

3.  My curriculum vitae, which reflects my education and experience, is true and correct [See curriculum vitae, attached hereto as Exhibit A].

4.  In addition to my private forensic practice, I am currently a senior research consultant with the National Institute of Child Health and Development: Child Witness Research Project. I have co-coauthored several scientific publications involving child witnesses. [See list of publications, attached hereto as Exhibit B].

5.  I am co-author of a text, "Tell Me What Happened: Structured Investigative Interviews of Child Victims and Witnesses." The book proves an overview of research regarding factors that affect child witnesses, along with suggested investigative practices for eliciting complete and accurate accounts from child victims and witnesses.

6.  I am familiar with the scientific and clinical literature regarding "autobiographical memory" as well as the scientific literature on factors that can affect the reliability of memories for personally experienced and witnessed events.

7.  I am familiar with the scientific and clinical literature as it pertains to "post event circumstances that can influence the alteration and/or creation of "genuine but mistaken recollections." I am also familiar with both laboratory and field studies addressing the issue of "witness confidence in the memory" versus the "accuracy of the recollection."

8.    I have qualified as an expert witness in the area of child psychology, child sex abuse, child witnesses, and memory in multiple jurisdictions. [See list of previous testimony, attached hereto as Exhibit C].

9.    At the request of counsel for Barry Lee Jones (Mr. Jones), I reviewed numerous documents related to the testimony of child witnesses in Mr. Jones's case.  I was asked to provide analysis using my expertise to determine and render a professional opinion regarding the interview techniques used on pivotal child witnesses and whether there was a likelihood of misidentification by the child witnesses due to the way they were interviewed.

10.    The materials I reviewed are listed in the report I prepared in this case are included in the report I prepared in this case. [See report attached hereto as Exhibit D].

11.    My impressions and professional opinions set forth in my report of October 8, 2009 are true and correct and I incorporate that report in this sworn oath. [See report attached hereto as Exhibit D].

        I declare under penalty of perjury under the laws of the United States of America and the State of Arizona that the foregoing is true and correct.

Executed this _8th_ day of _October_, 2009 in Phoenix, Arizona.

PHILLIP W. ESPLIN, Ed.D.
Psychologist

Exhibit A

# Phillip W. Esplin, Ed.D.
## Psychologist

4242 N. 56th Street, Phoenix, Arizona 85018
Phone (602) 943-0288  FAX (602) 943-9407

## VITAE

Professional Background

### 1982-Present

Private Practice-Forensic Psychology
ODI - Consultant

Area of Special Interest - Children, Youth and Families.

Psychological Evaluations:

Criminal Competency
Civil Competency
Evaluations Regarding Aggravation/Mitigation  Proceedings
Parental Evaluations Regarding Dependency and Severance Issues
Victim Impact Evaluations (Evaluations Regarding Impacts of Trauma
and Psychotherapeutic Treatment Needs)
Evaluations Regarding Custody and Visitation Issues
Evaluations Involving Allegations of Parental Maltreatment in Divorce Settings
Psychological Investigations in "Hostile Work Environments"

Senior Research Consultant (1988 – September 2006)

National Institute of Child Health and Human Development

Child Witness Research Project - Contract #md 007035

Contact Psychologist:

Michael E. Lamb, Ph.D.
Professor of Psychology in the Social Sciences
Cambridge University

Update:  September, 2009

**1976-1982**

President

Behavior Evaluation Specialist Teams, Inc.
(A Private Psychological Group Practice)
Provided Psychological Evaluations and Clinical Services to Adults,
Adolescents, Children, and Families.

Inpatient Psychological Consultant

Adult Psychiatry, Adolescent Psychiatry, and Child Psychiatry.
Saint Luke's Hospital
Phoenix, Arizona

Contract Psychologist

Arizona Department of Economic Security, Child Protective Services.
Provided Consultation, Evaluation, and Treatment to Dysfunctional
Family Systems.

**1975-1976**

Contract School Psychologist

Arizona Diagnostic Development Project.
Performed Psychological Diagnostic Evaluations Under the Supervision
of Dr. Leo Munoz to the Arizona Job Corps and Workman's Compensation Fund.

**1974-1975**

Doctoral Intern in School Psychology

Tempe Elementary School District.
SPARC - Special Program Aimed at Reaching Children.
   (A Federally Funded Demonstration Project Cosponsored by Tempe
   Elementary School District and Tri City Mental Health Clinic.)
Performed Psychological Evaluations, Program Consultations, and Behavioral
Therapy with Parents of Special Education Children.

**1971-1974**

Doctoral Student

Northern Arizona University

Graduate Research Assistant

Northern Arizona Comprehensive Guidance Center
Supervisor  - Dr. Clay Moore, Jr.

Graduate Research Assistant

Northern Arizona University
Supervisor - Dr. Warren Johnson

Teaching Assistantship

Department of Psychology, Northern Arizona University
Supervisor - Dr. Jerry Peterson

Assistant Project Director

Region III Headstart Evaluation Project
Supervisor - Dr. Clay Moore, Jr.

Project Consultant

Federated Cooperative Preschool
Supervisor - Dr. Warren Johnson

## Educational History

Doctorate of Education, in Psychology - 1978

Northern Arizona University, Flagstaff, Arizona
Area of Specialization - Educational Psychology
Program Chairman - Dr. Warren Johnson
Doctoral Dissertation Chairman - Dr. Jerry Peterson

Master of Arts - 1973

Northern Arizona University, Flagstaff, Arizona
Major - School Psychology

Bachelor of Science - 1967

Utah State University, Logan, Utah
Major - Sociology

Minor - Psychology

Exhibit B

## Licensure & Professional Credentials

Licensed Psychologist - 1978

Arizona State Board of Psychologist Examiners License #769

Certified School Psychologist - 1975

Arizona State Board of Education
Certificate 528581793 (not renewed)

## Scientific Publications

Lamb, M.E., Orbach, Y., Sternberg, K.J., Aldridge, J., Pearson, S., Stewart, H.L., Esplin P.W., Bowler, L. Use of a Structured Investigative Protocol Enhances the Quality of Investigative Interviews with Alleged Victims of Child Sexual abuse in Britain, APPLIED COGNITIVE PSYCHOLOGY, 23, 449-467 (2009)

Lamb, M.E., Orbach, I., Hershkowitz, I., Esplin, P., Horowitz, D., A Structured Forensic Interview Protocols Improves the Quality and Informativeness of Investigative Interviews with Children: A Review of research using the NICHD Investigative Interview Protocol, CHILD ABUSE AND NEGLECT, 31, (2007) 1201-1231

Pipe, M.E., Lamb, M.E., Orbach, Y., Esplin, P., Recent Research on Children's Testimony about Experienced and Witnessed Events, DEVELOPMENTAL REVIEW 24 (2004) 440-468

Aldridge, J., Lamb, M., Sternberg, K., Orbach, Y., Esplin, P., Bowler, L., Using a Human Figure Drawing to Elicit Information From Alleged Victims of Child Sexual Abuse, JOURNAL OF CONSULTING AND CLINICAL PSYCHOLOGY, accepted July, 2003

Lamb, M., Sternberg, K., Orbach, Y., Esplin, P., Stewart, H., Mitchell, S., Age Differences in young children's responses to open-ended invitations in the course of forensic interviews, Salt Lake County Children's Justice Center, JOURNAL OF CONSULTING & CLINICAL PSYCHOLOGY, 2003, Vol. 71, No.5, 926-934

Lamb, M., Sternberg, K., Orbach, Y., Esplin, P., Mitchell, S., Is ongoing feedback necessary to maintain the quality of investigative interviews with allegedly abused children? APPLIED DEVELOPMENTAL SCIENCE, 2002, Vol. 6, No. 1, 35-41

Lamb, M., Sternberg, K., Orbach, Y., Hershkowitz, I., Horowitz, D., Esplin, P., The Effects of Intensive Training and Ongoing Supervision on the Quality of Investigative Interviews with Alleged Sex Abuse Victims, APPLIED DEVELOPMENTAL SCIENCE, 2002, Vol. 6, No. 3, 114-125

Sternberg, K., Lamb, M., Orbach, Y., Esplin, P., Mitchell, S., Use of a structured investigative protocol enhances young children's responses to free recall prompts in the course of forensic interviews, JOURNAL OF APPLIED PSYCHOLOGY, 2001, Vol. 86, No. 5, 997-1005

Lamb, M., Sternberg, K., Esplin, P., Effects of Age and Delay on the Amount of Information Provided by Alleged Abuse Victims in Investigative Interviews, CHILD DEVELOPMENT, November/December 2000, Volume 71, Number 6, Pages 1586-1596

Orbach, Y., Hershkowitz, I., Lamb, M., Sternberg, K., Esplin, P., Horowitz, D., Assessing the Value of Structured Protocols for Forensic Interviews of Alleged Child Abuse Victims, CHILD ABUSE AND NEGLECT (2000) Vol. 24, No 6, 733-752

Sternberg, K., Lamb, M., Esplin, P., Baradraan, L., Using A Scripted Protocol in Investigative Interviews: A Pilot Study, APPLIED DEVELOPMENTAL SCIENCE, 1999, 3, 70-76

4

Lamb, M., Sternberg, K., Esplin, P., Conducting Investigative Interviews of Alleged Sexual Abuse Victims, CHILD ABUSE AND NEGLECT  (1998) Vol. 22, 8, 813-823

I.Hershkowitz, M.Lamb, K.Sternberg, P.Esplin, The Relationships Among Interviewer Utterance Type, CBCA Scores, and the Richness of Children's Responses. LEGAL AND CRIMINOLOGICAL PSYCHOLOGY (1997) 2, 169-176

Sternberg, K., Lamb, M., Hershkowitz, I., Yudilevitch, L., Esplin, P., Hovav, M, Effects of Introductory Style on Children's Abilities to Describe Experiences of Sexual Abuse, (1997), CHILD ABUSE AND NEGLECT, Vol. 32, No 11,  1133-1146

Lamb, M. et al., The Effects of Divorce and Varying Custody Arrangements On Children's Behavior, Development, and Adjustment: An Interdisciplinary Consensus Statement. EXPERT EVIDENCE, 1997, 5, 83-88; FAMILY & CONCILIATION COURTS REVIEW, (1997), 35, 393-404.

Horowitz, S., M. Lamb, P. Esplin, T. Boychuk, O. Krispin & L. Reiter-Lavery, (1997) Reliability of Criteria-Based Content Analysis of Child Witness Statements.  LEGAL AND CRIMINALOGICAL PSYCHOLOGY, 2, 11-21

Lamb, M., Sternberg, K., Esplin, P., Hershkowitz, I., Orbach, Y. Assessing the Credibility of Children's Allegations of  Sexual Abuse:  A Survey of Recent Research. (1997)  LEARNING AND INDIVIDUAL DIFFERENCES, Volume 9, Number 2, pages 175-194.

Earl F. Martin, P. Esplin, The Guessing Game:  Emotional Propensity Experts in the Criminal Courts. (1997) LAW AND PSYCHOLOGY REVIEW, Volume 21, pages 30-91.

Lamb, M.,  K. Sternberg, P. Esplin, I. Hershkowitz, Y. Orbach, M. Hovav, Criterion-Based Content Analysis: A Field Validation Study. (1997) CHILD ABUSE & NEGLECT, 21, No.3, 255-264.

Lamb, M.,  K. Sternberg, I. Hershkowitz, P. Esplin, A. Redlich & N. Sunshine, The Relation Between Investigative Utterance Types And The Informativeness of Child Witnesses, JOURNAL OF APPLIED DEVELOPMENTAL PSYCHOLOGY 17, 439-451 (1996).

M. Lamb, I. Hershkowitz, K. Sternberg & P. Esplin, Effects Of Investigative Style on Israeli Children's Responses (1996) INTERNATIONAL JOURNAL OF BEHAVIORIAL DEVELOPMENT 19, 627-637.

Lamb, M., K. Sternberg & P. Esplin, Making Children Into Competent Witnesses: Reactions to the amicus brief in re Michaels, (1995)  PSYCHOLOGY, PUBLIC POLICY AND THE LAW 1, 438-449.

Horowitz, S.,  M. Lamb, P. Esplin, T. Boychuk, O. Krispin & L. Reiter-Lavery, Establishing Ground Truth In Studies Of Child Sexual Abuse. (1995)  EXPERT EVIDENCE Vol 4, 42-51.

Raskin, D.C. & Esplin, P.W., Setting the tone for an interview (1995) The National Resource Center on Child Sexual Abuse News

M. Lamb, K. Sternberg & P. Esplin, Factors Influencing the Reliability and Validity of Statements Made by Young Victims of Sexual Maltreatment, JOURNAL OF APPLIED DEVELOPMENT PSYCHOLOGY (1994) 15, 255-280.

Lamb, M.  et al., The Investigation of Child Sexual Abuse: An Interdisciplinary Consensus Statement, FAMILY LAW QUARTERLY (1994)28,151-162, EXPERT EVIDENCE (1994)2,151-156, JOURNAL OF CHILD SEX ABUSE (1994)3,93-106 & JOURNAL OF CHILD ABUSE AND NEGLECT (1994)18,1021-1028

D. Raskin & P. Esplin, Statement Validity Assessment: Interview Procedures and Content Analysis of Children's Statements of Sexual Abuse, BEHAVIORAL ASSESSMENT Vol.13, 265-91 (1991).

Esplin, P., T. Boychuk & D. Raskin, Application of Statement Validity Analysis, in CREDIBILITY ASSESSMENT: A UNIFIED THEORETICAL AND RESEARCH PERSPECTIVE (NATO Advanced Study Institute, Aquafredda di Maratea, Italy, 1988).

## Books

Lamb, M., Hershkowitz, I., Orbach, Y., Esplin, P.W., "TELL ME WHAT HAPPENED: STRUCTURED INVESTIGATIVE INTERVIEWS OF CHILD VICTIMS AND WITNESSES, Wiley Series in Psychological of Crimes, Policing, and Law, Wiley Publishing, July 2008 (ISBN 978-0-470-51866-3)

## Book Chapters

Pipe, M.E., Sternberg, K.J., Lamb, M.E., Orbach, Y., Stewart, H.L., Esplin, P.W. Factors Associated with Non-disclosure of Suspected Abuse during Forensic Interviews. Chapter In M.E. Pipe, M.E. Lamb, Y. Orbach & A.C. Cederborg (Eds.), CHILD SEXUAL ABUSE: DISCLOSURE, DELAY AND DENIAL, Mahwah, NJ, Lawrence Erlbaum 2007

Saywitz, K., Esplin, P., Romanoff, S.L., A Holistic Approach to Interviewing and Treating children in the Legal System, Chapter in M.E. Pipe, M. Lamb, Y. Orbach, & A.C. Cedarborg (Eds.), CHILD SEXUAL ABUSE: DISLCOSURE, DELAY AND DENIAL. Mahwah, NJ, Lawrence Erlbaum 2007
(Note: Pre-publication title "Forensic and Therapeutic Traditions: Convergence of Opposing Trends")

Lamb, M., Orbach, Y., Warren, A.R., Esplin, P., Hershkowitz, I., In R.C.L. Lindsay, M.P. Toglia, D.F. Ross, & J.D. Read, (Eds.), HANDBOOK OF EYEWITNESS PSYCHOLOGY, Vol. 1, Memory for Events. Enhancing Performance: Factors Affecting the Informativeness of Young Witnesses Mahway, NJ: Lawrence Erlbaum Associates, 2007.

Lamb, M., Orbach, Y., Sternberg, K., Esplin, P., Hershkowitz, I, The Effects of Forensic Practices on the Quality of Information Provided by Alleged Victims of Child Abuse, Chapter prepared for H. Westcott, G.M. Davies & R. Bull (Eds.), CHILDREN'S TESTIMONY: PSYCHOLOGICAL RESEARCH AND FORENSIC PRACTICE, Chichester, England and New York, 1999: Hardback November 2001

Sternberg, K., Lamb, M., Esplin, P., Orbach, Y, Hershkowitz, I., Using a Scripted Protocol to Improve the Quality of Investigative Interviews, Chapter prepared for M. Eisen, G. Goodman, & J. Quas (Eds.), MEMORY AND SUGGESTIBILITY IN THE FORENSIC INTERVIEW. Mahwah NJ: Erlbaum, 2001

Lamb, M., Sternberg, K., Orbach, Y., Hershkowitz, I., Esplin, P., Forensic Interviews of Children, Chapter prepared for A. Memon and R.Bull (Eds.), HANDBOOK OF THE PSYCHOLOGY OF INTERVIEWING, New York and Chichester, England: Wiley, 1999

Raskin, D. & Esplin, P., Assessment of Children's Statements of Sexual Abuse, in THE SUGGESTIBILITY OF CHILDREN'S RECOLLECTIONS (WITH SPECIAL REFERENCE TO THE CHILD WITNESS) 153-64 (J. Doris ed. 1991).

Raskin,D. & Esplin, P., Commentary: Response to Wells, Loftus, and McGough, in THE SUGGESTIBILITY OF CHILDREN'S RECOLLECTIONS (WITH SPECIAL REFERENCE TO THE CHILD WITNESS) 172-76 (J. Doris ed. 1991).

M. Lamb, K. Sternberg & P. Esplin, Interviewing Young Victims of Child Maltreatment, SEXUAL ABUSE OF CHILDREN: THE LAW, INVESTIGATOR, AND THE COURT 109-131 (translated into Hebrew for publication, M. Hovav ed.1993).

## Scientific Papers Presented

Orbach, Y., Lamb, M.E., Sternberg, K.J., Heshkowitz, I., Esplin, P.W.  The NICHD Investigative Interview Protocol: An introduction.  (Paper presented to the Second International investigative Interviewing Conference), Portsmouth UK, July 5-7, 2006

Lamb, M.E., Sternberg, K.J., Orbach, Y., Aldridge, J., Bowler, L., Pearson, S., Esplin, P.W.  Enhancing the quality of investigative interviews by British police officers.    (Paper presented to the Second International investigative Interviewing Conference) , Portsmouth UK, July 5-7, 2006

Symposium: The Next Step in Forensic Interviewing Protocols: Specific Instructions and the Reduction of Lies and Memory Distortions, Discussant:  Phillip W. Esplin. (March 4-7, 2004) (American Psychology-Law Society), Annual Conference, Scottsdale, Arizona

Orbach, Y., Lamb, M.E., Sternberg, K.J., Esplin P.W., Stewart, H., Mitchel, S., Age differences in young children's reports of temporal information in the course of forensic interviews; The Embodied Mind and Consciousness: Developmental Perspectives, 32nd Annual Meeting of the Jean Piaget Society, Philadelphia, Pennsylvania, (June 6-8, 2002)

Lamb, M., Sternberg, K., Orbach, Y., Esplin, P., Stewart, H., & Mitchell, S. Age differences in young children's responses to open-ended invitations in the course of forensic interviews. (March 7-10, 2002) (paper presented to the American Psychology-Law Society Conference, Austin, Texas).

Lamb, M., Sternberg, K., Orbach, Y., Esplin, P., Hershkowitz, I, Horowitz, D., Eliciting information about alleged abuse using open-ended prompts: An analysis of field demonstration studies (March 2000) (paper presented at AP-LS 2000 Biennial Conference, New Orleans, Louisiana).

Orbach, Y., Hershkowitz, I., Lamb, M., Sternberg, K., Esplin, P., Horowitz, D., Assessing the value of scripted protocols for forensic interviews of alleged abuse victims (March 2000) (paper presented at AP-LS 2000 Biennial Conference, New Orleans, Louisiana).

Lamb, M., K. Sternberg, I. Hershkowitz, P. Esplin, Y.Orbach, M. Hovav, Validation of Criterion-Based Content Analysis in a Field Study (March 1996) (paper presented at AP-LS 1996 Biennial Conference, Hilton Head, South Carolina).

Sternberg, K., M. Lamb, I. Hershkowitz, Y. Orbach, M.Hovav, P. Esplin, Effects of Introductory Style on Children's Accounts of Sexual Abuse (March 1996) (paper presented at AP-LS 1996 Biennial Conference, Hilton Head, South Carolina).

Hershkowitz, I. M. Lamb, K. Sternberg, P. Esplin, The Relationships Among Interviewer Utterance Type, CBCA Scores, and the Richness of Children's Responses (March 1996) (paper presented at AP-LS 1996 Biennial Conference, Hilton Head, South Carolina).

M. Lamb & P. Esplin, M. Hovav, T. Manor & L. Yudilevitch, Effects of Investigative Utterance Types on Israeli Children's Responses (March 1994) (paper Presented to a meeting of the American Psychology & Law Society).

M. Lamb & P. Esplin, M. Hovav, T. Manor & L. Yudilevitch, Effects of Investigative Utterance Types on Israeli Children's Responses (March 1994) (paper Presented to a meeting of the American Psychology & Law Society).

Horowitz, S., M. Lamb, P. Esplin, T. Boychuk, O. Krispin & L. Reiter-Lavery, Reliability of Criteria-Based Content Analysis of Child Witness Statements (June 1992) paper presented at the 4th Annual Convention of the American Psychological Society, San Diego, CA

7

## Unpublished Manuscripts

D. Raskin, P. Esplin, & S. Horowitz, INVESTIGATIVE INTERVIEWS AND ASSESSMENTS OF CHILDREN IN SEXUAL ABUSE CASES (unpublished manuscript.)

## Amicus Briefs

California Supreme Court
Nicole Taus vs. Elizabeth Loftus, et al
(2st D.C.A. Civ. No A104689, Solano County Superior Court # FCS02A557)

Commonwealth of Massachusetts, Supreme Judicial Court, Middlesex County # SJC-10382
Commonwealth Appellee v. Paul R. Shanley, Appellant
Brief of Amicus Curiae, The International Committee of Social, Psychiatric, Psychological, Cognitive Science, Neuroscience, and Neurological Scientists

## Professional Seminars & Training Sessions Conducted

"Adolescent Complainants:  Maximizing the Utility of Expert Assistance"

September 18-20, 2008
National Child Abuse Defense & Resource Center
Las Vegas, Nevada

"Investigative interviews utilizing the NICHD Protocol"
"Analyzing the quality of information obtained from Fragile Witnesses"

February 20-21, 2008
Brooklyn Developmental Disabilities Office
Brooklyn, New York

"Teenagers and Inappropriate Sexual Behavior: Why Adolescent Brains and Psychological Development Should Make a Difference in Our Response"

January 17-18, 2008
Prevent Child Abuse Arizona - 19th Statewide Child Abuse Prevention Conference
Mesa, Arizona

"Child Abuse Allegations: Science vs. Junk Science in the Courtroom"

September 28-30, 2006
National Child Abuse Defense & Resource Center
Las Vegas, Nevada

"The Investigation of Child Sex Abuse Crimes:  Issues relating to the forensic  interview"

June 21-23, 2006
Arizona Public Defender Association
Fourth Annual Statewide Conference
Tempe, Arizona

"Factors that affect the reliability of children's statements: A review of the scientific literature"

April 10, 2006
Federal Public Defenders - Southern District of West Virginia
Charleston, West Virginia

"Inaccuracies in Children's Reports: Making Mistakes and Telling Lies"

December 3-4, 2004
Oregon Criminal Defense Lawyers Association– Sex Crimes Seminar
Portland, Oregon

"Psychological Factors Involved in Memory Distortion vs. Intentional Deceit: Forensic Implications; A Review of Relevant Scientific Literature"

October 14-16, 2004
National Child Abuse Defense & Resource Center, 12th International Conference
Las Vegas, Nevada

"Sex Crimes: Legal Aspects of CSAAS & PTSD"

June 24, 2004
Arizona Public Defender Association
Tempe Arizona

Children's Testimonial Competence
"Scientific issues relating to children's competency, credibility, and reliability of evidence: Implication for the legal process"

June 24, 2004
2004 Judicial Conference
Tucson, Arizona

Delinquency: Juveniles Who Commit Sex Offenses
"Child and Adolescent Sex Offenders: Separating Fact from Fiction"

June 25, 2004
Arizona Public Defender Association
Tempe, Arizona

Symposium, "The next step in Forensic Interviewing Protocols: Specific Instructions and the Reduction of Lies and Memory Distortions", Discussant

March 4 – 7, 2004
American Psychology-Law Society (AP-LS) Annual Conference
Scottsdale, Arizona

"Therapeutic and Forensic Themes in Cases of Complicated Disclosure of Abuse", Esplin/Saywitz

August 11-15, 2003
National Institute of Child Health and Human Development & Allmanna Barnhuset Foundation
Conference: "Non-disclosure and delayed disclosure of child sexual abuse"
Stockholm, Sweden

"Inaccuracies in Children's Testimony: Making Mistakes, Telling Lies, and Keeping Secrets"

June 14, 2003
North Carolina Academy of Trial Lawyers
Sunset Beach, North Carolina

9

"Psychological Factors Involved in Memory Distortion vs. Intentional Deceit: Forensic Implications; A Review of the Relevant Scientific Literature"

March 13-15, 2003
11th International Conference of the National Child Abuse Defense & Resource Center
New Orleans, Louisiana

"Scientific Issues Relating to Children's Competency, Credibility, and Reliability of Evidence"

February 14, 2003
Indiana Public Defender Council
Indianapolis, Indiana

"The Use and Misuse of Mental Health Experts in Domestic Relations Matters"

January 17, 2003
11th Annual For Better or For Worse Seminar
State Bar of Arizona
Scottsdale, Arizona

"What the Child Really Said: Factors that could adversely affect the reliability of information obtained from underage children and teenagers"

September 13-14, 2002
Oregon Criminal Defense Lawyers Association Seminar
Newport, Oregon

"Children's Competency and Factors Affecting the Reliability of Statements:  A Scientific Review of Literature"

April 12, 2002
Ohio Association of Criminal Defense Lawyers
Columbus, Ohio

"Assessing the Statements and Testimony of Teenage Complainants"

October 18, 2001
National Child Abuse Defense & Resource Center
Reno, Nevada

"Suggestibility v. Reliability of Children's Statements"

May 11, 2001
Indiana Public Defender Council
Child Molesting Defense Seminar
Indianapolis, Indiana

"Child Competency: When to request a Taint Hearing,  Dealing with Propensity Evidence"

September 14 – 16, 2000
National Child Abuse Defense & Resource Center
Kansas City, Missouri

"Improving Investigative Interview Techniques"

August 27 – September 1, 2000
National Institute of Child Health & Development
Utah State Capitol, Salt Lake City, Utah

"Allegations of Sex Abuse: A detailed analysis of a sex abuse case from beginning to end: from investigation through the predator hearing"

Ohio Association of Criminal Defense Lawyers
In Conjunction with the National Child Abuse Defense & Resource Center
May 12, 2000
Cleveland, Ohio

"Fragile Witnesses: The Susceptibility of Children to External Influences"
University of Washington School of Law, Sponsored by Washington Law School Foundation
and Innocence Project Northwest

April 14, 2000
Seattle, Washington

"Reliability vs. Credibility" and   "How to Analyze Children's Statements and Case Facts: Discrediting Invalid Allegations of Child Abuse"

October 14 - 16, 1999
National Child Abuse Defense & Resource Center, Annual Conference
Las Vegas, Nevada

"Using a Scripted Interview Protocol" in Investigations of Child Sex Abuse Cases

August 12 - 14, 1999
Miles City Police Department & CPS
Miles City, Montana

"Implementing a Scripted Interview Protocol for Forensic Interviews in Child Sex Abuse Cases"

October 30, 1998
Salt Lake City Sheriff's Department
National Institute of Child Health & Development
Salt Lake City, Utah

"Allegations of Child Abuse: The Law, The Science, The Myths, The Reality"

October 22-24, 1998
Las Vegas, Nevada
National Child Abuse Defense & Resource Center

"Developing Investigative Strategies to Resolve Complex Cases"

July 16-17, 1998
Salt Lake County Children's Justice Center
National Institute of Child Health & Development
Salt Lake City, Utah

"Investigative Interviews of Child Victims and Witnesses"

April 26-29, 1998
National Institute of Child Health & Human Development
The Swedish Social Science Research Council
The Swedish Council for Research in the Humanities & Social Sciences
Allmanna Barnhuset
Stockholm, Sweden

11

" Interview Techniques in Child Abuse Cases"

    September 22-24, 1997
    Salt Lake County Children's Justice Center
    National Institute of Child Health & Development
    Salt Lake City, Utah

"Defending Allegations of Child Abuse: The Law, The Science, The Myths, The Reality"

    September 11-14, 1997
    National Child Abuse Defense & Resource Ctr. (NCADRC) Conference
    Las Vegas, Nevada

"The Use of Social Science Evidence in Child Sex Abuse Proceedings"

    June 06-08, 1997
    Colorado Criminal Defense Bar - Annual Meeting
    Aspen, Colorado

"Interviewing Children: State of the Art"

    May 02-03, 1997
    Santa Fe Rape Crisis Center
    Santa Fe, New Mexico

Behavioral Health & The Law: "The Utilization of Mental Health Experts in Domestic Relations Courts"

    February 19, 1997
    Supreme Court, State of Arizona
    Domestic Relations Conference

"Forensic Aspects of Child Sexual Abuse, "Criteria-Based Content Analysis in Evaluating the Credibility of Children"

    October 24-25, 1996
    American Academy of Child & Adolescent Psychiatry
    43rd Annual AACAP Meeting
    Philadelphia, Pennsylvania

"Child Abuse Allegations II: The Law, The Science, The Myths, The Reality

    September 20-22, 1996
    National Child Abuse Defense & Resource Center
    Las Vegas, Nevada

"Advanced Seminar for the Investigation of Child Sexual Abuse Cases"

    June 24-28, 1996
    National Institute of Child Health & Development
    Washington, D.C.
    Presentor & Participant

"Everything You Wanted To Know About Defending Sex Crimes in the Civil Setting But Were Afraid to Ask"

    February 9, 1996
    Circles of Care, Inc.
    Rockledge, Florida

"Overcoming Interviewing Difficulties"

>February 8, 1996
>National Institute of Child Health & Development/Section of Emotional Health
>West Palm Beach, Florida

"Psychological Evidence in the Child Sex Case & Issues in Interviewing
the Child Witness"

>December 13-16, 1995
>Missouri State Public Defender - Training Division
>Lake of the Ozarks, Missouri

"Assessing the Credibility of Children Who Allege Abuse"

>October 17-22, 1995
>American Academy of Child & Adolescent Psychiatry
>New Orleans, Louisiana

"Assessing Credibility of Children's Statements: Source of influence,
interview techniques and Statement Validity Assessment"

>October 06-08, 1995
>National Child Abuse Defense & Resource Center, Inc.
>Chicago, Illinois

"Psychological Methods in the Investigation of Multi-victim Sex Crimes"

>February 13-17, 1995
>Department of the Army
>Heidelberg, Germany

"Statement Validity Assessment"

>January 27-28, 1995
>University of Utah
>Salt Lake City, Utah

"Forensic Interviews in the Investigation of Crimes Involving Child Witnesses"

>January 02-06, 1995
>Detective Division
>Palm Beach County Sheriff's Office
>West Palm Beach, Florida

"The Effects of Divorce and Varying Custody Arrangements on Children's Behavior Development and
Adjustment"

>December 01-04, 1994
>National Institute of Child Health and Human Development
>Middlebury, Virginia

"Psychological Methods in the Investigation and Court Treatment of Sexual Abuse"

>August 22-26, 1994
>Minister of Justice
>Tromso, Norway

"Child Sex Abuse"

July 28-29, 1994
Minnesota State Bar Association
Continuing Legal Education
Minneapolis, Minnesota

"Classifications of Children's Utterances"

November 24-27, 1993
National Institute of Child Health and Development
Section on Emotional Development
Bethesda, Maryland

"Statement Validity Assessment (SVA): Psychological Methods for
Investigating Sexual Allegations by Children and Adults"

November 05-06, 1993
University of Utah Department of Psychology and
Division of Continuing Education
Salt Lake City, Utah

"The Investigations of Child Sexual Abuse"

September 26-29, 1993
National Institute of Child Health and Development
Section on Emotional Development
Stra Bruk, Sweden

"Forensic Interviewing of Child Sexual Abuse Victims"

February 23-25, 1993
National Institute of Child Health and Development
Section on Emotional Development
U.S. Air Force Office of Special Investigations
United States Air Force Family Advocacy
San Antonio, Texas

"Forensic Investigations of Child Sexual Abuse"

October 31 - November 03, 1992
National Institute of Child Health and Development
Section on Emotional Development
Marion County Sheriff's Department
Ocala Police Department
Ocala, Florida

"Forensic Interview Techniques in Child Sex Abuse Investigations"

May 18, 1992
Miami Children's Hospital
Grand Rounds, Florida

"Forensic Investigation of Child Sexual Abuse"

May 16-18, 1992
National Institute of Child Health and Development
Section on Emotional Development
Marion County Sheriff's Department-Ocala Police Department
Ocala, Florida

14

"Techniques for Interviewing Young Victims of Sexual Abuse"

February 24, 1992
Family Advocacy Model Program Directors' Meeting
San Antonio, Texas

"Forensic Interview and Assessment in Child Sex Abuse Cases"

February 21-22, 1992
The Confederated Tribes of Warm Springs
Warm Springs, Oregon

"Interview and Assessment Techniques in Child Sex Abuse Investigations"

January 20-23, 1992
National Institute of Child Health and Development
Section on Emotional Development
Ministry of Labor and Welfare
Jerusalem, Israel

"Child Sexual Abuse: Forensic Interview and Assessment  Techniques"

November 07-09, 1991
North Hills Hospital
Kansas City, Missouri

"Interview and Assessment Techniques in Child Sexual Abuse Investigations"

June 17-20, 1991
National Institute of Child Health and Development
Section on Emotional Development
Ministry of Labor and Welfare
Jerusalem, Israel

"Interview and Assessment Techniques in Child Sexual Abuse Cases"

May 17-19, 1991
University of Utah Department of Psychology and
Division of Continuing Education
Salt Lake City, Utah

"Investigative Interviews of Children Alleging Sexual Abuse"

October 10-12, 1990
New Orleans District Attorney's Office
New Orleans, Louisiana

"Forensic Interviews and Assessments of Children Alleging Sexual Abuse"

September 06-07, 1990
Spokane Community Mental Health Center
Spokane, Washington

"Interview and Assessment Techniques in Child Sexual Abuse Cases"

March 23-25, 1990
University of Utah Department of Psychology and
Division of Continuing Education
Salt Lake City, Utah

15

"Interview and Assessment Techniques in Child Sexual Abuse Cases"

>March 19-21, 1990
>Children's Health Center-St. Joseph's Hospital
>Phoenix, Arizona

"Forensic Interviews of Sexually Abused Children"

>January 14-16, 1990
>Marion County Sexual Abuse Task Force
>Ocala, Florida

"Sexually Abused Children: Forensic Interview and Investigative Techniques"

>November 16-19, 1989
>Johnson County District Attorney's Symposium
>Johnson County, Kansas

"Forensic Interviews of Children Alleging Sexual Abuse"

>October 1989
>Pinal County Sheriff's Department
>Pinal County, Arizona

"Sexually Abused Children: Forensic Interview and Investigative Techniques"

>April 1989
>Sponsored by the University of Utah
>Denver, Colorado

"Sexually Abused Children: Forensic Interview and Investigative Techniques"

>February 1988
>University of Utah Department of Psychology and
>Division of Continuing Education
>Salt Lake City, Utah

"Psycho-Social Issues: Psychodynamics and Treatment of the Abusive Family"

>April 1987
>CPS Core Training Program
>Phoenix, Arizona

"Evaluation and Treatment of the Adolescent Sex Offender"

>September 1986
>Department of Economic Security Training
>Phoenix, Arizona

"Interviewing and Assessing Credibility of Alleged Victims and Perpetrators in Sexual Abuse Cases"

>April 02-05, 1986
>Sponsored by Saint Luke's Hospital
>Cosponsored by the University of Utah Department of
>Psychology and Division of Continuing Education
>Scottsdale, Arizona

16

"Psycho-Social Issues: Psychodynamics and Treatment of the Abusive Family"

    March 6, 1986
    May 22, 1986
    October 29, 1986
    CPS Core Training Program
    Phoenix, Arizona

"Psycho-Social Issues: Psychodynamics of Child Maltreatment"

    January, 1985
    CPS Core Training Program
    Phoenix, Arizona

"Psycho-Social Issues: Psychodynamics and Treatment of the Abusive Family"

    December, 1985
    CPS Core Training Program
    Phoenix, Arizona

"Treatment Alternatives with Maltreating Families"

    September, 1984
    CPS Core Training Program
    Phoenix, Arizona

"Psycho-Social Issues: Psychodynamics of Child Maltreatment"

    December, 1984
    CPS Core Training Program
    Phoenix, Arizona

Exhibit C

# Phillip W. Esplin

## Psychologist

4242 N. 56th Street
Phoenix, Arizona 85018

(602) 943-0288 Phone       (602) 943-9407 FAX

**Cases Involving Depositions/Court Testimony**

**1992 – 1996**

**Cases Involving Depositions/Court Testimony/Taped Interviews**

**1997 - 2009**

# 2009

State of Arizona v. Adam Alcantar
Pinal County # CR 2006-01723
Attorney: William D. Shostak
Prosecution Interview

Cummings-Geiser v. Geiser
Maricopa County, Arizona
Attorney: Terrie S. Rendler
Deposition

State v. Davenport
Oktibbeha County #2008-0009-CR
Attorney: John Zelbst
Court Testimony

State of Arizona v. Brenda Lynn Thomas
Maricopa County, #CR2008-007090-001-DT
Attorney: Joey Hambry
Court Testimony

People v. Ronald Nation
Douglas County, Colorado #07CR60
Attorney: Jeffrey Pagliuca
Court Testimony

Iavaroni v. Davis
Maricopa County, Arizona CV2007-005175
Attorney: Robert F. Clark
Deposition

State of Montana v. Pete Anthony Ampudia
Flathead County, # DC 08-401C
Attorney: Julianne B. Hinchey
Telephonic testimony – Pretrial Competency Hearing

State of Iowa v. James John Waldron
Linn County, # FECR 077482
Attorney: Leslie Stokke
Telephonic Deposition

State of Missouri v. Lee A. Rucker
Holt County, #08J7-CR00131-02
Attorney: Shelley Peters
Court Testimony

Jarrett/Miller v. Walmart and Fuji
US District Court, Western District of Oklahoma
CIV 08-1049C
Attorney: David Butler
Deposition (Continued)

State of Montana v. Pete Anthony Ampudia
Flathead County, DC-08-401(C)
Attorney: Julianne B. Hinchey
Court Testimony

Salinas v. St. Paul Lutheran Church & School
93rd District Court of Hildalgo County, Texas
Attorney: Rex N. Leach
Pretrial Motions Hearing

State of Arizona v. Adam Alcantar
Pinal County, #CR 2006-01723
Attorney: William D. Shostak
Court Testimony

People of the State of California v. Hansen
Orange County, 06-NF-0229
Attorney: Hong Nguyen
Court Testimony

Cummings-Geiser v. Geiser
Maricopa County, Arizona
Attorney: Terrie s. Rendler
Court Testimony

State of Indiana v. Timothy J. Bitter
Franklin County, 24C01-0807-FA-306
Attorney: Mark J. Dove
Court Testimony

US v. SFC Andrew J. Aguirre
Fort Bragg, North Carolina
Attorney: Capt. Heather Herbert
Telephonic testimony–Pretrial Motions Hearing

State of Oregon v. Jesse Nelson
Linn County, # 08091819
Attorney: James C. Jagger
Court Testimony

Everett v. Perez
Chelan County, Washington
Attorney: Tony DiTomasso
Deposition

State of Arizona v. Don Albert Fox
Pima County, #204-GJ-001
Attorney: Dan H. Cooper
Telephonic Court Testimony – Pretrial Motions Hearing

State of Nevada v. Salvana Maria Fernandez
Elko County, CR-FP-2005-0201
Attorney: Brian Green
Court Testimony

# 2008

US v. Sgt. Robert A. DeBrum
US Army Trial Service
Fort Leavenworth, Kansas
Telephonic Prosecution Interview
Attorney: Cpt. Paul Butler

State v. Wyoming v. Brian Joseph Pare
County of Laramie, CV-164-224
Telephonic Prosecution Interview
Telephonic Pre-Trial Court Testimony
Attorney: Bernard Q. Phelan

State of South Carolina v. Walter Thelan
Charleston, South Carolina
Court Testimony
Attorney: J. Michael Bosnak

Villescaz v. City of Eloy
Pinal County, CV 06-2686-PHX-FJM
Deposition
Attorney: Michael J. Brune

Roe v. State of Arizona, Arizona
    Children's Association
Maricopa County, Arizona CV 2006-007150
Deposition
Attorney: Jose de Jesus Rivera

People v. William Arnold Kennerson
San Diego County, California 271101 DA MAQ411
Court Testimony
Attorney: Pamela G. Lacher

State of North Carolina v. Eric Grange
Durham County, #06CRS 054278
Court Testimony
Attorney: Thomas C. Manning

Theodore W. White, Jr. v. Richard McKinley, et al
U.S. District Court, Western District of Missouri
# 05-0203-CV-W-NKL
Court Testimony
Attorney: Cindy Short

State of Arizona v. John Banner Morgan
Mohave County, CR 2007-1445
Court Testimony
Attorney: Shawn Hamp

State of Montana v. Doug O'Connor
Custer County, DC 07-60
Pretrial Court Testimony
Attorney: L. Sanford Selvey, II

US v. Sgt. Robert A. DeBrum
US Army Trial Service
Fort Leavenworth, Kansas
Court Testimony
Attorney: Cpt. Paul Butler

Villescaz v. City of Eloy
Pinal County, CV 06-2686-PHX-FJM
Deposition
Attorney: Michael J. Brune

Roe v. Wal-Mart Stores, Inc.
Maricopa County, Arizona, CV2005-009394
Deposition
Attorney: Georgia Staton

State of Arizona v. Chance Lewis
Pinal County, CR 2006-00360/dv
Court Testimony
Attorney: Chad Shell

U.S. v. SSG Christopher A. Barberi
US Army Europe and 7th Army
Heidelberg, Germany
Consulting Expert
Attorney: Cpt. Venghaus

State of Washington v. Jeffrey Thomas Solomon
Skagit County, #07-1-00955-7
Court Testimony
Attorney: Robert Perez

State of Iowa v. Rodney Paul Sissel
Sioux County, # FE CR 011508
Telephonic Court Testimony
Attorney: Timothy L. Lapointe

State of Mississippi v. Dane Davenport
Oktibbeha County, #2008-0009-CR
Court Testimony
Attorney: John Zelbst

State of Missouri v. Charles Lester Blair
Howell County, 04C3-CR01906
Court Testimony
Attorney: Joseph Passanise

1

# 2007

State of Arizona v. Brandon R. West
Pima County, CR 2005-0004
Attorney: Natalie Prince
Court Testimony, Pre-Trial Motions hearing

State v. John Herrick
Trumball County, Ohio #2005-CR-835
Attorney: Dennis DeMartino
Court Testimony

State v. William Orta, Jr.
Yuma, Arizona #S1400 CR 0200 400864
Attorney: Marie Elena Cruz
Telephonic Prosecution Interview

State of Indiana v. Kevin J. Whitacre
56th Judicial circuit, Huntington 35C01-0602-FC0012
Attorney: Robert W. Gevers
Telephonic Deposition

State of Oregon v. Norman Jerome Oen
Lane County, #20-06-08770
Attorney: James Jagger
Telephonic Court Testimony

State of Arizona v. Moses Medlock
Mohave County, CR 2002-1393-PCR
Attorney: David Goldberg
Court Testimony

State of Montana v. David Farr
Flathead County, DC 06 106C
Attorney: Jack Quatman
Telephonic Prosecution Interview

State of Washington v. John Q. Morimoto
Seattle, 03-1-02704-5 SEA
Attorney: Gary Davis
Court Testimony

State of Arizona v. Jesse Alan Gearhart
Gila County, CR2005-0034, CR2006-0250
Attorney: Elizabeth Flynn
Court Testimony

State of Idaho v. Molen
Boise County, CR 2005-1748
Attorney: Ron Christian
Court Testimony

State of Texas v. Dan Cremar
Webb County
Attorney: Fernando A. Sanchez
Telephonic Pre-Trial Motions Hearing

A.S. (Preston) v. McNair, et al
Florida, 8:05-cv-01198-RAL-EAJ
Attorney: Jeremy Rogers
Deposition

State of Arizona v. Matthew David Turner
Maricopa County, CR2005-115033-001 DT
Attorney: Luis Calvo
Court Testimony

Pisciotta v. Yavapai County
US District Court, CV 05-3205-PCT-NVW
Attorney: Sara J. Powell
Deposition

People v. Mark Wilkinson
Mesa County, Colorado 99 CR 1111
Attorney: Kathy Goudy
Court Testimony

State v. James Edward Sheridan
Wake County, North Carolina 06CRS 20555-20559
Attorney: Tommy Manning
Court Testimony

State of Missouri v. Joshua Maudlin
Jackson County, 0616-CR02535-01 & 0516-CR07745-01
Attorney: Patrick Peters
Court Testimony

State of Arizona v. William Orta, Jr.
S1400 CR 0200 400864
Attorney: Marie Elena Cruz
Testimony – Evidentiary Hearing

State of Montana v. David Farr
Flathead County, DC 06 106C
Attorney: Jack Quatman
Court Testimony

State of Idaho v. Molen
Boise County, CR 2005-1748
Attorney: Ron Christian
Telephonic Prosecution Interview

U.S. v. Ehlers (Military)
Camp Pendleton, California
Attorney: Lt. Michael Melocowsky
Telephonic Pre-Trial Motions Hearing

State of Texas v. Andrew Adamek
Harris County, 2004-08495J, 2004-10043J
    2005-01995J, 2006-05574J, 2006-03570J
Attorney: L.T. Bradt – Court Testimony

1

# 2007 Continued

Commonwealth of Kentucky v. Earl Barlow
Marshall County, 06 CR 00239
Attorney:  Emily Roark
Court Testimony

State of Washington v. William Brousseau
Asotin County, #06-1-00229-8
Attorney:  Jane Richards
Court Testimony

People in the Interest of Samuel Wolf AND
  Concerning Kenneth Wolf and Gail Zuker
County of Denver, JV Court, 06JD1273
Attorney:  Norman R. Mueller
Court Testimony

US v. Bruce Lee St. John, SGT USMC
Kapolei, Hawaii, CCN HIKH-0050-8BMA
Attorney:  Major Noelle Tibon
Telephonic Court Testimony

State of Ohio v. Mitchell Reinhardt
Medina County, 07-CR-0187
Attorney:  David C. Sheldon
Court Testimony

State v. Oregon v. Michael Heroff
Grant County, 090300CR
Attorney:  Markku Sario
Court Testimony

State of Montana v. Raymond Borton
Flathead County, DC-06-479B
Attorney:  Carolyn Gill
Court Testimony

US v. Goppert
Fort Jackson, South Carolina
Attorney:  Captain Steven Coutant
Telephonic Prosecution Interview

State of Arizona v. William Orta, Jr.
Yuma County, S1400 CR 0200 400864
Attorney:  Marie Elena Cruz
Court Testimony

# 2006

Doe v. Brookhaven County Club and
      Club Corp USA
95th Judicial Dist. Court, Texas  #04-10591
Attorney:  Ladd Hirsch
Pretrial Motions Hearing

State of Oregon v. Darren William Lozar
Lane County, # 20-05-21553
Attorney:  James C. Jagger
Court Testimony

State of Arizona v. Harvey Whiting
Navajo County, CR 2000-187
Attorney:  Benjamin M. Brewer
Court Testimony

Placourakis v. Davis
Maricopa County, 2003-015063
Attorney: Ted Thayer
Court Testimony

Doe v. Childtime Childcare
Fulton County, Georgia   CAFN: 04V067931
Attorney:  W. Wray Eckl
Deposition

People v. Peter Thomas Ziskin
San Diego, CN 190510
Attorney:  Donald L. Levine
Court Testimony

Kinkead v. State of Arizona
Maricopa County CV 2005-090208
Attorney:  Louis Silverman
Deposition

Theodore W. White v. Richard McKinley, et al
US District Court, Western District of Missouri
05-0203-CV-W-NKL
Attorney:  Brian McCallister
Deposition

State of Wisconsin v. John Babiak
Washington County, 04 CF 208
Attorney:  Craig Albee
Court Testimony – Motions Hearing

Varela, Luis
Pascua Yaqui Tribe, CR-05-265
Tucson, Arizona
Attorney: Nicholas Fontana
Telephonic Prosecution Interview

Placourakis v. Davis
Maricopa County, CV 2003-015063
Attorney: Ted Thayer
Deposition

Allred v. Corrections Corp. of America
Maricopa County, CIV 03-2343-PHX-DGC
Attorney:  Rachel Halvorson
Court Testimony

State of West Virginia v. Carl Dean Hubbard
Said County, # 03-F-68
Attorney:  David R. Bungard
Court Testimony – Sentencing Hearing

State v. Veronica Bravo
Mohave County, Arizona   CR 05-952
Attorney:  Lee Novak
Court Testimony – Pre-trial hearing

State or Oregon v. Darren William Lozar
Lane County, Oregon   20-05-21553
Attorney:  James C. Jagger
Court Testimony

State Farm v. Hertel
Pima County, Arizona CC20020558
Attorney:  E.J. Kotalik
Deposition

People  v. W. French Anderson
Los Angeles County, California #BA255257
Attorney:  Barry Tarlow
Court Testimony

People v. Marcello Garcia
California  05-007-9525
Attorney:  Dennis Lempert
Court Testimony

# 2006 (Continued)

State of Arizona v. Brandon Richard West
Pima County, #CR 2005-0004
Attorney:  Natalie Prince
Telephonic Prosecution Interview

State of Texas v. Earl Eugene Bryant
Lamar County
Attorney:  Cameron Lenahan
Court Testimony

People v. Marco Antonio Espinoza
County of Los Angeles, #NA067476
Attorney:  Nancy Kardon
Court Testimony

Vasquez v. City of Phoenix
Maricopa County, Arizona
Attorney:  Brian Goodwin
Court Testimony

People v. Lassana Banguian
County of New York, N.Y.   2005NY017342
Attorney:  Steven Pokart
Court Testimony

State v. Erin Bullman
Flathead County, Montana  DC 06-112 (B)
Attorney:  Glen Neier
Court Testimony

2

# 2005

State of Arizona v. Donald Gene Register
Mohave County, CR-04-702
Attorney:  Lee Novak
Pretrial Motions Hearing

People of California v. David Gray
County of Los Angeles  LA 045233
Attorney:  Eric Chase
Trial Testimony

People of Illinois v. David Holmquist
DuPage County  03 CF 457
Attorney:  Sherman Magidson
Pretrial Motions Hearing

State of Oregon v. Christopher Hagberg
Lane County, 20-04-13017
Attorney:  Donald Diment
Trial Testimony

Donald Burrill v. State of Washington
King County, 03-2-07256-7 KNT
Attorney: John Stocks
Deposition

Allred v. Corrections Corporation of America
CIV 03-2343 PHX-DGC
Attorney:  Rachel Halvorson
Deposition

State of Arizona v. David Wayne Kiehle
Maricopa County, 1 CA-CR 00-0571 CR99-91679
Attorney:  Thomas Gorman
Court Testimony

State of Oregon v. Jerry Whiteid
County of Union, #F11412
Attorney:  J. Robert Moon, Jr.
Court Testimony

State of West Virginia v. Ronnie Trahan
Monongalia County, #'s 04-F-277;278
Attorney:  Travis Fitzwater
Court Testimony

Swann v. State of Washington
Thurston County, 02-2-0147-2
Attorney:  Tyler Firkins
Telephonic Deposition

State of Arizona v. Robert Perez
Pinal County, CR-20400051
Attorney:  Paula Cook
Telephonic Prosecution Interview

State of California v. M.W. McAlexander
Trinity County  02 F 148
Attorney:  Jeffrey Stotter
Trial Testimony

State of Washington v. Mark Kitt
King County -  03-1-01357-5 KNT
Attorney:  Eleanor Cromwell
Pretrial Motions Hearing–Telephonic Testimony

In the matter of Michael Worsham (Guerra)
JV J-004475, County of Yuma, Arizona
Attorney:  Josephine Sotelo
Deposition

In the matter of: Michael Worsham
Yuma County, JV # J-004475
Attorney:  Josephine Sotelo
Telephonic Court Testimony

State of Washington  v. Kitt
King County, 031013575 KNT
Attorney:  Eleanor Cromwell
Court Testimony

State of California v. Michael Jackson
County of Santa Barbara, #1133603
Attorney:   Thomas Messareau
Court Testimony

State of Arizona v. Donald Register
Mohave County, CR 04-702
Attorney:  Lee Novak
Court Testimony

Vogel v. Maricopa County ET AL
State of Arizona CV 2002-023675
Attorney:  Richard Stewart
Deposition

State of Oregon v. Leo Carl Novak
Crook County, 03-12-382CR
Attorney:  J. Robert Moon, Jr.
Court Testimony

State of Florida v. Peter Cantone
Pinellas County, 01-20448, -20449, 20450 CFANO
Attorney:  George Tragos
Court Testimony

United States v. Daniel M. Sanders
Fort Leonard Wood, Missouri
Attorney:  Mark C. Prugh
Telephonic Court Testimony –Article 39(a)

1

# 2005 Continued

People of the State of Michigan v. Gerald George Cumper
#04-5158 FY  # 05-5651 FY
and
People of the State of Michigan v. Gerald Eugene Fletcher
#04-5157 FY  # 05-5650 FY
Montmorency County
Attorney: Mitchell Nelson, Benjamin Bolser, Richard Steiger
Telephonic Testimony - Pre-Trial Motions Hearing

United States v. CTT1 Robert W. Payne
Naval Legal Service Office Southeast, Defense Department
Jacksonville, Florida
Attorney: Vaughn Spencer, LCDR, JAGC, USN

Doe v. Brookhaven Country Club and ClubCorp USA
95th Judicial District Court, Texas #04-10591
Attorney: Ladd Hirsch
Deposition

State of Wisconsin v. Ted L. Day
Marathon County, #02 CF 636
Attorney: Robert G. LeBell
Court Testimony

State of Montana v. Aaron W. Forthun
Callatin District Court #DC-04-334, 18th Judicial District
Attorney: Bridgitt Erickson
Court Testimony via Satellite Teleconference

Jonathon Swann v. State of Washington
Thurston County, 02-2-01475-2
Attorney: Tyler Firkins
Court Testimony

State of North Carolina v. Michael Covington
Scotland County, CRS 052146
Attorney: Michael Stone
Court Testimony

State of Arizona v. Shidan Dahnad
Maricopa County, #CR2003-018000-001 DT
Attorney: Joel E. Thompson
Taped Interview

2

# 2004

State of Florida v. Peter A. Cantone
Pinellas County, Case 01-20448CFANO,
   01-20449CFANO, 01-20450CFANO
Attorney: George F. Tragos
Telephonic Deposition – Continued f/11-5-2003

State of Arizona v. Kenneth Jay Foss
Cochise County, Arizona CR 2001-00573
Attorney: Mark Suagee
Trial Testimony

U.S. v ET1 (Seal) W.C. Bollinger, Jr. USN
Naval Legal Service Office Pacific, Pearl Harbor
Attorney: Frank Spinner
Telephonic Prosecution Interview

U.S. v SSG Richard Franolich
U.S. Army, Ft. Leonard Wood, Missouri
Attorney: Captain Jason Elmore
Pretrial Taint Hearing

State of Nebraska v. Steven Gerald Koch
Cedar County, Nebraska  CR02-14
Attorney: Martin A. Cannon
Court Testimony

State of Missouri v. David Sanders
Buchanan County, #03-CR-72545
Attorney: Michael A. Insco
Court Testimony

State of Arizona v. Rafeal Durnan
Gila County, #CR 99-151
Attorney: Steve Sherick
Court Testimony

State of Wisconsin v. Thomas Walter Berthoux
#03- CF 002549
Attorney: Robert G. LeBell
Telephone Court Testimony –
   Pretrial Competency Hearing

State of Arizona v. Henry Abell
Pinal County – CR 17382
Post Conviction Hearing Re: Probationary Status
Attorney: Brett Huggins
Telephonic Testimony

State of North Carolina v. William Henry Banks
County of Northampton, # 03-CRS-231-239
Attorney: Thomas Manning
Court Testimony

People v. Nicholas Sortore
Douglas County, Castle Rock, Colorado
#03JD422
Attorney: Richard K. Kornfeld
Court Testimony

State of Nebraska v. Steven G. Koch
Cedar County, #CR02-14
Attorney: Martin A. Cannon
Pretrial Motions Hearings

State of Georgia v. York
Atlanta, Georgia
Attorney: Adrian Patrick
Pretrial Daubert Hearing

U.S. v.ET1 (Seal) W.C. Bollinger, Jr. USN
Naval Legal Service Office Pacific, Pearl Harbor
Attorney: Frank Spinner
Telephonic Pretrial Motions Hearing

State of Missouri v. Theodore White, Jr.
Jackson County, CR 98-02401
Attorney: Phil Gibson
Telephonic Deposition

US v. SSG Richard Franolich
US Army Trial Defense Services
Ft. Leonard Wood, Missouri
Attorney: Captain Jason Elmore
Telephonic Prosecution Interview

Tiemens v. Smith  FC 2002-000318
Maricopa County, State of Arizona
Attorney: Gene R. Stratford
Deposition

Tiemens v. Smith  FC 2002-000318
Maricopa County, State of Arizona
Attorney: Gene R. Stratford
Court Testimony

State of Oregon v. Frederick Spavins
County of Curry, # 03 CR 0984
Attorney: Shaun S. McCrea
Court Testimony

Nicholas, et al.  v. Wyndham International, et al
District Court of the Virgin Islands
CIV # 2001-147 MR
Attorney: John Zebedee
Deposition

State of Arizona v. Brad Farabough
Maricopa County – CR 93-92403
Attorney: Joane Kuchia
Court Testimony

State of California v. M.W. McAlexander
Trinity County, # 02 F 148
Attorney: Jeffrey C. Stotter

1

# 2004

Dye v. Flagstaff Medical Center
Coconino County, Arizona CV 2003-281
Attorney: Cindy Best
Deposition

State of Arizona v. Karl LeClaire
Maricopa County, CR 2003-034541-001-SE
Attorney: Dan Shepherd
Taped Telephonic Interview

# 2003

State of Arizona v. Ocano
Pima County, CR 2001-4099
Court Testimony
Attorney: Jeffrey G. Buchella

State of Washington v. Nathan P. Loring
Seattle - Competency
Telephonic Court Testimony
Attorney: Marvin McCoy

State of Washington v. Nathan P. Loring
Seattle – Trial
Court Testimony
Attorney: Marvin McCoy

State v. Jay D. Ramsey
Pima County – CR 2001-3448 171-GJ-159
Court Testimony
Attorney: Lewis Brandes

Grant, Gregory, MD v. Maricopa County
Phoenix, Arizona CIV 00-430-PHX-SMM
Videotaped Deposition
Attorney: Katherine E. Baker

State of Florida v. Matthew Lowe
Broward County, 02-6873CF10A,
02-7147CF10A, and 02-7826CF10A
Deposition
Attorney: J. David Bogenschutz

State v. Frank W. Passwaters, Jr.
Sussex County, Georgetown, Delaware
ID 0210008408, CRA #S02-10-0496
Court Testimony
Attorney: Vincent H. Vickers, II

In re the Marriage of Harper v. Geisbush
County of Spokane, State of Washington
93-3-00856-1
Attorney: Terry Goble/Mary Ronnestad, GAL
Telephonic Court Testimony

State of Arizona v. Jose Munoz
Maricopa County, CR 2002-019556
Attorney: Mary Harris
Court Testimony

State of New Mexico v. Justo Ruiz
Sante Fe County, #21,316
Attorney: Dan Marlowe
Telephonic Testimony-Pretrial
Reliability of Evidence-Taint Hearing

United States v. Edward Young
District Court CR02-147-GF-SHE
Great Falls, Montana
Attorney: David F. Ness
Court Testimony

State of New Mexico v. Justo Ruiz
Sante Fe County, #21,316
Attorney: Dan Marlowe
Court Testimony

State of Indiana v. John G. Byers
Allen County, 02D04-0201-FA-4
Court Testimony
Attorney: Anthony S. Churchward

Lasater v. Lasater    02C01-9804-DR-411
County of Allen, State of Indiana
Court Testimony
Attorney: Charles Leonard

State v. Michael D. Georgeoff
Missouri  20 CR 03981709
Videotaped/Telephonic Testimony
     In lieu of live testimony
Attorney: Matthew J. O'Connor

State of New Mexico v. Justo Ruiz
Appeals Court, Sante Fe County #21,316
Telephonic Interview
Attorney: Laurie Knowles/Dan Marlowe

State of Wyoming v. Isaac Toon
Telephonic Testimony – Taint Hearing
Attorney: Bernard Phelan

State of Florida v. Matthew Lowe
Broward County, 02-6873CF10A,
02-7147CF10A, and 02-7826CF10A
Court Testimony - Rebuttal
Attorney: J. David Bogenschutz

State of Arizona v. Michelle Sojka
Maricopa County, CR 2002-093045
Telephonic Interview (Untaped)
Attorney: Rick Miller

State of Florida v. Richard D. Kuhns, Sr.
20th Judicial Court, Collier County  01-1812-CFA
Attorney: Donald Day
Court Testimony

State of Florida v. Matthew Lowe
Broward County, 02-6873CF10A
02-7147CF10A, and 02-7826CF10A
Court Testimony
Attorney: J. David Bogenschutz

State of Nevada v. Robert Gossard
Clark County, C 184345
Court Testimony
Attorney: Mace Yampolsky

State of Missouri v. Charles E. Moore
Jackson County, CR 2001-06870
Kansas City, Missouri
Attorney: Burton S. Haigh
Court Testimony

People State of Illinois v. Tuan S. Do
Lake County, 02 CF 4613
Attorney: Mark L. Shaw
Telephonic Pretrial Hearing

# 2003

People of the State of California v. Moises Neftali Chavez
Contra Costa County 021751-3, DA # X02 000183-4
Attorney:  Theresa Marks
Court Testimony

State of Idaho v. Pixley
County of Kootenai, CR 03-0007092
Attorney:  Monica M. Flood

Rodriquez v. Perez
U.S. District Court, Washington, CS 01-0003-RHW
Attorney:  Tyler Firkins
Court Testimony

State of Florida v. Peter Cantone
Pinellas County, 01-20448 CFANO, 01-20449 CFANO, 01-20450 CFANO
Attorney:  George Tragos
Telephonic Deposition

In re: the Marriage of Tompa v. Tompa
State of Indiana,  Allen Circuit Court #02C01-0212-DR-918
Attorney:  Neil Hayes
Telephonic Deposition

State of Arizona v. Kenneth J. Foss
Cochise County, #CR 200100573
Attorney:  Mark Suagee
Telephonic Interview

State of Arizona v. Thomas Sweeney
Maricopa County
Attorney:  Jeanette Gallagher
Taped Interview

U.S. Coast Guard/Felix J. Rivera
CCN: 0098-03-GSE 0619 8A (GE)
Attorney:  Lt. McElroy
Naval Defense Office
Telephonic Interview

State of Texas v. Elva Olimpia Santibanez
291st Judicial District Court, Dallas County, F01-42935-U
Attorney:  Donald Flanary
Court Testimony

# 2002

Seaman v. Diehn    DR 99-21337
Maricopa County Superior Court,
Telephonic Court Testimony
Attorneys: David White, William Piatt

State of Oregon v. Brian Carl Hayek
County of Baker, State of Oregon #01-009
Court Testimony
Attorney: Tyler Firkins

State of Montana v. Nathanel Bar-Jonah
8th Judicial District Court, Cascade County
#ADC-00-273
Court Testimony
Attorney: Greg A. Jackson

State v. Dana Farnes  #99-901181
County of Spokane, State of Washington
Deposition
Attorney: Greg Casey

State of Washington v. John Ruppert
County of King, 01-1-04864-0 KNT
Court Testimony
Attorney: David Marshall

State of Arizona v. Jeffrey Barton McCormac
County of Maricopa, CR 2000-093161
Court Testimony – Pretrial Hearing
Attorney: Larry Hammond

State of Montana v. Earl Hunt
Eleventh Judicial District Court, Flathead County
DC-01-296-B
Pretrial Taint Hearing Testimony & Trial Testimony
Attorney: Peter A. Leander

State of Oregon v. Justin Paul Becker
Washington County, C993266CR
Trial Testimony
Attorney: Michael Curtis

State of Nevada v. W.C. Cecil
Churchill County, #27928, Dept. III
Telephonic Pretrial Hearing testimony
Attorney: Donald Y. Evans

State of Arizona v. Mitchell Friend
Maricopa County, CR2001-018560
Trial Testimony
Attorney: Theron M. Hall

Bevan v. Fix    #11081
9th Judicial District Court of Teton County, Wyoming
Telephonic Deposition
Attorney: Stephen Klein

State of Washington v. Ralph V. Gausvik
Chelan County, Washington 95-1-00371-1
Deposition
Attorney: Robert Van Siclen

State of Arizona v. Maria De Nieves
County of Maricopa, #CR 2001-005695
Taped Interview
Attorney: Jeannette R. Gallagher

State of Colorado v. Aaron Monger
Mesa County, 00 CR 477
Court Testimony
Attorney: William Kain

State of Arizona v. Maria De Nieves
County of Maricopa, CR 2001-005695
Court Testimony
Attorney: Jeannette R. Gallagher

United States v. Stanford Dick
District of Arizona, CR-01-636-PCT-RCB
Court Testimony
Attorney: Mark Paige

Mary Hall, as legal guardian of M.D. v
Palm Beach County School District
CA 02-00959 AF, 15th Judicial Circuit, Florida
Court Testimony
Attorney: Scott Krevans

State of New York v. Prince Nnaedozie Unegbolu
City of New York, County of Queens, #D 5696/02
Court Testimony
Attorney: Allan L. Galbraith

Gausvik v. Dept. of Social & Health Services
Chelan County, Washington 01-2-00958-1
Telephonic Deposition Testimony
Attorney: Tyler Firkins

State of Arizona v. Jay D. Ramsey
Pima County, 171-GJ-159, CR 2001-3448
Telephonic Defense Interview
Attorney: Lewis Brandes

Copeland, Cheynne 02C-212837-CPS
Testimony – Administrative Hearing, Phoenix
Attorney: Brian Theut

People of the State of New York v. Weber
Rensselaer County, Town of Nassau
Court Testimony
Attorney: Brian E. Donohue

**2001**

State of Arizona v. Joshua Freemon
Coconino County, CR-00-346
Court Testimony
Attorney: Brad Bransky

State of Arizona v. Robert J. Eggert
County of Yavapai, CR 999-0319
Court Testimony
Attorney: Sherry Bell

State of Missouri v. Thomas Costello
St. Charles County, 11 RO 010002436
Court Testimony
Attorney: Joel B. Eisenstein

BMF v. Cigna Healthcare of Arizona
Maricopa County, State of Arizona
CV2000-091370
Court Testimony
Attorney: Clair W. Lane

State of Arizona v. James Walker
Maricopa County, State of Arizona
CV 2000-012987
Attorney: Jason Squires

State of Colorado v. Aaron Monger
Mesa County, Colorado    00 CR 477
Attorney: Dick Lewis

State of Ohio v. John Guseman
Erie County, Ohio    00-CR-560
Attorney: K. Ronald Bailey

O.V. v. Dade Christian School
Dade County, Florida 99 7219 CA 30
Telephonic deposition
Attorney: Scott Cole

State of Washington v. Don Burrill
County of King, 00 1 09267 5 KNT
Court Testimony
Attorney: Ted D. Billbe

State of Arizona v. Aron Pettijohn
Coconino County, Arizona CR 2001-075
Court Testimony
Attorney: Brad Bransky

State of Nevada v. Lamm
County of Washoe, 00-2209
Court Testimony
Attorney: Donald Y. Evans

People of the State of California v. Samih Zabadi
County of Contra Costa, # 010402-6
Court Testimony
Attorney: Oscar Bobrow

State of Arizona v. Thomas R. Sulivan
Maricopa County, CR 97-07170
Court Testimony
Attorney: William Foreman

State of Arizona v. John A. Mitchell
Pinal County, # CR2000027150 & CR 2001100319
Court Testimony
Attorney: Paula Cook

Fiorie, Joseph. JD 2001-0021
Dependency Trial
Yavapai County, Prescott. Arizona
Attorney: Janet R. Lincoln

U.S. Government v. Michael Mendoza
General Court Martial
Corpus Christi, Texas
Attorney: LCDR Michael J. Wentworth

State of Florida v. Andrew Petkash
12 Judicial Circuit, Manatee County, Florida
#99-3917F – Deposition
Attorney: Mark Lipinski

State of Wisconsin v. Fritz Callies
Waukesha County, 93 CF 297
Attorney: Robert G. LeBell

Edmund Stephen Byrne
Maricopa County Superior Court, CR 9704331
Attorney: Sherry Bell

Farbough v. State of Arizona
97-20353CV
Attorney: Daniel Raynak

Brian M. Frey v. Cigna Healthcare of Arizona
CV 2000-091370
Attorney: Clair Lane
Deposition

Jarvis v. Jue
Maricopa County Superior Court
DR 2000-019764
Telephonic Testimony
Attorney: Barry Dickerson

Eftenoff, Brian
Maricopa County Superior Court
Attorney: Jim Cleary
Court testimony – Factual Witness

People of California v. Sam Satariano
Stanislaus County Superior Court, #363055
Deposition
Attorney: Mary Lynn Belsher

US Government v. Michael Scott Walsh
General Court Martial
FEYK-0264-8BNA
Tokyo, Japan
Attorney: Major Michael Mori
Telephonic Testimony

Thompson v. Thompson (Saba)
2000 DR 003567, Bradenton, Florida
Court Testimony
Attorney: Mark Lipinski

State of Arizona v. Wayne M. Miller
Pinal County, CR 1998-024514
Telephonic Court Testimony
Attorney: Eric Kessler

State of Wyoming v. Glen Thomas Gilmore
Laramie County Court, #0002-0050
Telephonic Court Testimony
Attorney: G. Kevin Keller

People of California v. Sam Satariano
Stanislaus County Superior Court, #363055
Court Testimony
Attorney: Mary Lynn Belsher

State of Arizona v. Steven M. Butcher
Cochise County, CR 200100172
Court Testimony
Attorney: Donna Bechman

2000            2000

People of the State of Illinois v. Daniel A. Chmela
Sixth Judicial Court, Champaign County
99CR1199
Attorney: Steven Beckett

Hewlett, Barry (Domestic Relations)
#99-30445, Benton County, Corvalis, Oregon

Jerry Denver Baker v. People State of Colorado
District Court, Elbert County, 98 CR 26
Attorney: Catherine Roberts

People State of Colorado v. Henry Wellman
County of Boulder, 99CR2067
Attorney: Dion Custis

Steottlemyre, Todd
Maricopa County, Superior Court
DR 2000-011344
Attorney: Brian Kelley/John Popstra

State of Oregon v. Johnson
County of Linn, #002-0556,0555, and 0001-0083
Attorney: Janet Boytano

Jeffrey R. Fritz v. Kimi Jean Fritz
County of Yuma, State of Arizona
Attorney: Josephine Sotelo/Stephen J. Rouff

Everett v. Shipman, et al
Thurston County, State of Washington
#99-2-01822-0
Attorney: Tyler Firkins/Clarke Johnson

McGrath, Joseph v. State of Colorado
Attorney: James Bagley

People of State of California v. William John McMahon
County of Inyo, State of California CR23752
Attorney: James Magid

Judy Fitzpatrick v. Lamar Hunt, Jr.
District Court, Dallas County, Texas
DV 99-9526
Deposition
Attorney: Donald Flanary, Jr.

Shacknai v. Shacknai
DR 99-00301
Maricopa County, State of Arizona
Taped Interview
Attorneys: Brian Kelley/Chris Hamilton

Wittenberg v Wittenberg
County of King, State of Washington
99 3 00046 7 SEA
Telephonic Deposition
Attorneys: Mark Mestel/Jerry Kimball

Wagner v. City of Glendale
Maricopa County, State of Arizona
CIV 9-04045
Deposition
Attorney: Katherine Baker

State of Delaware v. Ernest R. Wright
Superior Court, Sussex County
# 98-08-0334 & -0335
Telephonic Testimony
Attorney: Ronald D. Phillips, Jr.

State of Arizona v. Michael Ray Click
Superior Court, Pima County
CR 64511
Attorney: Jack Lansdale

State of Colorado v. Edward Polzer
Adams County, Brighton, Colorado
99 CR 801
Attorney: Richard Kornfeld

Gooch, Bryant Scott
County of Jackson, Circuit Court, JV Department
990456JA
State of Oregon
Attorney: Jeni Feinberg

People of State of Colorado v. Stephen P. Farrell
County of Montrose
99 CR Div. D
Attorney: Stephan Schweissing

City of Scottsdale v. Sherry Lynn Crawford
United States District Court, District of Arizona
CIV 96-1842 PHX ROS
Attorney: Michael Green
Deposition -

Theresa Doe, et al v. Aramark Educational Resources, Inc. et al
dba Children's World Leaning Centers, Inc., et al
Franklin County, Ohio
98CVH10-8347
Attorney: Randall S. Rabe
Deposition

Francisco Echave v. State of Arizona
Superior Court Pima County, Arizona
CV 62175
Attorney: Steve Sherick

Schroeder, Russell v. People of State of California
County of Santa Clara, State of California
C9880236
Attorney: Dennis Lempert

Profit, Malcolm J. v. State of Arizona
Maricopa County, State of Arizona
DR 99-1100496
Attorney: Phil Hineman

Powers, Michael P., v. State of Arizona
Maricopa County, CR 9810597
Superior Court, Criminal Division J
Attorney: Sherry Bell

1999

William B. Colie v. Commonweath of Virginia
Madison County, Virginia - 506G24508
Attorney: Shanon S. Echols & Steven Harris

Jeremy Slane v. State of Missouri
St. Louis, Missouri
Attorney: Timothy A. Graham

In re the Interest of Brandon Miller
Waukesaw, Wisconsin
Attorney: Robert LeBell

Schimke
Naval Legal Services Office
Oak Harbor, Washington
Telephonic Testimony
Attorney: Lt. David Richman

Brown, Dr. Allan
Administrative Hearing - Bomex
Maricopa County, Arizona
Telephonic Testimony
Attorney: David Derickson

Arthur Scholz v. State of Arizona, CV 98-21733
Maricopa County, Arizona
Deposition
Attorney: Patricia Howe

Smyers v. State, CR 98-92215
State of Arizona , Maricopa County
Attorney: Sylvina Cotto

Curtis, Troy v. State of Arizona
Pima County, State of Arizona, CR 61567
Attorney: David Basham

Price v. State
Pima County, State of Arizona, CR 59949
Attorney: Wanda Day

State of Arizona v. Francisco Echave
Pima County, Arizona
Attorney: Steven P. Sherick

State of Arizona v. Conner, Johnson, Robinson, Hartley, Blackman
CR 97-02184 Consolidated
Superior Court of Maricopa County
Attorney: Joel Heilman

State v. Price
CR 59949 Pima County, Arizona
Attorney: Wanda Day

In the Matter of Leonard Fasetta, J 96-237
State of Arizona, County of Yuma
Telephonic Testimony
Attorney: Josephine Sotelo

State of Alaska v. Jacqueline Brown
1KE-S98-802 CR, Ketchikan, Alaska
Telephonic Testimony
Attorney: Barbara Kissner

Rogers v. Campbell
DR 93 90796
State of Arizona, County of Maricopa
Attorney: William Spence

Pavlik, Steve
Theodore Roosevelt School
Ft. Apache, Arizona
Administrative Hearing
Attorney: William Hobson/Patricia Carpenter

State of Arizona v. Ricardo D. Meza
Superior Court, County of Maricopa
CR 97-12101
Attorney: W. Clifford Girard

Dr. Andrew J. Kahan, Gail Kahan and Strawberry Door, Inc. v
Dr. Clare Haynes Seman, Robert N. Christiansen, Ruth Lenzner,
and Chaffee County Department of Social Services
District Court, Pueblo County, State of Colorado
CV 96 CV 702, Division D
Deposition
Attorneys: Scott Nixon, James Bagley, Rowe Stayton

State of Wyoming v. Howard Rodack - 24-202
First Judicial District, County of Laramie
Attorney: Mary Beth Galvan

Scholz, Arthur Kevin v. State of Arizona
Maricopa County, CV 98-21722
Attorney: Daniel Raynak

State v Bobby Charles Purcell
Superior Court, State of Arizona, CR 98-08705
Attorney: Brad Bransky

Hardy v. State of Colorado
District Court, County of Rio Blanco
State of Colorado, 99CR09
Attorney: Edward Nugent

Miami Shores Presbyterian Church v. Guerra
Dadeland, Florida
Attorney: Peter Miller

Dennis Irvine v. State of Alaska
Third Judicial District Superior Court
3 PA 98-2608 Cr
Attorney: John McConnaughy
Telephonic Testimony & In-Court Testimony

Farnes v. State of Washington
County of Spokane, 99-901181
Attorney: Mark Mestel

Melissa Valdez v. PUHSD
Maricopa County
Attorney: Sabinus Megwa
Deposition

State of Wyoming v. Terry Mahon
County of Laramie, 9905-0039
Attorney: Kevin Keller
Telephonic Testimony

People v. Bobby Ray Taylor
Los Angeles County Superior Court # VA 044389
Southeast District (Norwalk)
Attorney: Douglas W. Otto

Tammie Leatherwood v. Girishkumar S. Patel
Cause 98 CI 92841, 225th Judicial District Court
Bexar County, Texas
Attorney: Richard Espey & Ashish Mahendru
Videotaped deposition

State of Alaska v. Jackie Brown
First Judicial District, Superior Court
1 KE S 98 802 CR
Attorney: Jim Davis, Alaska Legal Defense
Telephonic Testimony

Jared Bain Twitchell, JV
Adjudication Hearing
Attorney: Mark J. Berardoni

Mironn Ross v. State of Colorado
Arapahoe County, Colorado, 97 CR 826
Attorney: Carin Bagn

| | |
|---|---|
| 1998 | In the Matter of Jeffrey L Mumpower, JV 140380, F-493452<br>Juvenile Division, County of Maricopa , Transfer Hearing<br>State of Arizona Superior Court |
| 1998 | Roberson v. Perez (Wenatchee Washington Case)<br>Deposition in Seattle, Washington |
| 1998 | Widoff v. Widoff, DR 96-12182<br>Maricopa County, State of Arizona, Superior Court |
| 1998 | Keith Johnson<br>Governing Board – Tempe Elementary School  District #3<br>Maricopa County, Arizona |
| 1998 | Bustos, Samuel v. State, CR 92-91736<br>Maricopa County, State of Arizona, Superior Court |
| 1998 | Walker, Keith v. State of Missouri, CR 97-01547<br>Circuit Court of Jackson County, Kansas City, Missouri |
| 1998 | John H. Colborne v. James C. Kelly, MD, CV9595-27376<br>Civil Docket "M", Circuit Court of Jackson County, Missouri |
| 1998 | Garza v. Garza, DR 89-05667<br>Maricopa County, Superior Court, State of Arizona |
| 1998 | State of Arizona v. John Heiden, CR 97-0517<br>County of Yavapai, Superior Court of State of Arizona |
| 1998 | Krempasky v. Krempasky, DO95019171 w/c<br>Pinal County, Superior Court, State of Arizona |
| 1998 | Higginbotham, Donnie<br>State of Arkansas, Administrative Hearing |
| 1998 | Koeller, Bryon, C., USN A03-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<br>VAW-129 Naval Air Station, Whidby Island<br>Oak Harbor, Washington |
| 1998 | State v. Willie Boggess, 98 09206 CV<br>Superior Court, State of Arizona, Pima County |
| 1998 | Turner, Hawaii<br>Telephonic Testimony |
| 1998 | First Baptist Church of Edinburg, Texas<br>93rd District Court of Hidalgo County, Texas<br>C 1794-95B |
| 1998 | Scocchera v. State of Illinois, #98CF1146<br>Circuit Court for Lake County Illinois |
| 1998 | Anderson, Brian v. State of Arizona - CR 96-94724<br>Maricopa County Superior Court, State of Arizona |
| 1998 | State of Arizona v. Javier Cruz - CR 97-03346 & CR97-01387<br>Maricopa County Superior Court, State of Arizona |
| 1998 | People v. Lieb. # 97-1794<br>Contra Costa County, California |
| 1998 | State of Arizona v. Dana Jones - CR 96-07484<br>Maricopa County Superior Court, State of Arizona |
| 1998 | Mach v. State of Arizona<br>Tucson, Arizona |
| 1998 | State of Washington v. David Garcia<br>Seattle, Washington |
| 1998 | Max Ahlgren, Guam, Telephonic Testimony |
| 1998 | State of Wyoming v. Felix Alicea<br>County of Laramie, # 9708-0048, Telephonic and Court Testimony |
| 1998 | United States of America v. Bentley Scott Powell<br>98 CR 218 D, Colorado |

1997

Taped Interview
State v. Kenneth Dean Haley, CR-94019752
Pinal County Superior Court, State of Arizona

St. v. Carl Blackman, JV 513821
Maricopa County,  State of Arizona

Joan Pereira v. Medina; Kalil Bottling Co.
CV 95-12471, Maricopa County
Superior Court, State of Arizona

State v. Adkinson
Middlesex Superior Court
Cambridge, Massachusetts

Clouse, Merlin Lyneer v. State of Arizona
CV 96-00450, Maricopa County
Superior Court, State of Arizona

Montanarella v. Montanarella
Maricopa County
Superior Court, State of Arizona

Craig Alan Ives v. State of Arizona
Maricopa County CR92-08134
Superior Court, State of Arizona

People of the State of California v. Domingo Angle Vilanueva
Superior Court of California
County of San Mateo, DA Case: INF 0143523

Garland Williams, Baltimore, Maryland

State of  Maryland v. Charles M. Shockney
Circuit Court for Baltimore City, #196004022-23 and -27

Montanarella v. Montanarella, DR 96-06410
Superior Court of Arizona, Maricopa County

State of Arizona v. James M. Champlin, CR 96-10007
Superior Court of Arizona, Maricopa County

Lange v. Tyson, DR 96-0840
Superior Court of Arizona, Coconino County

People v. Cossey
District Court, Boulder, Colorado

State of Washington v. Jeffrey DeHart, #97-8-02464-3 SEA
King County, Seattle, Washington

State of Arizona v. Parker, CR 95-05452
Superior Court of Arizona
Taped Interview

Thu T. Pham and Nhi Uyen Xu v.
Tempe Investment Corporation, CV 94-15338
Superior Court of State of Arizona, Maricopa County

Valentine v. Valentine - DR 94-20905
Superior Court of Arizona, Maricopa County
Court Testimony

Mary Lou F. Gomez v. Rudy Joe Garza, DR 95-08853
Superior Court of Arizona, Maricopa County
Court Testimony

Leleniewski, Wanda Get-Len-Moy v. Leleniewski, Raymond
DR 88-04711
Superior Court of Arizona, Maricopa County

State of Maryland v. Charles M. Shockney
Criminal #196004022-27
Circuit Court for Baltimore City
No Testimony -Formal Interview

Mews v. Mews, DR 93-09878
Superior Court of Arizona, Maricopa County
Court Testimony

In the matter of Greg Anthony Acevedo , JV 134739
Superior Court of Arizona, County of Maricopa
Court Testimony

In the matter of Greg Anthony Acevedo, JV 134739
Superior Court of Arizona, County of Maricopa
Taped Interview

Aston v. Schmitz, CV 94-05240
Superior Court of Arizona, County of Maricopa
Court - No testimony

Adams v. State of Arizona, CV 92-06705
Superior Court of Arizona, Maricopa County

Aston v. Schmitz, CV 94-05240
Superior Court of Arizona, Maricopa County

Kenneth Dean Haley v State of Arizona
CR 94019752, Superior Court, Pinal County, State of Arizona

John Mark Flynn
Testimony in Administrative Hearing
City of Phoenix - Personnel Office

People v. Cossey
Colorado

People v. David White, 97 CR 560
County of Boulder, State of Colorado

St. of Arizona v. Jason Bernardi
Maricopa County Juvenile Court, 455637 96-06462
JV 513074

Jeffrey Joseph Boland v. Jane Michal Boland
Superior Court, Maricopa County, DR 249873

Destiny A. Davidson, Laura S. Davidson (Deceased)
and Marcus Pearson  DR 94-00078
Superior Court/Maricopa County

Massachusetts Casualty Insurance Company v.
Stephen Hardy, CIV 94-637-PHX-SMM
United States District Court
District of Arizona

In the matter of Scott Richard Dobert
Superior Court, Maricopa County
JD 501766

State of Arizona v. Swee Imm Julin
Superior Court, Maricopa County
CR 95-91860, 181 GJ 452

In the matter of Victoria Avenetti
Juvenile Court, Maricopa County, JD 7364

Julie Ann Hoban v. John Richard Hoban
Superior Court, Maricopa County
DR 94-11966

State of Utah v. Scott Logan Gollaher
Third District Court, Salt Lake County
State of Utah, Case #941901671FS

Desert State Life Management Services,
as guardian for Lorena Barajas and
Lucia Barajas v. Association of Retarded
Citizens of Albuquerque, et al.
United States District Court
District of New Mexico, CIV 94-974-JC

Bobby Gentry v. Micolities
District Court for Sequoyah County
State of Oklahoma, CJ 94-14

State of Kansas v. Louis Gomez
District Court, Finney County, Kansas, CR 95CR633

Poole
Canyon, Texas

Joseph R. Rivkin v. Linda Beatty-Rivkin
Superior Court, State of Arizona
Maricopa County DR 90-14168

State of Kansas v. Todd E. Ellison
Eighteenth Judicial District
Sedgwick County, Kansas  96CR953

Alicia Nieto Jacobs v. Maricopa County
Superior Court of Arizona
CV 90-34274

Randy L. Grouskay v. Linda Carol Toh
Superior Court of Arizona, Maricopa County
DR 94-18825

Valentine v. Valentine - DR 94-20905
Superior Court of Arizona, Maricopa County

Leslie Bryan & Diane Bryan  v.
St. of Az. Dept. of Transportation ADOT
Superior Court/Maricopa County CV 91-15996

C.H., R.H. and G.H. v. Gerber Children's
Center (Hinderer v Palo Alto)
Superior Court/Maricopa County CV 94-04423

Gilbert Taeger & Mary Taeger v.
Catholic Family & Community Services,
Roman Catholic Diocese of Phoenix
Superior Court/Maricopa County, CV 93-09042

In the matter of Melissa Norris,  JD-7816
Superior Court/Maricopa County Juvenile Division

Gene R. Rodgers v. Susan Campbell
Superior Court/Maricopa County DR 93-90796

Saday Shweiri v. St of Arizona & Az. Dept. of
Youth Treatment and Rehabilitation
Superior Court/Maricopa County, CV 93-19657

St. of Arizona v. Robert E. Byrd
Superior Court, Criminal Division S, CR 9507162

In the matter of Greg A. Acevedo, JV 134739
Superior Court/Maricopa County/Juvenile Division

Mary E. Sarsfield v. John D. Sarsfield
Superior Court/Maricopa County  DR 94-20711

Raymond E. Leleniewski v. Wanda Get-Len Moy
Superior Court/Maricopa County DR 88-04711

Rivkin, Joseph
Superior Court/Maricopa County, CR 9590943

Thu T. Tham & Nhi Uyen Xi
Superior Court/Maricopa County, CV 94-15338

Canon, Alan  v. Virginia CPS
Alexandria, Virginia

US Government v. Rigsby
Administrative Discharge Hearing
Lackland AFB, Texas

Harry Martinez v. St. of Arizona, DES
Superior Court/Maricopa County  CV 94-03020

1994

State of Minnesota v. Ricky Allen Porges
County of Hennepin, 4th Judicial District
SEP # 9310007, file 94-0481

Wesley Mel Bikoff v. Monica Lin Bikoff
Superior Court, Maricopa County, DR 91-16570

State of Arizona v. Neil Elliott Christensen
Superior Court, Maricopa County, CR93-03707
DR 93-034918  157 GJ 58

St. v. Dale Akiaki 2DF04257/CR#129395

Donni T. Fleischaker v. William J. Flesichaker
Superior Court, Maricopa County, DR 92-09899

United States v. SSgt Randal G. Fling
Rhein-Main Air Base, Germany
SSN   FR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

State of Washington v. Paul Gutierrez
Superior Court, State of Washington
County of Clark,   93-1-01014-1

State of South Carolina, County of Aiken,
Mitzie B. Hagan, v. James L. Hagan
Court of Common Pleas, # 92 DR 02 2460

State of Arizona v. James Charles White
Superior Court, Yavapai County, CR 93-0123

Donna Ellen Harris v. Terry Harris
Superior Court, County of Yavapai DO 993-0181

Virginia Henson, Oklahoma/ Depo

Richard H. Kilgour v. Dept. of Veterans Affairs
US Merit System Protection Board
Denver Field Office. DE-0752-94-0365-I-1

Meek v. Holmes/Depo

Lane v YMCA/Texas/Court

US v. Lewis/ Missouri/Court

Patricia D. Meek/Court

United States v. Mitchell
Department of the Air Force
USAF Judiciary, European Circuit
England

Lori Lynn Porter v. Kevin Joseph Porter
Superior Court, Maricopa County, DR 93-07182

Adriane Giebler & Edna Giebler v.
Nat Union Fire Ins. Co., #93-07373
14th Judicial District
District Court, Travis County, Texas

Tamara M. Medeira and Daniel Santiago
Superior Court/ Maricopa County  DR 217613

State of Arizona v. Sae Eung Moon
Superior Court, Maricopa County, CR 93-91889

United States v. TSgt Michael J.Sorbera
Department of the Air Force
USAF Judiciary, Europen Circuit

State of Arizona v. William Edward Tilghman
Superior Court, County of Pima, CR 4264

1993

St. of Missouri v. John Colborne  CR93-4716

Ronnie V. v. Mary Jane Humphries
District Court of Gregg County, Texas 94-541DR

State of WA v. Sims
County of Douglas, Washington 95-1-00085-5

State of Washington v. Linda Miller
Superior Court of Washington, Chelan County
95-1-00150-6

In the matter of the Estate of Benjamin Pouser
Superior Court, Maricopa County, PB 93-04519

Timothy R. Pearson-Bradbury v. Brian Eugene
Bradbury
District Court, County of Fremont,
State of Colorado, 92DR252, Divison II

St. of Arizona v. Jack Whiteside
Superior Court/County of Coconino, No 16622

Malpee, Simeon (Military) JD 7198
Maricopa County, Juvenile Court

Spenst Mitchell Hansen v. Kathleen Bramwell
McWain
Third Judicial District Court
Salt Lake County, State of Utah
Civil #91090469DA

In the matter of Cynthia Renee Miller, JS 9108
Superior Court/Maricopa County/Juvenile Division

Harry Martinez v. St. of Arizona, DES
Superior Court, County of Maricopa, CV 94-03020

Barbara Horowitz v. Shirley Mae Murray
Superior Court/Maricopa County, CV 94-00101

Alicia Nieto Jacobs & Tomas Jacobs v.
Maricopa County, Dept. of Administration and
Board of Supervisors
Superior Court/Maricopa County, CV 90-34274

Ortiz v. Hodges
State Farm Client #03-1345-430

Robert Alan Jennings v. Lynda B. Villani
Superior Court/Maricopa County, DR 87-14844

State of Az. v. Ronald J. Pomeroy
City of Phoenix Municipal Court, Maricopa County
Complaint #8825002-03

Andrea Campbell, Jackie Wolfe & George Campbell
v. Terry Kinsel & Tonya Kinsel & T.J. Kinsel
Superior Court/Maricopa County. DV 94-11657

Marilyn Mooneyham & Dennis Mooneyham v.
Marguerite J. Holmes Ph.D.
Superior Court/Maricopa County, CV 94-09020

Randy L. Grouskay v. Linda Carol Toth
Superior Court/Maricopa County, DR 94-18825

Glenn Williams Herderick v. Michele Renae Mason
Superior Court, Maricopa County
DR 94-90592

Erik Roland Larsson v. Heidi Nicole Curtis Moyer
Superior Court/Maricopa County DR 95-91113

Destiny A. Davidson, Laura S. Davidson (Deceased)
and Marcus Pearson  DR 94-00078
Superior Court/Maricopa County

<u>1992</u>  and  <u>1993</u>

| | |
|---|---|
| 1992 | Bryan W. Adams, Atlanta, Georgia Court |
| 1992 | Felix v. Mitsubishi, CV 90-11339/Depo |
| 1992 | Norman Baker, San Diego, CA/Court |
| 1992 | Lane v. Desert Samaritan Hospital/Depo |
| 1992 | Don Bivens/Court |
| 1992 | Romick v. Kowalski/Depo |
| 1992 | Buck v. Winchester/Court |
| 1992 | Christopher A. Chapman/Court |
| 1992 | US . Msgt T.M. Craemer/Europe/Court |
| 1992 | Jay Humphrey/Depo |
| 1992 | J. Lawrence Dunlavey/Court |
| 1992 | Knight Adv. Collings/Utah/#1009-821/Depo |
| 1992 | Richard Hoiles/Court |
| 1992 | Saft Johnson, March AFB,CA/Court |
| 1992 | Monreal v. Rivera/Depo |
| 1992 | Gerald W. Morrell/Court |
| 1992 | Katheryn Marschall/Court |
| 1992 | Kennecott Corp/Utah/Keith Curtis |
| 1992 | Sue E. Parks/Court |
| 1992 | Lance Corp.Michael D. Sennett/CA/Court |
| 1992 | Buck v. Winchester/Depo |
| 1992 | Overton Semmens/Depo |
| 1992 | Steven Yost/Court/Depo |
| 1992 | Morris/Heine/Court |
| 1992 | Kathryn & Michael Munninger/Court |
| 1992 | Gregory L. Norman/Court |
| 1992 | Rourk v. St. of Arizona/Depo |
| | |
| 1993 | Michael Bailey/Court |
| 1993 | Jacquelyn Kaslly v. Allstate/ Dapo |
| 1993 | O'Brien v. Akzo Coatings/Depo |
| 1993 | St. v. Corraggio/Tucson/Court |
| 1993 | Crouch/Capt. Bartol/Missouri/Court |
| 1993 | US v. Sgt D.C. Knox, North Carolina/Court |
| 1993 | St. of New Mexico v. Sally Pratt/Court |
| 1993 | St. of Florida v. Charles Preston/Depo |
| 1993 | Mark Alan Lian/Telephonic Court |
| 1993 | Darcie M. McCracken/Telephonic Court |
| 1993 | Beletz v. Bishop, CV 91-14183/Depo |
| 1993 | Michael L. Marxer/Court |
| 1993 | James P. Riffenburg, Albany, Georgia/Court |
| 1993 | US v. Rynning/Capt Martin/Court |
| 1993 | SSGT Fred William Schuler/New Mexico/Court |
| 1993 | Capt. Donna Verchio/Siroky/Florida |
| 1993 | Cathrine Winterhalder/Depo |
| 1993 | St. v. Robert L. Moss |

Exhibit D

# Barry Lee Jones
# Death Penalty Case

## I. Background of the case and scope of work

On April 14, 1995, Mr. Barry Jones, was convicted of sexual assault, child abuse and felony murder. The victim, four year-old Rachel Gray, was declared deceased on arrival at Kino Community Hospital on 5/2/94. Mr. Jones was sentenced to a term of years for the sexual abuse and child abuse counts and sentenced to death for the murder. A full summary of the case facts will not be repeated here. See case documents with facts and procedural history.

I was requested to review this matter relative to the state of science regarding child witnesses in general as well as child witness identification issues. I reviewed the following documents in this case:

1. Decision of the Supreme Court of the State of Arizona (State of Arizona v. Barry Lee Jones No. CR 95-0342-AP) dated 4/29/1997
2. First Amended Petition for Writ of Habeas Corpus (Barry Lee Jones v. Charles Ryan et al.,) dated 12/23/2002
3. Memorandum of Decision and Order (Death Penalty Case No. CV 01-592-TUC-FRZ) dated 9/29/2008
4. Rachel Gray's Kino Community Hospital Records Triage Nursing note and code documentation dated 05/02/1994 with arrival at 0616 hours
5. Transcript of taped statement of Angela Gray to Detective Rankin dated 5/2/94 at 0930 hours
6. Transcript of taped statement of Brandy Jones (age 12, daughter of Barry) to Detective Ruelas on 5/2/94
7. Transcript of taped statement of Jonathan Lux, (age 14; deaf) with assistance of interpreter by Detective Ruelas on 5/2/94
8. Transcript of taped statement of Rebecca Lux (age 10) on 5/2/1994 by Detective Ferrier
9. Transcript of taped statement of Barry Jones dated 5/2/94 at 10:07 hours with Detective O'Connor
10. Autopsy Report of Rachel Gray 5/3/1994
11. Pima County Sheriff's Department training records for Detective Bruce Clark between 1984 and 1999.
12. Transcript of statement of Laura Lopez dated 5/3/94 by Detective Clark at Laura's residence in the presence of her mother
13. Transcript of statement of Ray Lopez by Detective Clark at Ray's residence in presence of his mother on 5/3/94
14. Transcript of statement of Norma Lopez by Detective Clark on 5/4/94
15. Transcript of interview of Rebecca Lux by Detective Downing on May 4, 1994

16. Transcript of defense interview of Laura Lopez dated 1/20/95 at her residence in the presence of her brother, mother and County Attorney
17. Transcript of defense interview of Ray Lopez dated 1/20/95 at his residence in the presence of Laura, his mother and County Attorney dated 1/20/95
18. Transcript of pre-trial interview of Rebecca Lux on October 31, 1994
19. Transcript of the pre-trial interview of Detective Clark dated 12/12Trial testimony of Rebecca Lux in Angela Gray's case on 3/24/95
20. Trial testimony of Rebecca Lux in Barry Jones' case on 4/11/95
21. Portions of opening statements made by Kathleen Mayer (pp 41-42) and Sean Bruner (pp 64-65) in Barry Jones' criminal case
22. Portions of the closing arguments made by Kathleen Mayer (pp 98-99) and Sean Bruner (pp 119-122) in Barry Jones' criminal case
23. Trial testimony of Detective Clark (date unknown)
24. Trial testimony of Ray Lopez dated 4/7/95
25. Trial testimony of Laura Lopez dated 4/7/95
26. Trial testimony of Norma Lopez dated 4/7/95

## II. Introduction

### A. Child Witnesses in General

Research on both the competencies and weaknesses of child witnesses was well under way by the early 1990's. While child development theories and research have spanned several decades, at least a decade of work existed prior to 1995 on the complex issues related to child eyewitnesses (E.g. approaches to child interviewing; cognitive and linguistic factors related to eyewitness testimony; internal and external factors related to accurate and reliable reporting of event memory by child eyewitnesses).

Some of the authoritative texts and seminal works readily available prior to 1995 included:

*The suggestibility of children's recollections: Implications for eyewitness testimony (1991)* edited by Dr. Doris, published by the American Psychological Association.

*Children as Witnesses (1992)* edited by Dr Helen Dent, and Dr. Rona Flin, published by Chichester: Wiley.

*"The Suggestibility of the Child Witness: A Historical Review and Synthesis" (1993)* authored by Drs. Ceci and Bruck, published in the *Psychological Bulletin.*

3

This latter article provided a comprehensive, historical review of the scientific literature relating to the suggestibility of children, as well as an application of research findings as the basis for principles to be considered when questioning child witnesses.

Clearly, by the mid 1990's there was scientific consensus regarding general principles, which, when utilized in investigative interviews, would substantially reduce the risk of obtaining unreliable information from child witnesses. There was also a climate of awareness with regard to child eyewitness pre-trial and testimony issues. These issues were outlined in scientific publications as well as discussed at professional conferences for criminal justice personnel, including law enforcement and attorneys.

See attachment of selected reference list between 1978-1994.

*B.  Identification Issues*

Eyewitness identification research emerged in the 1970's, largely driven by the pioneer works of Dr. Elizabeth Loftus who conducted laboratory research involving videotaped staged crimes, questioning of adult eyewitnesses and photo lineups. With laboratory control, eyewitness errors could be adequately scored relative to the ground truth in the simulations. The "relative risk" of misidentification versus absolute risk that could be applied to actual cases was discussed in the literature (Loftus, 1979).

In 1977, the U.S. Supreme Court's ruling in Manson v. Braithwaite, 432 U.S. 98 (1977) provided a two-inquiry process with regard to the admissibility of eyewitness identification evidence. The first prong involves the analysis of procedural suggestiveness. If the eyewitness identification procedures are determined to be not unduly suggestive, the identification evidence is admissible. If suggestiveness is determined to be present, the reliability of the identification is then examined based on five criteria, namely, 1) eyewitness certainty, 2) view, 3) attention, 4) passage of time, and 5) verbal descriptions.

Since 1977, the science related to procedural suggestiveness as well as the specific five criteria (in the second prong of the Manson process) has evolved. Overall, advances in both biological and social science research have supported the Court's concern regarding suggestive procedures. Developments in biological sciences, particularly the advent of DNA testing, have provided a means of examining definitive biological evidence. DNA testing during post-conviction analyses has resulted in the exoneration of over 200 individuals wrongly accused/convicted of crimes (Wells & Quinlivan, 2009). Mistaken identification was involved in more DNA exonerations than all other causes combined (Scheck et al. 2000; Wells et al. 1998). Advances in the social sciences (eyewitness identification experiments) contributed to the joint efforts of professionals including scientists, law enforcement personnel, attorneys, etc. in the development of guidelines for law enforcement to avoid suggestive eyewitness identification. *See Eyewitness Evidence: A Guide for Law Enforcement* published in 1999.

While strides have been made in the application of science to some areas of forensic practice, researchers have voiced serious concerns regarding the current use of the two-pronged <u>Manson</u> test to determine admissibility of identification evidence.  (E.g. *If a suggestive interview method is used to obtain verbal descriptions, how can the verbal descriptions be reliable?  Can suggestive procedures account for false certainty?*) Scientists and forensic practitioners have expressed concerns that suggestive procedures being invariably intertwined with the five factors of certainty, view, attention, passage of time and verbal descriptions.

For a comprehensive review of the science relative to the five factors in <u>Manson</u>, see Wells & Quinlivan (2009) *Suggestive Eyewitness Identification Procedures and the Supreme Court's reliability Test in Light of Eyewitness Science:  30 Years Later* in the <u>Journal of Law and Human Behavior</u>.

With regard to the Lopez children, there is also the issue of problems with cross racial identification.  (See Reevaluating Lineups: Why witnesses make mistakes and how to reduce the chance of a misidentification, An Innocence Project Report, Benjamin N. Cardozo School of Law, Yeshiva University (May 2009).

## III.  Applying Science to Interviewing Children Witnesses to Crime:  Issues Related To Accuracy and Reliability of Information

The manner in which a child witness is interviewed during a criminal investigation has significant implications not only regarding identification issues but also with regard to the totality of a child's statement and potentially, case outcomes.  Research during the past several decades has focused on child suggestibility (See reviews by Jones 2002; Pipe, Lamb, Orbach & Esplin 2004).  However, children's capacities as witnesses are well recognized by both scientists and practitioners alike.  Professional groups and experts, therefore, offer recommendations regarding the most effective ways of conducting investigative interviews with child witnesses (See "Do Best Practice Interviews with Child Abuse Victims Influence Case Processing?" Grant Final Report, U.S. Department of Justice; Document No. 224524; November 2008; Ceci, S., & Bruck, M. (1993) Suggestibility of the child witness:  a historical review and synthesis.  Psychological Bulletin, 113, 403-439;  Pool, Debra A., Lamb, Michael E., Investigative Interviews of Children: A guide for helping professionals (1998) American Psychological Association.)

Experimental, descriptive and empirical literature emphasizes careful investigative procedures with child witnesses, particularly with regard to investigative interview methods.  In the past decade, several approaches to child interviews developed, however, there remained a consensus that the use of open-ended questions (E.g. *Tell me what happened*) versus direct questions was critical.  Open-ended prompts during investigative interviews tap free recall versus recognition memory with free recall being typically more accurate regardless of children's ages.

See summary of science and its application to investigative interviews of children in Lamb, Hershkowitz, Orbach & Esplin (2008). *Tell me What Happened: Structured Interviews of Child Victims and Witnesses.* Chichester: John Wiley & Sons.

Even with interview training, however, retrospective studies revealed that investigators deviated over time in applying general principles of interviewing child witnesses to actual practice. In order to assist investigators in adhering to recommended interview practices, experts developed a structured interview protocol, the National Institute of Child Health and Development (NICHD) Protocol, to operationalize interview guidelines and enhance the amount and quality of information elicited from child witnesses. The protocol, first published by Orbach and colleagues in 2000 has been examined in multiple studies during the past nine years. Most recently, the NICHD Interview Protocol was examined at various decision points in the investigative and judicial process (e.g. initial interview; admissibility of evidence) to determine whether improved interview procedures affect case outcome in child sexual abuse cases in the criminal justice system.

Conclusions revealed the effects of the NICHD structured interview protocol on case outcomes provide the "strongest possible endorsement of this approach to interviewing" with implications for policy and practice.   The implications are clear with regard to protecting the child witnesses as well as the rights of innocent suspects.

(See *"Do Best Practice Interviews with Child Abuse Victims Influence Case Processing?"* Grant Final Report, U.S. Department of Justice; Document No. 224524; November 2008).

## IV. Application to the Case of Barry Lee Jones

Two 8 year-old children, twins Laura and Ray Lopez, were interviewed during the criminal investigation regarding eyewitness identification issues. Defense counsel, prior to trial, also interviewed the Lopez children. Both Laura and Ray Lopez also testified at trial regarding the identification of Mr. Jones and their views of what was occurring in a van.

### A. The Lopez Children

#### I. Criminal Investigation

On 5/3/94, at 0900 hours, Norma Lopez called the Pima County Sheriff's Office to report that her two children had witnessed a man hitting a little girl in a van. The dispatch printout is not available for review; however, the call is summarized in the Pima County Sheriff's Office supplemental reports of Detective Clark as follows:

6

*"I received a call from Norma Lopez...she advised her two eight (8) year old children witnessed a subject in a van hitting a little girl."*

At approximately 1515 hours, Detective Clark met with Norma Lopez and her twins, Laura and Ray Lopez (DOB: 12/19/1985). The children were 8 years 5 months of age at the time of the first investigative interviews. The interviews of Norma Lopez and her children were conducted by Detective Clark as follows:

1. Interview of *Norma Lopez* (mother of the twins) by Detective Clark at the Lopez residence on 5/3/94

2. Interview of *Ray Lopez* by Detective Clark *in the presence of his sister Laura and his mother* at the Lopez residence on 5/3/94

3. Interview of *Laura Lopez* by Detective Clark *in the presence of her brother Ray and her mother* at the Lopez residence on 5/3/94

Mrs. Lopez informed Detective Clark that her children returned from a walk to the local convenience store on Sunday afternoon (5/1/94) and reported to her they saw a man in a van hitting a little girl. The man resembled their friend, Alonzo. Mrs. Lopez then saw the news the following day regarding the arrest of Mr. Jones, whose hair resembled their friend, Alonzo. Mrs. Lopez called Ray and Laura in to see the news. During the interview with Detective Clark, Mrs. Lopez tells him the following:

"Sunday afternoon…it was about 4 o'clock when they got back they were both dying to tell me the same story…they had a story. Okay they saw a yellow van and we have a friend who looks like this guy that I saw on the news but his name is Alonozo and they got back and said we saw a man that looks like Alonzo in a yellow van and he was punching a little girl. And he was driving with one hand. He was swerving like he was drunk, those are their – this is their words pretty much and they thought he was drunk and he was hitting her in the chest with his elbow and his fist he was hitting her in the face – that's what they told me…they said she was crying and they could hear her and they could zee it…the friend Alonzo has that Frank Zappa look, flying hair, so that is what really what caught us on the news is I knew right away the kids saw the same guy that was in the van was the same guy on the news…"

On the news, "they showed the guy handcuffed in a red shirt and the flying hair and they said first that's the guy mom, that was in the yellow van. That's the guy." (5-3-94 Norma Lopez Interview at pgs. 2-4).

Detective Clark then interviewed Ray and Laura Lopez (in each other's presence) as well as in the presence of their mother.

A transcript of Detective Clark's interview of eight-year-old Laura on May 3, 1994 reveals the interview method relied heavily on direct questions. For example, see the following interactions:

*"Now this is the important part that I want to talk about. Can you tell me what you saw?"* "Mmm there is this guy, there is this guy . . . he had a yellow van and um, . . ." (5-3-94 Laura Lopez interview at pg. 5). Detective Clark interrupts and asks, *"where was the van?"* This is followed by a series of direct and at times suggestive questions *(E.g. Was it moving or stopped? Who was in the van? What was the color of his hair? Was his hair short or long? Neat or messed up?* (pgs. 5-6).

In summary, Laura responds that in the van was *"this guy and he had messy hair and, um, this little girl."* (pg 6). Laura states he was sitting in the front driving with one hand and *"he was going like that and like that twice at the little girl"*. (detective states you're making a hitting motion – was he hitting the girl?) Again the question format continued with suggestive options such as: *"could you see if the little girl was laughing or crying?"* Crying. *"I'm not sure you could see tears?"* "But I saw her." *"Did she have like blood on her face?"* "I didn't see – I forgot." (pgs. 10-12).

There is a series of questions clarifying that the man was not Alonzo but looked like Alonzo and a series of direct questions regarding watching the news. (pgs. 13-19). Laura states she did not watch the news, so Detective Clark asks mom, *"let me just ask you, did they both watch the news?"* Mom responds, *"yeah we watched the news . . .remember I, I told you to come and watch the news so we could talk about the little girl"* at which time Laura acknowledges she did come to watch the news and saw *"that guy."* (pgs. 13-19).

Detective Clark interviews Laura's twin, eight- year old Ray Lopez on May 3, 1994, also in the presence of Laura and his mother. The question types emphasized in this interview are also direct questions (E.g. *What did you see?* "a guy in a van driving with one hand and hitting her and then hitting…Detective Clark interrupts and asks *"you said he was in a van"* Ray responds, "yellow." *"Describe him"* to which Ray responds "curly hair and um, kind of long nose".). (5-3-94 Ray Lopez Interview at pgs. 5-6). The interview also includes a series of suggestive questions to which Ray responds by selecting one of the offered choices. (E.g. *Neat or messed up? Wearing a cowboy hat or baseball cap? Van moving or stopped?)* (pgs. 6-8).

Questions regarding distance of the children to the van included **"See that football in the bedroom. . . .Would it be further than that, or closer?"** Response: *"Further. . . like all the way to the fence over here."* (unclear from a transcript regarding the actual distance)
(5-3-94 Laura Lopez Interview at pg. 9).

## II. Pretrial Interviews

Pre-trial preparation by the defense team relative to the child eyewitnesses and their mother included the following:

1. Interview of *Laura Lopez* by Defense Attorney Leslie Bowman *in the presence of her mother, brother Ray, and Investigator McDonald of the Pima County Attorney's Office* on 1/20/95 at the Lopez residence

2. Interview of *Ray Lopez* by Defense Attorney Leslie Bowman *in the presence of his mother, sister Laura, and Deputy County Attorney* on 1/20/95

3. Pre-trial defense interview of Detective Clark on 12/12/94, by Leslie Bowman

The interviews of Laura and Ray Lopez were conducted in each other's presence on 1/20/95, eight months after the initial investigative interviews.

Once again, the children were interviewed in each other's presence as well as in the presence of their mother. See Table 1 for a summary of the core elements of the children's statements over time.

During the pre-trial interview, Ray tells Defense Attorney Bowman that he recalls he walked to the store at 5:00 on the day in question not because he was wearing a watch but because he just read the information in papers he was provided to refresh his recollection of events. (1-20-95 Ray Lopez Interview at pgs. 3-4). Once again, a series of direct questions is asked of Ray (E.g. *"This is a hard question.  Do you know how fast the van was moving?"* Response: "Slow." *"Can you tell me what the guy looked like that was driving?"* "Curly hair." *"Was it as curly as like an afro. . . . Like a black person's kind of curly?* "Yeah.") (pgs. 8-9).

Of note as well are the following questions and responses:
*"Could you tell what the little girl did when she got hit?"* "Mm. . . cried"
*"What makes you think she cried," Are you just thinking that's what a kid would do if they got hit? Or is that something you saw?"* "She would be." (pgs. 12-13).
*"But you didn't actually see her cry?"* "No." (pgs. 12-13).

Questions of how long Ray had the suspect in his attention were determined by asking Ray *"can you give me an idea how long you were looking at the guy? Like what number could you have counted to. . . while you were looking if you can remember?"* To which Ray responds "ten." (pg. 12)

9

Although the questioning is by Defense Attorney Bowman, Ray is instructed by the County Attorney Investigator that it is okay if he cannot remember. (E.g. *"Did you see something on TV that made you think about this again?"* "Ah the guy." *You saw. . . a picture of him? And you thought hey that's the same guy?"* "Yeah." Defense Attorney Bowman: *"Are you sure?"* *"It's okay if you don't remember."* Ray: *"I don't remember."*) (pg. 18).

Ray is later admonished, *"if you don't want to answer our questions, if it's like you'd rather do this another time that's okay.  Cause it's important that you tell us, you know and that you pay attention to the questions and no you can't look at your mother for the answer you have to recall what you remember.  And if you don't remember that's okay."* (pg. 22).

Laura is also interviewed during the pre-trial phase.  It is clear that she has heard her brother's interview given the following exchange in the transcript:

*"Laura – you just sat through your brother's interview so you know how it's gonna go..."* Instructions – *if you don't remember, that's fine, if you remember tell us; there is no right or wrong answer.* (1-20-95 Laura Lopez Interview at pg. 1).   The County Attorney Investigator states *"Your answers might be different than your brother's . . okay. . . Everyone sees things differently."* (pg. 2).

In summary, Laura doesn't recall going to the store but responds "yes" that she recalls the guy hitting the girl.  She indicates she could only see one side of the van – where the guy was driving but that she could see all the way down to his waist. (pgs. 6-7, 9).  When asked what the guy looked like she responds "curly hair."   When asked *"is that something you remember or is just could you [have] heard your brother say that?"* Laura remembers hair that was curly "like a black guy's." (pg. 10).  In contrast to Ray's original statement to Detective Clark that the guy was wearing a baseball cap, Laura states the guy had no hat. (pg. 10).

Both children acknowledge when they came home from the store they told their mom a man was hitting a girl in a van." (1-20-95 Laura Lopez Interview at pg. 16; 1-20-95 Ray Lopez Interview at Pg. 26).

There were no pre-trial motions filed regarding the children's testimony.

### *III.  Trial Testimony*

Both of the Lopez children testified during the criminal trial.  The children's testimony was represented to jurors as pivotal in this matter as noted in the following opening arguments:

10

*Kathy Mayer, Prosecutor, includes in her opening arguments:*

> "[Barry Jones] is seen . . . by two neighborhood, children, Reynaldo and Laura Lopez.  [They] will be here to tell you that they saw Barry Jones with little Rachel, they didn't know them, of course, at that time, with little Rachel in the seat next to him in this van hitting Rachel with his fist and with the back of his hand and with his elbow and Rachel's face and in her body.  You will see photographs of the blood spatter that is Rachel's blood left behind in that van consistent with the acts described by the Lopez children. " (4-6-95 Trial Transcript at pg. 42).)

*Defense Attorney Sean Bruner confirms the importance of the testimony of the Lopez children during his opening statement:*

> "Now she referred to these the Lopez kids, the ones who allegedly saw Barry hitting Rachel in the van, and I want to mention this right from the outset because **obviously if that is believable testimony, that is strong proof for the State,** but the fact of the matter is when we break down their testimony and when you hear what they actually have to say and think about what they could have seen, <u>they couldn't possibly have seen what they claim now months later to later to have seen.  Why is that?  I am not sure exact exactly,</u> but I can tell that – I'm sure you all have this experience that over time as you tell the story the telling gets better to the point where some people can even actually believe they saw something they couldn't have possibly seen."

> "What initially they say they saw was a van passing, moving van passing and they saw a man and a young girl in a van.  Now, you know it went from that to maybe a slap.  To now elbows.  To a punch in the face.  To multiple punches in the face. You will have to decide for yourself whether a van passing, a couple small children looking up at that van, whether they could have possibly seen what they now claim to have seen, and it's also interesting how that got reported and to whom it got reported, and anyway, I will leave it at that." (pg. 64-65).

The trial testimony of Laura Lopez contains numerous inconsistencies from her earlier statements.  (E.g. she did not see the face of the little girl but saw him hitting her with his elbow on the face; During cross examination Laura states the child's face was not higher than the windows but she could see the child's eyes watering). (4-7-95 Trial Transcript at pgs. 44-45).  The prosecution asks Laura to demonstrate for jurors, the hitting. (pgs. 37-38).

Ray Lopez testifies he saw a guy in a yellow van hitting a little girl.  He is also asked to demonstrate the hitting for jurors. (E.g. ***"Pretend I'm the little girl and you can hit me***

*the way you saw the man hitting the little girl.*") Ray states he saw the man hit "three" times. He is asked to demonstrate again, slowly. (pgs. 9-11). Ray testifies that he saw the little girl crying. *"Could you see her face?"* "No." *"So you don't know whether she was crying or not?"* "Yeah." (pg. 13) Ray also states he did not see the face of the man in the van. The prosecution persists requesting an identification of the defendant. In addition, the prosecutor showed Ray a picture of the defendant's van and asks *"Does this looks like the van you saw the man driving that was hitting the little girl?* Answer: *No. "Why is it different?"* "Doesn't have - because it doesn't have windows in the side." Prosecution asks, *"but it was a yellow van?"* "Yeah." (pgs. 29-30).

For a comparison of the central features of the Lopez children's statements over time, see the following Table 1.

Review of trial transcripts reveals no expert testimony with regard to school age children's developmental capacities in general as well as those regarding estimates of time and distance, children's capacities as witnesses and scientifically sound methods for interviewing child witnesses.

## B. Problems

Examination of documents in the investigation, pre-trial and trial phases related to the Lopez children reveals the following problems:

- Detective Clark conducted the investigative interviews of the Lopez children. Between 1984 and 1994, Detective Clark's training record reveals some subjects listed as "Advanced Officer Training" and four listed as homicide training. It is not clear if Detective Clark had any training regarding investigative interviews of child witnesses. Trial testimony of Detective Clark is not informative regarding his training history related to conducting interviews of child witnesses.

- With regard to pre-interview information, there was no attempt to document the exact questions asked by mother and father of the Lopez children prior to the taped investigative interviews of Detective Clark. Specifically, no inquiry is made with regard to the exact questions and interactions that occurred regarding the identification of Mr. Jones during the news coverage of the defendant's arrest. Although father was reportedly present during some of these conversations, any interviews of the father are noticeably absent from the investigation.

- Detective Clark conducted the investigative interviews of Ray and Laura Lopez in the presence of their mother as well as in each other's presence.

- It is well recognized in the scientific literature that external factors such as well-meaning conversations with child witnesses, discussion among child witnesses, and media coverage can affect children's reports when interviewed. There was no attempt in the forensic interview to determine source monitoring capacities of the children nor inquiry about the source of their information (E.g. *Were the responses a product of free recall?  Suggestions from external sources such as mother or television coverage of the defendant's arrest?*)

- There was no recognizable interview strategy used by Detective Clark in his interviews of the Lopez children.  (E.g. no pre-substantive interview instructions; limited prompts for narratives; majority of questions are direct; questions related to identification largely leading and suggestive)

- The pre-trial interviews of the children were conducted in each other's presence. Evidence of possible cross contamination of information between the children is seen in the following example:

Defense Attorney Bowman asks Ray about the "guy's hair."

> **Ray:** Curly hair.
> **Defense Attorney Bowman:**  *"__Like a black person's kind of curly?__"*
> **Ray:** *Yeah.*
> (1-20-95 Ray Lopez Interview at pgs. 9-10).

Laura, present during Ray's interview is then asked during her interview:
> **Defense Attorney Bowman:** *"Do you remember what the guy looked like?"*
> **Laura:** *No.*
> **Defense Attorney Bowman:** *What kind of hair?*
> **Laura:** *He had curly hair.*
> **Defense Attorney Bowman:** *Is that something you remember or is just Could you [have] heard your brother say?*
> **Laura:** I remember . . . .like a black guy's.
> (1-20-95 Laura Lopez Interview at pgs. 9-10).

- The pre-trial interviews conducted by defense counsel appeared to have no sound interview methodology.  At times the children are admonished during the interview and it is speculated that Laura may be reporting information she overheard from her brother's interview.

- The Lopez children testified during trial even though their responses were inconsistent both within original statements to police and across statements over time.  Identification questions were posed to the children in spite of their responses that they did not see the defendant's face.

13

> **Attorney:** *Do you think you saw his face or you don't think or you don't remember?*
> **Ray:**   I didn't see it.
> (4-7-95 Trial Transcript at pgs. 26).

- The case file did not reveal any consultation with a child witness expert during the investigation, pre-trial phase and trial testimony of the child witnesses. There were several centers providing taped forensic interviews of child witnesses in the State of Arizona in 1995. Such services were readily available to law enforcement throughout the State of Arizona. Additionally, the science regarding both strengths and limitations of child witness capacities, as well as scientifically supported child interview strategies was readily available to the legal community.

## V.  Conclusion

Given the totality of information I reviewed, it is my opinion that the information obtained from the Lopez children regarding the defendant is unreliable as the result of post event contamination, both with regard to interviewing the children with others witnesses present and information provided to the twins via the television coverage, as well as the use of interview procedures that did not involve scientifically sound methods.

The following points outline what should have been done to ensure reliable information of what the Lopez twins did or did not see:

*Investigation Phase*

### 1.  Qualified Interviewers

If detectives assigned to the case were not trained or qualified, there were several centers throughout the State of Arizona that provided electronically preserved forensic interviews of child witnesses in 1995. Likewise, there were professionals in private practice with expertise that were readily available.

### 2.  Cross Contamination of Witnesses

It was critical in this matter to interview the collateral witnesses separately so that the responses of one would not influence the responses of the other.

### 3.  Scientifically Sound Investigative Interview Method

A scientifically sound interview methodology would have maximized the quality of information obtained from the child witnesses. For example, the NICHD

14

interview protocol for use during investigative interviews of children includes the following components: a) development of rapport, b) obtaining narrative about a neutral topic to determine narrative capacities of the child, c) providing instructions to the child about the interview such as encouraging the child to provide as much information as possible, don't guess, okay to say I don't know, source monitoring instructions, d) inquiring about the investigative issues using a narrative prompt (e.g. *"tell me everything that happened from when you left to the store until you came home and talked to your Mom."),* e) clarifying confusing information, and f) closing the interview with neutral topics.

Narrative prompts were particularly important in this matter considering the distinction between interview questions that direct children to free recall versus recognition. Questions that prompt children to recognition tasks are largely direct and focused in nature. The majority of the interview questions asked of the Lopez children by Detective Clark were direct questions. At critical points, highly suggestive questions were asked of the children (E.g. *Was his hair short or long? Neat or messed up? Was she (the little girl) laughing or crying?)*

These types of questions require a child to accept or reject questions of interest to the investigator and place a greater pressure on a child to respond – whether or nor the child is sure of the response. The probability of error rises dramatically when shifting from recall to recognition testing (Dent, 1982; 1986; Dent & Stephenson, 1979).

Given that the children had spoken with their mother and father, as well as observed the defendant on television, particular attention would have been given to source monitoring capacities of the Lopez children (E.g. differentiating the source of their responses from personal recall, the media, conversations with others, etc.)

### *Pre-trial consultation*

A child witness expert would have provided suggestions with regard to pre-trial defense examination of key witnesses including:

  a) optimizing the environment in which the child interviews were conducted,
  b) means of minimizing cross contamination of information,
  c) specific questioning format for the children's mother,
  d) specific questioning format for the children's father,
  d) specific questioning format for each child eyewitness.

Consultation would have been offered regarding:

  a) pre-trial defense interview of Detective Clark,

b) suggestions for upcoming cross examination of Detective Clark (particularly regarding investigative interviews of children) during trial   Review of the trial transcripts revealed that no questions were asked of Detective Clark regarding his methods and procedures for interviewing the mother and the two children, Ray and Laura Lopez.  In fact, methodology was not addressed at all.  The children's tapes and/or transcripts were not introduced to demonstrate inconsistency, in spite of the inconsistencies both within and across interviews (5/3/94 and 1/20/95).

Additional Pre-trial Consultation:

a)  provision of relevant scientific documents, treatises and authoritative texts with regard to investigations involving child eyewitnesses as well as child eyewitness testimony, particularly regarding eyewitness identification,

b)  assistance with providing the scientific basis for pre-trial motions regarding testimony of child eyewitnesses,

After obtaining pre-trial interviews of the children, a child witness expert would have contributed to a comprehensive discussion with the defense team regarding whether the children's pretrial identification of Mr. Jones may have been impermissibly suggestive.

 It is this evaluator's opinion that there were factors (E.g. pre-interview circumstances, suggestive questions in the child interviews, cross contamination of witness statements) that could have been outlined in a pre-trial motion for judicial review to determine if the children's pre-trial identification of Mr. Jones was impermissibly suggestive. Pre-trial motions could have been filed with regard to these issues.

If the children's statement were determined to be the product of suggestion, the second prong of the Manson criteria would need to be examined from the science regarding child witness capacities.   In particular, the interview questions posed to the children to determine distance, view, attention and verbal descriptions could have been carefully prepared.  The interview questions posed to the Lopez children to determine these factors were not developmentally sound and therefore, would likely result in unreliable responses from the children (E.g. *How high can you count – to determine attention on the suspect yet the child states did not see the suspect's face).*

*Child Witness Expert During Trial*

If the children's eyewitness testimony was deemed admissible, a child witness expert would have been important to educate jurors regarding critical issues that could affect child eyewitness identification (e.g. factors prior to, during and following the criminal investigation that could affect child witness statements).

16

The opening statement of the defense attorney offered no scientific explanation to jurors regarding the child witness statements.

> *"[T]hey couldn't possibly have seen what they claim now months later to later to have seen. Why is that? I am not sure. . . ."*

A child witness expert would have provided specialized knowledge with regard to the complex interactions between child development, memory and both internal (child characteristics) and external factors that affect the accuracy and reliability of child witness statements.

_____         10/8/2009
Phillip W. Esplin, Ed.D.                      Date
Psychologist

17

## Selected References (Prior to 1995)

Brainerd, C. & Ornstein, P. (1991). Children's memory for witnessed events: the developmental backdrop. In J. Doris (ed.), *The suggestibility of children's recollections* (pp. 10-20). Washington DC: American Psychological Association.

Ceci, S. & Bruck, M. (1993). Suggestibility of the child witness: a historical review and synthesis. *Psychological Bulletin, 113*, 403-439

Ceci, S. & Ross, D. (1987). Suggestibility of children's memory: Psychological issues. *Journal of Experimental Psychology: General, 116*, 38-49.

Christianson, S. (1992). Emotional stress and eyewitness memory: A critical review. *Psychological Bulletin, 112,* 284-309.

Dietze, P. & Thompson, D. (1993). Mental reinstatement of context: A technique for interviewing child witnesses. *Applied Cognitive Psychology*, 7, 97-108.

DeMarie-Dreblow.D. (1991). Relation between knowledge and memory: A reminder that correlation does not imply causality, *Child Development*, 62, 484-498.

Dent, H. (1982), The effects of interviewing strategies on the results of interviews with child witnesses. In A. Trankell (ed.), Reconstructing the past: The role of psychologists in criminal trials (pp. 279-297), Stockholm: Norstedt.

Dale, P., Loftus, E., Rathburn, L. (1978). The influence of the form of the question on the eyewitness testimony of preschool children. *Journal of Psycholinguistic Research*, 7, 269-277.

Doris, J. (1991). *The suggestibility of children's recollections: Implications for eyewitness testimony.* Washington DC: American Psychological Association.

Farrar, M. & Goodman, G.S. (1992). Developmental changes in event memory. *Child Development, 63*, 173-187.

Fisher, R. & Geiselman, R. (1992). *Memory enhancing techniques for investigative interviewing: The cognitive interview.* Springfield, IL: Charles C. Thomas.

Fivush, R. & Hudson, J. (1990). Knowing and remembering in young children. New York: Cambridge University Press.

18

Flinn, R., Boon, J., Knox, A, & Bull, R. (1992). The effect of a five month delay on children's and adults' eyewitness memory. *British Journal of Psychology, 83*, 323-336.

Friedman, W.J. (1991). The development of children's memory for the time of past events. *Child Development, 62*, 139-155.

Goodman, G.S. & Bottoms, B.L. (1993). *Child victims, child witnesses: Understanding and improving testimony.* New York: Guild

Goodman, S. Bottoms, B.L. & Schwartz-Kenny (1991). Children's testimony about a stressful event: improving children's reports. *Journal of Narrative and Life History, 1*, 69-99.

Goodman, G.S. & Schwartz-Kenny, B.M. (1992). Why knowing a child's age is not enough: influences of cognitive, social and emotional factors on children's testimony. In H. Dent & R. Flin (eds), *Children as witnesses* (pp. 15-32). Chichester: Wiley.

King, M. & Yuille, J. (1987). Suggestibility and the child witness. In S. J. Ceci, D.F. Ross & M.P. Toglia (eds.), *Children's eyewitness memory (pp. 24-35).* New York: Springer-Verlag.

Lindsay, D.S. & Johnson, M.K. (1989). The eyewitness suggestibility effect and memory for source. *Memory and Cognition, 17*, 349-358.

McGough, L. (1994). *Child witnesses.* New Haven, Ct: Yale University Press.

Poole, D, & White, L. (1991). Effects of question repetition on the eyewitness testimony of children and adults. *Developmental Psychology, 27*, 975-986.

Saywitz,, K. (1988). The credibility of the child witness. *Family Advocate, 10*, 38.

Saywitz, K., Nathanson, R. Snyder, L. & Lamphear, V. (1993). *Preparing children for the investigative and judicial process: Improving communication, memory and emotional resiliency.* Los Angeles, CA: National Center on Child Abuse & Neglect.

Sternberg, K., Lamb, M., Hershkowitz, I., Esplin, P.W., Redlich, A. & Sunshine, N. (1996). The relation between investigative utterance types and the informativeness of child witnesses. *Journal of Applied Developmental Psychology, 17*, 439-451.

Zaragoza, M.S. & Lane, S.M. (1994). Source misattributions and the suggestibility of eyewitness memory. *Journal of Experimental Psychology, Learning, Memory & Cognition, 20*, 934-945

19

Walker, A.G. (1993).  Questioning young children in court:  a linguistic case study.
Law and Human Behavior, 17, 59-81.

**Selected Law Review Articles**:

Koosed, M. (2009).  *Reforming Eyewitness Identification Law and Practices to Protect
the Innocent*.  Creighton Law Review, University of Akron School of Law, Legal
Studies Research Paper No 09-02.

Wells, G. & Quinlivan, D. (2009).  Suggestive Eyewitness Identification Procedures and
the Supreme Court's Reliability Test in Light of Eyewitness Science:  30 year later.  In
Law and Human Behavior, 33, 1-14.

## Selected References From 1994 to the Current Time

American Professional Society on the Abuse of Children (1997).  *Guidelines for
psychosocial evaluation of suspected sexual abuse in young children*.  Chicago:
American Professional Society on the Abuse of Children.

American Psychological Association.  (1998).  *Professional, ethical and legal issues
concerning interpersonal violence, maltreatment and related trauma*.  Report of
the ad hoc committee on legal and ethical issues.  Washington, DC:  American
Psychological Association.

Ceci, S.J. & Bruck, M.  (1995).  *Jeopardy in the Courtroom:  A scientific analysis of
children's testimony*.  Washington, DC:  American Psychological Association

Ceci, S.J. & Friedman, R.D.  (2000).  The suggestibility of children:  Scientific research
and legal implications.  *Cornell Law Review, 86,* 34-108.

Ceci, S.J., Powell, M.B. & Principe, G.F.  (2002).  *The scientific status of children's
memory and testimony*.  In D. Faigman, D. Kaye, M Saks & J. Sanders (eds)., Modern
Scientific evidence:  the law and science of expert testimony, Vol 2, (pp 144-205).  St.
Paul, MN; West Pub Co.

Jones, C.H. & Pipe, M.A.  (2002).  How quickly do children forget events? *A systematic
study of children's event reports as a function of delay*.  Applied Cognitive
Psychology, 16, 755-768.

Lamb, M.W., Hershkowitz, I., Orbach, Y. & Esplin, P.W.  (2008).  *Tell Me What
Happened:  Structured Interviews of Child Victims and Witnesses*. Chichester: John
Wiley & Sons.

Memon, A. & Vartoukian, R.  (1996*).  The effect of repeated questioning on young
    children's eyewitness testimony*.  British Journal of Psychology, 87, 403-415

Orbach, Y., Lamb, M., Sternberg, K., Vickerman, K., Pelaez, M., Sleeth-Keppler, E. &
    Norris, J.  (2003).  *Developmental differences in young children's reports of temporal
    information in the course of forensic interviews*.  A poster presented at the Biennial
    meeting of the Society for Research in Child Development, Tamp, FL, April 24-27

Pipe, M.E., Lamb, M.E., Orbach, Y. & Esplin, P.W.  (2004).  Recent research on
    Children's testimony about experienced and witnessed events.  Developmental
    Review, 24, 440-468.

Saywitz, K. Snyder, L., Nathanson, R.  (1999).  Facilitating the communicative
    competence of child witnesses.  *Applied Developmental Science, 3*, 58-68.

Thierry, K.L. & Spence, M. & Memon, A.  (2001).  Before misinformation is
    encountered:  source monitoring decreases child witness suggestibility.  *Journal of
    Cognition and Development, 2,* 1-25

21

Table 1.

Charts Summarizing Statements of Child Eye Witnesses
Over Time
Ray Lopez (DOB:  12/19/1985)
Laura Lopez (DOB:  12/19/1985)

BARRY JONES
RAY LOPEZ INTERVIEWS – CHILD WITNESS

| Ray Lopez age 8 by Detective Clark at his trailer in presence of mother 5/3/1994 | Ray Lopez age 9 by defense attorney Bowman in presence of sister Laura and County Attorney 1/20/1995 | Ray Lopez, age 9 Trial Testimony Pima County 4/7/1995 |
|---|---|---|
| Direct questions about school and teachers | Neutral topics, age, birthday school; states read a copy of what he said last time<br><br>**If don't remember, don't tell me something you don't know** | Direct neutral questions about where he lives, family members |
| **Mom sent you to the store and I guess when you came home you told her what you just saw?** Yes<br><br>**Explain to me what that was okay – um Sunday. I think your mom sent you to the store so let's start there.** (then does not let child answer <u>but asks direct questions</u> E.G. **What did she tell you to buy? What kind of gum did you get? What time of day?** Child states 5:00 or something in the afternoon when I came back from school. **Do you go to school on Sundays?** No<br>**Is it close – like maybe a block away or ten blocks?** "ten blocks" then child corrects self<br><br>**What did you see?** "A guy in a van driving with one hand and hitting her and then hitting (detective | **Sunday – start at the beginning of the day – remember what time woke up?** No<br>**Time during the day when you and your sister ended up walking over to the store?** 5:00 (pg.3).<br>**How do you remember do you sometimes wear a watch or?** Yeah<br>**Were you wearing a watch that day?** No<br><u>**What makes you remember it was 5 o'clock - is it because you read it in the papers you just read?**</u> Yeah. (pg.4).<br><br>Direct questions regarding the weather, type of clothes he was wearing, what bought at the store<br>Recalls he bought Pepsi and gum from the papers he read | Asks about if he gets sent to shop at Choice Market a lot; states yes, states he walks,<br><br>**How long does it take you to walk it?**<br>I don't know<br><br>**Do you remember going there one day with your sister and seeing something that you told your mom and the police about?**<br>Yeah<br>**Remember what day of the week it was that you saw this thing...**<br>Sunday<br><br>**What were you supposed to buy there?**<br>Pepsi and gum<br><br>**Time of day you went?**<br>Five<br><br>**Did you walk home after that?** |

| Ray Lopez age 8 by Detective Clark at his trailer in presence of mother 5/3/1994 | Ray Lopez age 9 by defense attorney Bowman in presence of sister Laura and County Attorney 1/20/1995 | Ray Lopez, age 9 Trial Testimony Pima County 4/7/1995 |
|---|---|---|
| interrupts)<br>**You said he was in a van?**<br>"Yellow"<br>Describe the guy "curly hair and um kind of a long nose"<br><br>Then series of suggestive multiple choice questions (E.g. **Neat or messed up? Messed up; Cowboy hat or baseball cap? Baseball Van moving or stopped? Moving?**)<br><br>See interview in its entirety | | Yeah<br>**What happened on the way home?**<br>A guy was hitting a girl<br>**Where was the guy?**<br>In a van<br>**What color was the van?**<br>Yellow<br>**Where was the little girl?**<br>In the van<br>**Big girl?  Little girl?**<br>Little girl<br><br>- white girls<br>- white man<br><br>**Remember anything about the white man's hair?**<br>Bushy<br>**Van moving or stopped?**<br>Moving<br><br>- man had one on the driving wheel and one hand hitting her<br><br>**I want you to demonstrate for us what you saw about how the man was hitting her and how he was driving.  I'm going to ask Arlene to give up her chair for a moment and I'm going to ask you to be the driver...**<br><br>**Pretend I'm the little girl** |

3

| Ray Lopez age 8 by Detective Clark at his trailer in presence of mother 5/3/1994 | Ray Lopez age 9 by defense attorney Bowman in presence of sister Laura and County Attorney 1/20/1995 | Ray Lopez, age 9 Trial Testimony Pima County 4/7/1995 |
|---|---|---|
| | | and you can hit me the way you saw the man hitting the little girl.... |
| | | (Demo) |
| | | How many times did you see the man hit the little girl like that? Three (pg. 11). Three times and do it again and do it slow so we can see what your hand motion is like. I am reflecting for the record he is directing his left hand towards the -- excuse me his right hand toward the left side of me with a closed fist and it's the back of the fist that is striking the left side of my body. |
| | | Now you have hit my shoulder -- am I taller than the little girl? Yeah, Do I need to like scrunch down or can you show me where on the little girl the back of the man's fist was hitting? No (pg.12). |
| | | States "right here" (chest) |
| | | Ever see him hitting her |

4

| Ray Lopez age 8 by Detective Clark at his trailer in presence of mother 5/3/1994 | Ray Lopez age 9 by defense attorney Bowman in presence of sister Laura and County Attorney 1/20/1995 | Ray Lopez, age 9 Trial Testimony Pima County 4/7/1995 |
|---|---|---|
| | | **with another part of his body?** His elbow (pg. 13). On her the chest<br><br>**Could you see what the little girl was doing?** Crying **Could you see her face?** No (pg. 13). **So you don't know whether she was crying or not?** Yeah **Is that a yes, you don't know?** Yeah **Do you remember telling the police you saw her with her mouth open and you could see that she was crying?** Yeah **How old did the little girl seem to be to you?** Four (pg. 14).<br><br>- shows him pictures of the scene<br>- Demonstrates where he was and where the van was<br>- Demonstrates where his house is in relation to the store<br><br>- didn't know the man |

| Ray Lopez age 8 by Detective Clark at his trailer in presence of mother 5/3/1994 | Ray Lopez age 9 by defense attorney Bowman in presence of sister Laura and County Attorney 1/20/1995 | Ray Lopez, age 9 Trial Testimony Pima County 4/7/1995 |
|---|---|---|
| | | -   Didn't know the girl<br><br>**What did you do when you got to your house?**<br>Told my mom there was a guy hitting a girl in a van<br>**Did you ever see the man again after that?**<br>In the news - TV (pg. 17).<br><br>Asks<br>**"Ray, I'm going to ask you if you recognize this man over here that I'm standing behind?**<br>Uh Uh (negative)<br>**I'm going to show you a picture marked as State's 128 and ask you if you have seen that man before?**<br>Yeah – the guy that was hitting the girl (pg. 18) .<br><br><u>Cross Exam</u><br>-   asks if he has ever seen the picture before (child states no, not from prosecutor or the police)<br><br>-   direct questions about how long it takes to walk to the store<br><br>-   "That was a long |

6

| Ray Lopez age 8 by Detective Clark at his trailer in presence of mother 5/3/1994 | Ray Lopez age 9 by defense attorney Bowman in presence of sister Laura and County Attorney 1/20/1995 | Ray Lopez, age 9 Trial Testimony Pima County 4/7/1995 |
|---|---|---|
| | | **time ago for a guy your age to remember, do you remember it pretty much still or do you remember it from reading what you said to the police?**<br><br>- Remember it (pg. 21).<br><br>- Direct questions about the type of gum he bought<br><br>- Direct questions about which way he walks<br><br>- Direct questions about how close the van was "like as close as you and I are? Child stated no, kind of close<br><br>- Sister was the first to see the van was on the driving side of the van<br><br>- **So you didn't really see his face, did you? No**<br><br>- **Do you think you** |

| Ray Lopez age 8 by Detective Clark at his trailer in presence of mother 5/3/1994 | Ray Lopez age 9 by defense attorney Bowman in presence of sister Laura and County Attorney 1/20/1995 | Ray Lopez, age 9 Trial Testimony Pima County 4/7/1995 |
|---|---|---|
| | | saw his face or you don't think or you don't remember? |
| | | - I didn't see it (pg.26). |
| | | - Saw back of his head |
| | | - Has child stand up to see how tall he is and child does and states he was about even with the van windows |
| | | - **Ever see anything like that before?** Never saw anybody hitting a person in a car before?  No |
| | | - **Did it make you upset to see that?** |
| | | - A little (pg.28). |
| | | - **Told mom, did you say something about a friend of your daddy named Alonso?** It looked like him (pg.28). |
| | | Redirect |
| | | **What was it about Alonso** |

8

| Ray Lopez age 8 by Detective Clark at his trailer in presence of mother 5/3/1994 | Ray Lopez age 9 by defense attorney Bowman in presence of sister Laura and County Attorney 1/20/1995 | Ray Lopez, age 9 Trial Testimony Pima County 4/7/1995 |
|---|---|---|
| | | that looked like the man in the picture? **Bushy hair** <br> - questions to indicate the man was not Alonso, (he drives a car; he isn't the man in the picture) <br><br> Prosecutor shows him photo marked States 164 – **does this look like the van you saw the man driving that was hitting the little girl?** **No** **This is a different van?** Yeah **Why is it different?** Doesn't have – because it doesn't have windows in the side (pg. 29). <br><br> **When you saw the man hitting the little girl, you saw just through this front window, right here?** Yeah **But it was a yellow van?** Yeah (pg. 30). |
| Girl <br><br> **How was he hitting the little girl?** "He went like that and he went like that" **You're making a motion with your right hand and** | **Reynaldo – did anything unusual happen as you were walking to the store?** **Yeah** **Tell what's that?** Ah a guy in the van hitting the girl (pg. 6) | |

| Ray Lopez age 8 by Detective Clark at his trailer in presence of mother 5/3/1994 | Ray Lopez age 9 by defense attorney Bowman in presence of sister Laura and County Attorney 1/20/1995 | Ray Lopez, age 9 Trial Testimony Pima County 4/7/1995 |
|---|---|---|
| you have your fist closed. **Was he hitting the girl with his fist?**  Yes **What part of the girl's body was he fitting with his fist?**  Her face **Did you see how many times?**  Two in the face and one in the stomach<br><br>**Did you ever see him hit the girl with a different part of his body?**  His elbow in the mouth<br><br>**Was she happy or sad or crying?**  Crying kind of yelling **But you couldn't hear her?**  Couldn't hear her<br><br>**'You're doing really good** | Direct questions regarding where he say this, what van looked like (yellow – old) **Ray was on the side of the "person who drives"** Van moving **This is a hard question - Do you know how fast the van was moving?**  (pg. 8). Slow | |
| | **Can you tell me what the guy looked like – that was driving?**  Curly hair **Like mine?**  No really curly **Was it as curly as like an afro?**  Yeah **Kind of like a black person's kind of curly?** Yeah (pg. 10). | |
| **Hair?**  Short blond hair – pints to shoulders **How Old?**  She was about four – three, four **How many times do you think the guy hit her?** | Direct questions about anyone else?  "a little girl"<br><br>Direct questions about windows in the van "rolled up" | |

| Ray Lopez age 8 by Detective Clark at his trailer in presence of mother 5/3/1994 | Ray Lopez age 9 by defense attorney Bowman in presence of sister Laura and County Attorney 1/20/1995 | Ray Lopez, age 9 Trial Testimony Pima County 4/7/1995 |
|---|---|---|
| Five, four…one with the elbow and five with the fist (pg.11) . **Was he hitting her hard and was she like jerking back or was he just hitting her easy?** Hitting her easy<br><br>Mom then asks question – I was gonna ask if she was in the chair or in the middle (of the van)? In the chair<br><br>Detective continues: **Could you tell if she was getting hurt or injured?** Yes **Could you see anything like was she bleeding?** Uh uh (no) | Direct questions about **what the guy used to hit the girl?** "his right hand" (pg. 11).<br><br>**What part of her body he hit?** Face and stomach (pg. 11). | |
| | **Can you give me an idea how long you were looking at the guy – like what number could you have counted to while you were looking if you can remember?** Ten (pg. 12). | |
| | **Could you tell what the little girl did when she got hit?** Mmm cried<br><br>**What makes you think she cried – are you just thinking that's what a kid** | |

| Ray Lopez age 8 by Detective Clark at his trailer in presence of mother 5/3/1994 | Ray Lopez age 9 by defense attorney Bowman in presence of sister Laura and County Attorney 1/20/1995 | Ray Lopez, age 9 Trial Testimony Pima County 4/7/1995 |
|---|---|---|
| | would do if they got hit or is that something you saw? "she would be" (pg. 13).<br><br>But you didn't actually see her cry? No (pg. 13). | |
| | Remember what the guy was wearing? Mmm a blue shirt – a T-shirt | |
| | Do you remember the color of hair the little girl had? Kind of blonde | |
| | When you came home from the store that day did you tell anybody about what you saw? My mom<br><br>What made you think to tell her?<br>Mm I don't know<br>Just seemed kind of weird?<br>Yeah | |
| Next day watched the news<br>What did you see on the news? That guy only<br>You think it was the same guy? Yes<br>Pretty sure? Yes<br>Okay – you're doing really good<br>Did you hear what the news said about him? No | Did you see something on TV that made you think about this again? "Ah – the guy."<br>You saw a picture of him and you thought hey that's the same guy? Ah yeah<br>Are you sure?<br>CA: It's okay if you don't | |

| Ray Lopez age 8 by Detective Clark at his trailer in presence of mother 5/3/1994 | Ray Lopez age 9 by defense attorney Bowman in presence of sister Laura and County Attorney 1/20/1995 | Ray Lopez, age 9 Trial Testimony Pima County 4/7/1995 |
|---|---|---|
| | remember<br>**Child:** I don't remember"<br><br>Then series of confusing questions about whether he recalls seeing a picture of the guy on TV<br><br>Note CA (not defense) is the attorney who tells child we just want what you remember (E.g. CA is telling him "**we just want what you remember – there's no right or wrong answer**"; <u>Defense attorney:</u> "and you're just helping us so don't worry"<br><br>States he can't remember if he saw the man before or after they bought the Pepsi<br><br>CA then states "**if you don't want to answer our questions if it's like you'd rather do this another time that's okay cause it's important that you tell us, you know and that you pat attention to the questions. And <u>no – you can't look at your mother</u> for the answer you have to recall what you remember. And if you don't remember any – that's okay.**" (pg. 22). | |

| Ray Lopez age 8 by Detective Clark at his trailer in presence of mother 5/3/1994 | Ray Lopez age 9 by defense attorney Bowman in presence of sister Laura and County Attorney 1/20/1995 | Ray Lopez, age 9 Trial Testimony Pima County 4/7/1995 |
|---|---|---|
| | **You told Ms. Bowman you could count to ten - that's how long you looked at him. Now is that right –** too long of a time or too short of a time? No Or it can be right. **Is that about right or is it too long or too short?** Too short Okay – count to ten for me (pg. 24).<br><br>So you're telling me now that you recall that **it was on the way to the store** when you saw the man hitting the little girl? Yeah (pg.25). | |
| | **CA: Let me ask you this – if we were to go and pretend we're going to the store and buy a Pepsi and gum and try to recreate what happened on that day – could you tell us where you were and where your sister was and where the van was – those things like that?** Mm…no **CA:** Couldn't do that…you think you could do that? Yeah (pg. 28). | |

# Barry Jones
## Child Witness Laura Lopez

| Interview of Laura Lopez, Age 8 in the presence of her mother at their trailer 05/03/94 Detective Clark | Interview of Laura, age 9 by Leslie Bowman, Defense Attorney in presence of CA, and mom at Lopez home 01/20/94 | Trial testimony of Laura, age 9, Pima County 04/07/09 |
|---|---|---|
| * Direct questions about school, teachers | **D:** Laura – <u>you just sat through your brother's interview so you know how it's gonna go…</u><br><br>Don't remember that's fine; if remember tell us; no right or wrong answer<br><br><u>CA says</u>: your answers might be different than you brother's – okay everyone sees things differently | Demographics, school, upcoming barbeque |
| Intro to investigative issue: "Okay <u>before we turned the tape on</u> I explained to you a little bit about um last Sunday – 2 days ago you went to the store with your brother and you saw something happen is that right…what I wanna do is talk about what you saw that day – what did you do during the day before you saw this happen?<br><br>…playing and mom said to go to the store and buy sodas and gum | Direct questions<br><br>- doesn't remember what time woke up woke what did in the morning<br><br>**Do you remember going to the store at all?**  No (pg. 4)<br><br>**Do you remember the guy hitting the little girl?**<br>Yeah<br><br>**Why is that you think you remember that?**<br>I don't know<br><br><u>D</u>:  so maybe you remember it cause it was so unusual? | **Did you see something on the way home that you told your mom and your dad about?**<br><br>Yes<br><br>**What did you see?**<br><br>A guy in the yellow van hitting a little girl<br><br>**Did you see that through any windows in the van?**<br><br>The front windows.<br><br>**Do you remember what the guy looked like?**<br><br>Ugly<br><br>**Remember anything else about what the man looked like?**<br><br>Yeah – he had puffy hair |

2

**Barry Jones**
**Child Witness Laura Lopez**

| Interview of Laura Lopez, Age 8 in the presence of her mother at their trailer 05/03/94 Detective Clark | Interview of Laura, age 9 by Leslie Bowman, Defense Attorney in presence of CA, and mom at Lopez home 01/20/94 | Trial testimony of Laura, age 9, Pima County 04/07/09 |
|---|---|---|
| | | **Did you see his face, Laura?** <br><br> A little bit <br><br> **Did you see the face of the little girl?** <br><br> No <br><br> - white guy <br> - white girls with blond hair |
| Then series of direct questions… <br><br> E.g. **"What time?"** <br><br> Which store? <br><br> What did you do? | Direct questions about who carried the soda, who carried the gum | |
| **"Now this is the important part I want to talk about can you tell me what you saw?** <br><br> Mmm there is this guy – there's this guy he had a yellow van and um has this little (detective interrupts with **"where was the van?** And a series of questions such as **"was it moving or stopped?"** etc.) | **When you saw the guy hitting the little girl, was he walking or was he sitting or what was he doing?** <br> He was (inaudible) hitting the little girl. <br><br> **When you say driving with one hand, you mean he had one hand on the steering wheel?** Yeah <br><br> **What was he driving?** <br> Yellow van | **How was he driving the van?** <br><br> With one hand <br><br> **How was he hitting the little girl then?** <br><br> With his elbow <br><br> **Where on the little girl's body was he hitting her with his elbow?** <br><br> On the face <br><br> **Could you tell what side of her face?** <br><br> No <br><br> Has her demonstrate the |

**Barry Jones**
**Child Witness Laura Lopez**

| Interview of Laura Lopez, Age 8 in the presence of her mother at their trailer 05/03/94 Detective Clark | Interview of Laura, age 9 by Leslie Bowman, Defense Attorney in presence of CA, and mom at Lopez home 01/20/94 | Trial testimony of Laura, age 9,  Pima County 04/07/09 |
|---|---|---|
| | | hitting

**Do you remember telling the police and the lady sitting over there…you could see the little girl's face and she was crying?**

Yes

**So do you remember that she was crying?**

Yeah

**After you saw this man hitting the little girl did you go right home?**

Yes

**What did you do when you got home?**

Told my mom

**How come you told your mom about it?**

I don't know

**Were you kind of scared by what you saw?**

Yes |
| **Who was in the van?**

This guy and he had messy hair and um this little girl.

**Color of hair?**  It was little – it was brown | Questions about the colors of the sides, top and back of the van

**Did you see only one side of the van?**
Yeah | |

4

## Barry Jones
## Child Witness Laura Lopez

| Interview of Laura Lopez, Age 8 in the presence of her mother at their trailer 05/03/94 Detective Clark | Interview of Laura, age 9 by Leslie Bowman, Defense Attorney in presence of CA, and mom at Lopez home 01/20/94 | Trial testimony of Laura, age 9, Pima County 04/07/09 |
|---|---|---|
| **Series of both direct and suggestive questions**<br><br>**(E.g. Hair - Short or long?**<br><br>**Neat or messed up?)**<br><br>**Where was he sitting?** "In the front driving with one hand"<br><br>**Why are you saying he was driving with one hand, did you see?** Yes | **The side where the guy was driving?** Yeah<br><br>Through direct questions child states could see the guy all the way down to his waist<br><br>**Do you remember what the guy looked like?** No<br><br>**Kind of hair or ears?** Curly hair<br><br>**Is that something you remember or is just could have heard your brother say?** I remember ...curly like a black guy's<br><br>(See Ray's interview conducted just prior to this in which Laura was present and defense attorney suggests *"kind of like a black person's kind of curly?"*<br><br>Laura states the guy was white<br><br>No hat | |
| **Series of direct questions about the girl**<br>- hair color? Blonde<br><br>- how old? She was small | <u>Suggestive questions about position of the girl in the van</u><br><br>She was facing like the other way.<br><br>**Looking out her own window?** Yeah<br><br>**Or looking straight ahead in front?** Straight ahead more on the side | |

## Barry Jones
## Child Witness Laura Lopez

| Interview of Laura Lopez, Age 8 in the presence of her mother at their trailer 05/03/94 Detective Clark | Interview of Laura, age 9 by Leslie Bowman, Defense Attorney in presence of CA, and mom at Lopez home 01/20/94 | Trial testimony of Laura, age 9, Pima County 04/07/09 |
|---|---|---|
|  | Hair blonde – hair was down |  |
| **Series of direct questions about <u>distance</u> Laura was from the van**<br><br>**Like see the football in the bedroom was it further or closer?** Further like all the way to the fence over here | Distance questions - confusing<br><br>Asked to estimate how long could count – states I don't know | - shows her pictures that brother put X's on during his testimony where their house and the market are and where they would have been when the van passed; she agrees with the marks |
| **Do you remember what you saw when the van was going by?** Yeah<br><br>**Tell me what you saw** (pg.10)<br><br>He was going like that and like that twice at the girl<br><br>**You're making a hitting motion – was he hitting the girl?**<br>"Yeah but the little girl (<u>detective interrupts</u>)<br><br>**He was hitting the little girl?**<br><br>And he was like looking at her<br><br>Series of direct questions (E.g. Was she talking, could you hear anything she was saying?)<br><br>**Was she laughing or crying?** Crying<br><br>**Well I'm not sure you could see tears?** | Van moving<br><br>Laura – "he was hitting the little girl"<br><br>**Do you know how many times you saw him hit her?** Twice<br><br>**What part of her got hit if you could tell?**<br><br>In the – somewhere in the face<br><br>**Did the man hit her with his hand or was it?** With his elbow<br><br>She was crying<br><br>**How could you tell?**<br>She was crying and you can see her go like that<br><br>**How do you know she was crying?**<br>Her face was red and watery her eyes were watery<br><br>**Is this stuff you remember or is it just that you just** |  |

6

## Barry Jones
## Child Witness Laura Lopez

| Interview of Laura Lopez, Age 8 in the presence of her mother at their trailer 05/03/94 Detective Clark | Interview of Laura, age 9 by Leslie Bowman, Defense Attorney in presence of CA, and mom at Lopez home 01/20/94 | Trial testimony of Laura, age 9, Pima County 04/07/09 |
|---|---|---|
| But I saw her<br><br>**Did she have like blood on her face?**<br>I didn't see, I forgot (02544)<br><br>**Okay – you didn't see any blood?** I don't know but I saw him hit her real hard, fast – I saw it hit right here (face)<br><br>(pg. 12) | read it when you looked at the papers?<br><br>(pg. 13-14)<br><br>I remember | |
| States the guy looked like their parent's friend, Alonzo<br><br>**The guy driving the van and hitting the girl – that wasn't Alonzo was it?** No<br><br>Identifies the van as yellow | Questions about time – <u>how long it took to drive by</u> (E.g. *what could you count to, do you think?* "I don't know") | |
| <u>**Questions about the news:**</u><br><br>**Came home from school, did you watch the news?** No<br><br>Detective asks mom – **let me ask you, did they both watch the news?** Yeah we watched the news – remember I told you to come and watch the news so we could talk about the little girl? (Child – "Oh , Oh)<br><br>**Do you remember watching the news?** No<br><br>**Did your mom come and ask you to watch the news?**<br>Yeah | **What happened after?** I went home and then I told my mom and dad<br><br>Then saw a picture of the guy on the news<br><br>**When you saw the picture you were sure that's the guy?** Yeah<br><br>**Or you thought it could be?** <u>"It could be"</u> **(pg.18).** | -   did not know the man or the little girl<br>**Did you ever see the man again?**<br><br>On the news<br><br>**What was happening to the man when he was on the news, do you remember?**<br><br>No<br><br>**Did you tell your mom that was the same man that you had seen hitting the little girl?**<br><br>Yeah<br><br><u>**Cross Exam**</u> |

**Barry Jones**
**Child Witness Laura Lopez**

| Interview of Laura Lopez, Age 8 in the presence of her mother at their trailer 05/03/94 Detective Clark | Interview of Laura, age 9 by Leslie Bowman, Defense Attorney in presence of CA, and mom at Lopez home 01/20/94 | Trial testimony of Laura, age 9, Pima County 04/07/09 |
|---|---|---|
| **Did you see anybody on the TV on the news?** Yeah, that guy (pg. 19).<br><br>**And the guy on the television, who did you think he looked like?** Alonzo | | Questions about "remember you took us on a walk and showed us the market and everything?"<br><br>**Do you remember how far the market is from your house?**<br><br>No<br><br><br>More questions about distance<br><br>Demonstrates which way she was walking and which way the van was driving<br><br>More questions about "do you remember about how far away you were from the van?<br><br>No<br><br>- saw the man through the front window not the side window (pg. 43).<br><br>**Was her face higher than the windows?**<br><br>No (pg. 44).<br><br>**But you think you could see a little bit of her face?**<br><br>Yeah<br><br>**Do you mean a little bit like the top part or a little bit** |

**Barry Jones**
**Child Witness Laura Lopez**

| Interview of Laura Lopez, Age 8 in the presence of her mother at their trailer 05/03/94 Detective Clark | Interview of Laura, age 9 by Leslie Bowman, Defense Attorney in presence of CA, and mom at Lopez home 01/20/94 | Trial testimony of Laura, age 9, Pima County 04/07/09 |
|---|---|---|
| | | **like the side part?** |
| | | Little bit of the side part |
| | | **You could hear the little girl crying?** |
| | | No but I could see her face, her eyes. |
| | | **You could see her eyes?** |
| | | Her eyes watering. |
| | | **Could you see both her eyes?** |
| | | No |
| | | Questions about how it was she came to watch the news – mom called her to watch it |

**Exhibit 73**

## DECLARATION OF JUDITH LYNN CHAVEZ

I, Judith Lynn Chavez, declare as follows:

1.     I was the Desert Vista Trailer Park manager in May of 1994. Barry lived in a trailer in space #23 and I believe he had lived there for about five (5) years as of 1994.

2.     At the time of Barry's trial, I was never contacted by Barry's lawyer or an investigator. Had I been contacted, I could have provided the following information:

3.     Barry seemed like a decent enough person and he never gave me any trouble.

4.     I was familiar with Barry's daughter Brandie who lived with him because he usually sent her up to my office to pay the rent. Barry's rent was always paid on time.

5.     There were a lot of children living in the trailer park and they were always running around unsupervised.

6.     There were also a lot of people in and out of the trailer park and I often couldn't keep track of who was living where with whom.

7.     When I found out that Angela Gray and her three kids had moved in with Barry and Brandie, my husband and I discussed the fact that there were

more people living there than we would normally allow. We were thinking of drafting a letter to Barry telling him that Angela and her kids would have to leave since they did not have permission to be there.

8.     About a week and a half prior to her death, I saw Rachel standing in the doorway of the trailer and I noticed she had two black eyes.

9.     Rachel was yelling at some of the other kids in the trailer park. I was surprised because Rachel was only a little kid but she was swearing at the other kids.

11.     The police came and interviewed me on May 19, 1994. They asked me if I remembered seeing Barry drive around in the van with Rachel. I told them that if I had seen Barry drive by, I wouldn't have known if Rachel was with him or not because she was too little to be seen in the van.

12.     After Barry was arrested, I heard a rumor going around the trailer park that Stephanie Fleming's little boy had hit Rachel in the stomach but I do not remember the particulars.

I declare under the penalty for perjury that the foregoing is true and correct.

Signed this 4th day of _____, 2002, in Tucson, Arizona.

_Judith L Chavez_
Judith Lynn Chavez

Page 2 of 2

**Exhibit 74**

## DECLARATION OF JOSEPH CHAVEZ

I, Joseph Chavez, declare as follows:

1.      My wife Judy and I were the managers of the Desert Vista Apartment and Trailer Park back in May of 1994.  Barry Lee Jones was one of the residents of the trailer park at that time.

2.      At the time of Barry's trial, I was never contacted by Barry's lawyer or investigator.  Had I been contacted, I could have provided the following information:

3.      Barry lived in a trailer in space #23.  I knew that his girlfriend Angela and her kids had recently moved into the trailer Barry shared with his daughter Brandie.  My wife Judy and I were concerned about this because there were too many people living in Barry's small trailer.  We were thinking of drafting a letter to Barry telling him that Angela and her kids would have to leave since they did not have permission to be there.

4.      I heard through the grapevine that sometime during the day of Sunday, May 1, 1994, a two-year-old boy who was big for his age had hit Rachel in the stomach with either a stick or an iron bar.  I didn't know the little boy's name but I knew his mother was Stephanie Fleming.

Page 1 of 3

5.      Stephanie, her husband Mike, and their three kids lived in a small camper mounted on blocks in the trailer park.

6.      As soon as Stephanie heard about Barry and Angela's arrests, she packed up her stuff and had moved out within two hours.

7.      Stephanie did not even inform me, or my wife, as managers of the trailer park that they were moving out.

8.      As soon as I found out, I walked over to the area of the trailer park where the Flemings lived.  Neighbors of theirs informed me that Stephanie was scared to death that she would be held responsible for Rachel's injuries and that Child Protective Services would become involved.  They also told me that Stephanie did not want to get mixed up with the police or answer any questions.

9.      Stephanie's husband, Mike Fleming, had moved to Phoenix a day earlier but Stephanie and the kids weren't supposed to move there for several weeks until Mike had a chance to find a place and settle down.  Stephanie did not leave a forwarding address in Phoenix where she could be reached.

10.     Stephanie also acted very weird when the police came out to talk to everyone on May 1, 1994 and within two hours she had packed up and left for good.

11.     Approximately one to two weeks before her death, I saw Rachel

Page 2 of 3

with two black eyes.  I heard through the grapevine that she got the black eyes when she tripped over something and fell down.

12.    Barry always seemed very tolerant of all the children in the trailer park and I believed that Barry could be trusted around children due to his tolerance and the way that all of the children liked him.

13.    Due to my observations of Barry's interactions with children in the trailer park area, I do not believe he was capable of hurting any child.  I do not believe he is responsible for Rachel's death.

I declare under the penalty for perjury that the foregoing is true and correct. Signed this 4th day of _____ November _____, 2002, in Tucson, Arizona.


Joseph Chavez

**Exhibit 75**

## DECLARATION OF TERA JONES

I, Tera Jones, declare as follows:

1.      I am the daughter of Phillip Jones. Barry Jones is my uncle. My father and mother, Debbie Jones divorced shortly after Rachel died.

2.      When Angela was living with my uncle Barry, I was going back and forth between my parents. Since they were going through some hard times, I lived at my Uncle Barry's house a lot. It was easier for me to go to school from my Uncle Barry's house. I was about eleven (11) years old at the time.

3.      Angela had three (3) kids living with her and Barry, Jonathan (Jonnie), Rebecca and Rachel.  Also living with Barry was his daughter, my cousin, Brandie. Brandie and I hung out a lot together. Sometimes my cousin Amber, who is my Uncle Larry's daughter, would also hang out with us.

4.      My Uncle Larry was not as nice as my Uncle Barry. Us kids steered clear of my Uncle Larry. He was the strict one. He would yell, ground and/or spank us if we were acting up. I also remember a story about my Uncle Larry molesting his stepdaughters. While my Uncle Barry was fun and happy, my Uncle Larry was mean.

5.      Angela was also very mean. You could tell that she was not happy. She was always mad and tried to control everything. She even made us take naps for an

hour or two every day. I think she was just trying to get us out of her hair so she could do drugs or sleep off her high.

6.     Angela tried to keep her kids confined to the yard, but there was no room to play because there was wood and a chicken pen there. Angela didn't like her kids playing with the other kids in the park, including Brandie and me. When Rachel would try to hang out with us, Angela would spank her. I saw Angela hit Rachel across the face and back. When Angela did this often she would cut Rachel because her rings would turn around. I also remember Rebecca having a cut on her eye from Angela smacking her. I always saw bruises on Rachel's legs. I don't remember Angela hitting Jonnie. Jonnie was her favorite.

7.     At some point Brandie, Jonnie and I all started experimenting sexually with each other. Jonnie had sexual intercourse in the trailer with both Brandie and me. I think he was fourteen (14) years old at the time.

8.     I remember a man named "Bob" that lived almost across the driveway from my Uncle Barry. (You could definitely see my Uncle Barry's trailer from Bob's). Bob was always trying to talk to the kids in the trailer park and offering them candy. I also remember hearing a story that Bob molested either Brandie or Amber. My Uncle Barry may have confronted Bob about this.

9.     My Uncle Barry was always taking care of us. He would give us money to go to the store and do fun things with us like take us to see the fireworks. I remember for Rachel's birthday, my Uncle Barry went out and got a birthday cake for her to make sure she had one.

10.     Rachel was always hanging out with Barry. Brandie told me that on the Sunday before Rachel died, Angela told Rachel, as she often did, to stick close to Barry. Barry was working on his van and Rachel was playing inside the van and that's when she fell or was pushed out.

11.     I have never believed my Uncle Barry hurt Rachel. He was kind, happy and fun. In my opinion it is possible that Jonnie molested Rachel. I could see that he was getting very curious about sex. Also I think he was slow and may not have been able to control himself. Another possibility is Bob, the molester that lived almost across from my Uncle Barry. Rachel was not shy at all. She would go with almost anyone. Since Angela was always sleeping off her highs, Rachel was unsupervised a lot. I remember Bob was always saying "hi" to Rachel. It would have been very easy for Bob to get Rachel. Also, Rachel knew how to keep a secret. She was not at tattletale.

12.    No on from the police or prosecutor's office ever talked to me.

I declare under penalty of perjury under the laws of the State of Arizona and the United States that the foregoing is true and correct.

Executed on \_\_11 - 8 -_____, 2002.

Tera Jones

Tera Jones

**Exhibit 76**

### Declaration of Wendy Sloan

*W.S.*

I, Wendy Sloan, declare, as follows:

I have known Barry Jones for twelve years. When I was in my mid teens my mother, and siblings, and I met Barry. Mom and Barry were friends and eventually became lovers.

I lived at Desert Vista, the same park Barry, and sometimes my mom, lived in. My family has remained close to Barry since we have first known him.

I do not believe Barry could have done any of the things he is facing the death penalty for. Barry treated my sisters and I very well and was never abusive in any way to us. After I had my daughter, Ashley, Barry often spent time with her. She was the same age as Rachel Gray. I never had reason to question Barry's behavior with her and she was always happy to see and go with Barry. Barry came over almost ever day to take my daughter to McDonald's for an ice cream.

It would not surprise me to find out some of the other guys in the trailer park had hurt Rachel. There were lots of crazy, perverted people there. One of the families in the park had a son named Glenn who sexually assaulted his own sister Michelle, who was really young.

My mom's best friend, Laura Perkins' little girl, was molested by Ray Rodda when she was only one year old. Ray was Laura's mother, Patty's husband. Ray also sexually assaulted his other step-daughter, Lacey's child.

Some guy named Ken, from the park, actually tried to screw my dog. I had a Dalmatian in a cage in front of my trailer. Some of us saw Ken trying to do it with her. A lot of the guys in the park tried to get me in bed with them but he was the only guy that wanted my dog.

The nastiest little pervert was Jon Lux. He was always grabbing and pinching our breasts or butts. He chased all the girls, young and older and constantly tried to feel us up or swipe his hand between our legs. All the kids were afraid of him for that reason. When I babysat, I had to lock him out of the house.

I remember Brandie Chandler and Joanne Smith who lived there being scared to death of Jon. It was so bad, David Lacey, and Brad and Joe Garman, even beat Jon up for it.

I would have been very sad, but not surprised, if I had heard that any of these other guys had done what they say was done to Rachel.  But I was shocked when they said Barry did it.

I swear, under penalty of the laws of the state of Arizona and of the United states of America, that the foregoing is true and correct.

Executed on __10-25-02__                                   _Wendy Sloan_
                                                             Wendy Sloan

_____
Witness

**Exhibit 77**

THIS WILL BE A TAPED STATEMENT TAKEN BY DET. RANKIN, REFERENCE CASE 940502025.  THE DATE IS, UH, THURSDAY, MAY TW..

A.   19TH

..THE 19TH, I'M SORRY, MAY 19TH ON THURSDAY.  THE TIME NOW IS APPROXIMATELY, UH, 1025 HOURS.

LEGEND:  Q. DET. RANKIN   A. ISOBEL TAFE   A1. MARY YOUNG

---

Q.   And I'm at, uh, Isobel Tafe's residence?
A.   Right.

Q.   And actually the number on this..
A.   Is ●●●.

Q.   Is ●●, ok.  I'm gonna put this, uh, tape recorder right down in front of you.  Basically we were talking briefly about on, um, Monday, actually the 2nd of of May the, a detective came by and explained that we were investigating a homicide that occurred with a four year old girl, um, and she talked to you, is that correct?
A.   Yes, that's correct.

Q.   Ok.  Now what is it that you basically told her?
A.   Well..

Q.   What you knew about, uh, do you know the little girl's name?
A.   I don't know her name but I 'knowed' her when I seen the 'pitchurs'.  But I knowed the little girl had been over here.

Q.   Mm hm (yes).
A.   She had been over here on a Saturday, that was before the detective was here, and she had been playin', her and her sister had come over here visiting my little grandson.  And she was sittin' up out in the yard and her and I was sittin' there talkin' beca-, while her oldest sister was ridin' my grandson's bike.  And we talked and that and she was sittin' out there, she looked ok to me, all except for there was somethin' strange about her, I couldn't tell what it was, like she was scared.

Q.   What day was this?
A.   This was the Saturday before the detective was here, the Saturday before she had died.

Q.   Ok, ok.  So the detective was here Monday.
A.   Yes.

RANKIN\HOMICIDE\TAFE\#2336PENN

STATEMENT OF ISOBEL TAFE--CASE #940502025                    2

Q.   And this happened on Saturday that...
A.   Yes.

Q.   ...you saw her.
A.   And she was right here, it was around about, uh, oh, I'd say
     it musta been around about 2:00 or 3:00 o'clock in the
     afternoon.

Q.   Did you notice any, uh, fading bruises on her, any new
     bruises on her, anything like that?
A.   No because she was, she was dressed in a little short
     outfit, she had two little ponytails and, uh, but she sorta
     had like a, a grayish look about herself, I mean like, uh,
     like she might be sick or somethin', just like a, wasn't
     natural, it was just a pale grayish color.

Q.   Ok.
A.   And she didn't look natural.

Q.   And I understand you know Brandi, the other girl.
A.   Yeah.

Q.   That lives, Brandi Jones, the...
A.   Yes.

Q.   ...one that's the daughter of Mr. Jones.
A.   Yes.

Q.   What do you know about her?
A.   Well she, she had been over here two or three times and, uh,
     she acted kinda scared and Brandi, I do know that Brandi
     there for awhile was smokin'.  And, uh, she acted kinda
     strange and my daughter told me that she knows that, uh,
     Bra-, she went over to, one day, over there to the house...

A1.  And to pick up my nieces.

A.   ...and to pick up her nieces and when she went over there,
     uh, Brandi's father hollered at Brandi and grabbed her by
     the hair a the head and pulled her in the house.

Q.   Ok.  A..also present in the room is, what's your name,
     ma'am?
A.   Mary.

Q.   Mary.
A1.  Mary.

Q.   Mary Tafe?
A1.  Young.

RANKIN\HOMICIDE\TAFE\#2336PENN

STATEMENT OF ISOBEL TAFE--CASE #940502025                          3

A.    Young.

Q.    Young, ok.
A.    She's my daughter.

Q.    Alrighty.  Um, that's who the voice that you heard.  Mary
      Young, you saw, um, Barry Jones do that to Brandi Jones?
      Grab her by the hair?
A1.   Mm hm (yes).

Q.    And what was the reason why he did that?
A1.   'Cause he would have, he told her to do somethin' and then,
      come in the house and do her chores, do her chores and she
      wouldn't come in.

Q.    I see.
A.    So he grabbed her by the hair of the head and pulled her in
      the house.

Q.    Ok.  Is there anything else that you noticed about, uh,
      Rachel, the little girl?
A.    No, they, the little one, like I said, she acted like she
      was scared, she was here for awhile and then she went with
      her, she said somethin' about she had to go because she
      didn't want, uh, her dad or someone to be mad, or they would
      be mad.

Q.    Was she pretty verbal, I mean you could understand the way
      she spoke?
A.    Yes, it was somethin' like, she says, I gotta go, and that,
      before someone gets, daddy gets mad, or someone gets mad at
      her and I says, ok, I says you can come back when you want
      to.

Q.    Did you ever see, uh, Rachel with that, uh, subject, Mr.
      Jones?
A.    No, I have never seen him, I stay mostly over here but they
      come over here and play and they..

Q.    You really can't see all the way across the way...
A.    Huh uh (no).

Q.    ...can you?
A.    All I can just see is the, uh, ..

Q.    The neighbors next door to them.
A.    Neighbors next door to them.  But I, I can see 'em when they
      come around here and I seen the little girl couple a times
      come around over here and play and ever'thing, with her
      sister and that, and then they go up in front and play a

STATEMENT OF ISOBEL TAFE--CASE #940502025                          4

      little bit.

Q.  So Rachel would be running around here and...
A.  Yeah, she was playin' right around here that day and she'd
    went over and saw, um, I can't think of her name, it's a
    neighbor that left, uh, used to live right there, the one
    you were talkin' about.

Q.  Ok.
A.  She was playin' around over there for awhile.

Q.  And that person that lives in that camper shell, um...
A.  There's a note.

Q.  ...____ to her foster, foster mother?
A.  Foster mother.

Q.  Ok and you don't know who the foster mother is?
A.  No I don't, she never gave it, all I know they separated,
    her and her husband is separated and I don't know where
    they're at.

Q.  Ok.  Somewhere in Tucson though.
A.  Yeah.  She's at, I don't know, you could probably, um, ask,
    uh, over there in that trailer over there.

Q.  That Mexican lady?
A.  Ye-, the, uh, she's an Indian lady.

Q.  Indian lady?
A.  Uh huh (yes).

Q.  I see.
A.  Her name's Pauline.

Q.  Ah, Pauline, I've already spoken to her.
A.  She might know about her.

Q.  Right.  Alrighty.  Well if that's all you have.
A.  Uh huh (yes).

Q.  Do you have anything you'd like to add?
A.  Not that I know of anything else, but I just was worried
    about that little girl.

Q.  Well thank you very much.

STATEMENT OF ISOBEL TAFE--CASE #940502025                    5

THAT WILL CONCLUDE THE STATEMENT AT APPROXIMATELY, UH, 1030
HOURS, SAME DATE.


WITNESS:


_____

DET. RANKIN #672


TRANSCRIBED BY:

C. PENN, MAY 20, 1994

REVISED MAY 26, 1994, PER DET. RANKIN

**Exhibit 78**

PAGE 1

# DECLARATION OF PAULINE KINYON

I, PAULINE KINYON, DECLARE THE FOLLOWING,

1. I RESIDED IN THE DESERT VISTA TRAILER PARK FROM APPROXIMATELY DECEMBER, 1989 UNTIL ABOUT ONE OR TWO YEARS AFTER RACHEL'S DEATH.

2. I KNEW BARRY JONES AND HIS TWIN BROTHER ~~FOR SEVERAL~~ WHO I MET AT DESERT VISTA.

3. I TRUSTED BARRY TO WATCH MY CHILDREN IN THE PARK IF I WAS GOING TO BE GONE FOR A SHORT PERIOD OF TIME. I HAD SEVEN CHILDREN, FOUR BOYS AND THREE GIRLS.

4. AFTER RACHEL'S DEATH, I RECALL TWO OFFICERS COMING TO MY HOME AND ACCUSING MY TWO BOYS OF HURTING RACHEL. THE TWO OFFICERS INTERVIEWED MY TWO SONS, JULIAN AND ALFRED MOYA.

5. I TOLD THE OFFICERS THAT MY BOYS DID NOT HURT RACHEL. THEY ACCUSED THE BOYS OF HITTING RACHEL WITH A METAL BAR.

6. I TOLD THE POLICE THAT I DIDN'T THINK BARRY WAS RESPONSIBLE FOR RACHEL'S DEATH. TO THIS DAY I DO NOT THINK BARRY WAS RESPONSIBLE FOR RACHEL'S DEATH.

7. ONE TIME, I SAW RACHEL'S BROTHER JOHNNY WITH MY DAUGHTER, BELINDA, WHO WAS ABOUT FIVE YEARS OLD, ON A COUCH UNDER SOME BLANKETS. I THOUGHT JOHNNY WAS TRYING TO TOUCH MY DAUGHTER.

P.K.

PAGE 2

8. IN THE YEARS I KNEW BARRY, I NEVER SAW HIM BE VIOLENT WITH ADULTS OR CHILDREN.

9. I REMEMBER MY SON COMMENTING THAT RACHEL ALWAYS LOOK BEAT UP.

10. I DID NOT LIKE ANGELA AND DID NOT WANT HER AROUND MY DAUGHTER. ONE TIME ANGELA CAME TO MY HOUSE TO GET RACHEL AND WAS MAD BECAUSE ~~BECAUSE~~ RACHEL SAID SHE WAS HUNGRY. ANGELA YELLED AT RACHEL AND SMACKED HER. I TOLD ANGELA TO LEAVE AND SHE DID NOT COME BACK TO MY HOUSE.

11. I HAVE NEVER BELIEVED BARRY KILLED RACHEL.

I DECLARE THE FOREGOING TO BE TRUE TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION UNDER THE PENALTY OF PERJURY.

_Pauline Kinyon_
PAULINE KINYON

_04/-9/09_
DATE

_(signature)_
WITNESS

_4/9/09_
DATE

**Exhibit 79**

Page 1

# DECLARATION OF BELINDA MOYA

I, BELINDA MOYA, DECLARE THE FOLLOWING,

1. I AM THE DAUGHTER OF PAULINE KINYON AND LIVED AT THE DESERT VISTA TRAILER PARK AS A CHILD.

2. I REMEMBER RACHEL AND CONSIDERED HER MY BEST FRIEND AT THE TIME.

3. I REMEMBER RACHEL'S BROTHER JOHNNY. JOHNNY WAS ALWAYS TRYING TO TOUCH ME ON MY CHEST AND LEGS. I WAS TOO YOUNG TO KNOW WHY, BUT REMEMBER KNOWING HOW HE TOUCHED ME WAS WRONG.

4. I REMEMBER ONE TIME RACHEL TELLING HER MOTHER SHE WAS HUNGRY. RACHEL'S MOTHER YELLED AT HER AND SMACKED HER IN THE FACE. I REMEMBER SEEING THE MARKS ON RACHEL'S FACE

5. RACHEL TOLD ME "THEY ARE TOUCHING ME IN PLACES THAT THEY SHOULDN'T BE". I WOULD TRY TO TALK TO HER ABOUT THAT AND HER BRUISES TRYING TO FIND OUT WHO WAS HURTING HER SO I COULD TELL SOMEONE. I REMEMBER THIS BECAUSE NOT HELPING RACHEL HAS HAUNTED ME TO THIS DAY.

6. I REMEMBER SEEING JOHNNY PULLING RACHEL BY THE HAIR. JOHNNY WAS ALWAYS MEAN TO RACHEL AND WOULD ALWAYS PUSH RACHEL DOWN.

B.M.

PAGE 2   BELINDA MOYA

7. JOHNNY KICKED RACHEL IN THE RIBS ONCE SO HARD RACHEL COULDN'T CATCH HER BREATH. HE SEEMED MAD AT HER AND HAD THROWN ~~HER~~ RACHEL TO THE GROUND AND KICKED HER WITH HIS FOOT VERY HARD. RACHEL COULDN'T BREATHE AND STARTED TO TURN PURPLE. MY MOM CAME IN AND BLEW ON RACHEL'S FACE WHICH HELPED HER CATCH HER BREATH. I REMEMBER JOHNNY SAYING THAT RACHEL WAS ALWAYS TOUCHING HER STUFF.

8. I DON'T HAVE ANY MEMORY OF BARRY JONES.

9. AT THE TIME, I WAS KNOWN AS MAMAS.

I DECLARE THE FOREGOING TO BE TRUE TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION UNDER PENALTY OF PERJURY

BELINDA MOYA

4/9/09

DATE

WITNESS

4/9/09

DATE

**Exhibit 80**

# FEDERAL PUBLIC DEFENDER

**District of Arizona**
**Capital Habeas Unit**
407 West Congress, Suite 501
Tucson, Arizona 85701

**JON M. SANDS**
**Federal Public Defender**

**JENNIFER SCHNEIDER**
**Paralegal Specialist**
(520) 879-7645
1-800-758-7054
FAX (520) 670-5622

January 28, 2010

Mr. Aaron Haenel
Custodian of Student Records
Sunnyside Unified School District
Via Fax: (520) 545-2396

Re: Reynaldo Robert Lopez, D.O.B. 12-19-85, SSN: 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

Dear Mr. Haenel:

This is to follow up on my original letter of May 26, 2009, requesting your assistance
in obtaining copies of specific school records in your files pertaining to Reynaldo
Lopez. It is my understanding that Mr. Lopez attended Los Niños Elementary School
in 1994 and may have attended the school in the few years prior to or after this time.
This is to request copies of any school records, either medical or otherwise that
document his height and weight, specifically in or around the year 1994. I am sending
a release of information signed by Mr. Lopez which authorizes the release of this
information to my office.

**If no such records exist or were destroyed, please advise me in writing. These
records pertain to a federal habeas matter currently pending in the United States
Court of Appeals for the Ninth Circuit.**

Please contact me with any question or if you need any additional information. You
can reach me at 879-7645. Thank you for your assistance.

Sincerely,

Jennifer Schneider
Paralegal, Capital Habeas Unit

Matric No. 330598   Name   LOPEZ  JR          REYNALDO              ROBERTO      Birthdate   12-19-85   Date of Birth
                              (Last)                (First)              (Middle)

Place of Birth ___TUCSON, AZ___          Sex M X F   Ethnicity  HISPANIC       Date:

| PARENT/GUARDIAN | HOME ADDRESS | MAILING ADDRESS | TELEPHONE | BUSINESS ADDRESS | B |
|---|---|---|---|---|---|
| Father  REY | 5650 A. Leslie #3 | | 741-7357 | | |
| Mother  NORMA | | | | | |
| Step-parent | | | | | |
| Guardian | | | | | |

Emergency Phone Nos. (1) 984-4589  Ofelia Vega  (2) 889-1995 (neighbor)  (3)

## ENTRY — WITHDRAWAL — TRANSFER

| DATE | CODE | ENTERED FROM/WITHDREW TO | DATE | CODE | ENTERED FROM/WITHDREW TO | DATE | CODE | ENTERED FROM/WITHD |
|---|---|---|---|---|---|---|---|---|
| 8-19-91 | E2 | LOS NINOS | | | | | | |
| 1-5-98 | W1 | chap to Sierra | | | | | | |
| 1-7-98 | E5 | Sierra | | | | | | |
| 99/2000 | 57 | no show Sierra | | | | | | |

## ELEMENTARY SCHOOL RECORDS (Use Ink)

| School | LOS NINOS | LOS NINOS | LOS NINOS | L. Ni | Los Ninos | LN | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Grade | K | 1 | 2ND | 3 | 4th | 5th | | | | | | | | | | | |
| School Year | 91-92 | 92-93 | 1993-94 | 94-95 | 95-96 | 96-97 | | | | | | | | | | | |
| Teacher | FRITZ | Macias | Francial Prod | Sullivan | Cardas Morales | Martinez | | | | | | | | | | | |
| Attendance P/A | 75/9 | 77/14 | 75/9 | 80/5 | 95/7 | 75/8 | | | | | | | | | | | |
| Semester | 1 | 2 | 1 | 2 | 1 | 2 | 1 | 2 | 1 | 2 | 1 | 2 | 1 | 2 | 1 | 2 | 1 | 2 |
| READING LEVEL | | 12 | 14 | 2¹ | 2² | 3+ | 3+ | 4¹³ | 4⁴³ | 5 | 5 | | | | | | |
| COMPREHENSION | | A | 85/B | 95/B | 80/B | 83/B | 96/A | 94/A | 89/A | | | | | | | |
| READING SKILLS | | A | 85/B | | 89/B | 95/B | 94/A | | | | | | | | | |
| MATH LEVEL | | 12 | 14 | 2¹ | 2² | 3 | 3 | 4¹³ | 4⁴³ | 5 | 5 | | | | | | |
| COMPUTATION | | A | 89/B | 93/a | 86/B | 94/B | 90/A | 94 | | | | | | | | |
| PROBLEM SOLVING | | A | 88/B | 93/a | 86/B | 88/B | 84/A | | | | | | | | | |
| LANGUAGE | | A | 83/B | 80/B | 95/A | 90/B | 93/B | 90/A | | | | | | | | |
| SPELLING | | A | 89/B | 97/a | 88/B | 93/B | 96/B | 91/A | | | | | | | | |
| SCIENCE/HEALTH | | C+ | 83/B | 91/B | 88/B | 96/A | 10%/B | 88/B | | | | | | | | |
| SOCIAL STUDIES | | C+ | 80/B | 91/B | 84/B | 96/A | 91/A | 93/B1 | 96/B | | | | | | | |
| PENMANSHIP | | C | B | B | B+ | B+ | A | A | B | B | | | | | | |
| PE | | P | P | P | P | P | P | P | P | | | | | | | |
| ART | | P | P | P | P | P | P | P | P | | | | | | | |
| MUSIC | | P | P | P | P | P | P | P | P | | | | | | | |
| PROMOTED/RETAINED | 1st | 2nd | promoted 3 | 4th | 5th Cardas | | | | | | | | | | | |

LOPEZ, REYNALDO R    6  330598      LOPEZ, REYNALDO R    7  330598     LOPEZ, REYNALDO R    7
SMS   SEM 2 97-98 GRADE  UNITS ABS  Sierra SEM I 98-99 GRADE UNITS ABS  Sierra SEM 2 98-99 GRADE  UN

SCIENCE 6TH        A              HB/CH1/AA                         HB/CH1/AA
HR/CH1/AA                    3    SOC. ST.  7TH            A        SOC. ST.  7TH        A
MATH 6TH           A         3    MATH 7TH                B        MATH 7TH             B
SOC. ST.  6TH      A         3    P.E.                    A        COMPUTERS            B
LANG. ARTS 6TH     A         3    READING 7TH             C        READING 7TH          C
HOME EC-6TH        A         3    LANG. ARTS 7TH          A        LANG. ARTS 7TH       B
READING 6TH        A         1    SCIENCE 7TH             B        SCIENCE 7TH          C

MEM: 88/175 GPA: 3.8200          MEM: 88/88 GPA: 3.3300           MEM: 177/177 GPA: 3.0000

19 ____ - 19 ____ School _____     19 ____ - 19 ____ School _____
   8th Grade 1st Semester          2nd Semester

## STANDARDIZED TEST DATA

### Iowa Tests of Basic Skills

**STUDENT NAME:** LOPEZ,JR. REYNALDO  **STUDENT I.D. NUMBER:** 330598  **GRADE** 2  **LEVEL** 07  **FORM** J  **DATE TESTED** 10/95  **NORMS** FALL 88

| REFERENCE SCORES SHOWN | LISTENING | WORD ANALYSIS | VOCABULARY | READING | SPELLING | CAPITAL- IZATION | PUNCTU- ATION | USAGE | L TOTAL | VISUAL MATERIALS | REFERENCE MATERIALS | W TOTAL | MATH CONCEPTS | MATH PROBLEMS | MATH COMPUT. | M TOTAL | BASIC COMPOSITE | COMPLETE COMPOSITE | SOCIAL STUDIES | SCIENCE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS | | | | 81-24 | | | | | | | | | 86-22 | | | | | | | |
| NPR-S | | | | 42-5 | | | | | | | | | 51-5 | | | | | | | |
| RS | | | | 40-49 | | | | | | | | | 17-50 | | | | | | | |

---

### Iowa Tests of Basic Skills

**STUDENT NAME:** LOPEZ, REY  **STUDENT I.D. NUMBER:** 3305980000  **GRADE** 3  **LEVEL** 08  **FORM** J  **DATE TESTED** 10/96  **NORMS** FALL 88

| REFERENCE SCORES SHOWN | LISTENING | WORD ANALYSIS | VOCABULARY | READING | SPELLING | CAPITAL- IZATION | PUNCTU- ATION | USAGE | L TOTAL | VISUAL MATERIALS | REFERENCE MATERIALS | W TOTAL | MATH CONCEPTS | MATH PROBLEMS | MATH COMPUT. | M TOTAL | BASIC COMPOSITE | COMPLETE COMPOSITE | SOCIAL STUDIES | SCIENCE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GE | | 101-33 | | 81-20 | | | | | | | | | 107-47 | | | | | | | |
| NPR-S | | 54-5 | | 13-3 | | | | | | | | | 68-7 | | | | | | | |
| NCE | | 37-52 | | 35-27 | | | | | | | | | 20-60 | | | | | | | |

---

### Iowa Tests of Basic Skills

**STUDENT NAME:** LOPEZ, REY  **STUDENT I.D. NUMBER:** 330598  **GRADE** 4  **LEVEL** 10  **FORM** J  **DATE TESTED** 10/95  **NORMS** FALL 88

| REFERENCE SCORES SHOWN | LISTENING | WORD ANALYSIS | VOCABULARY | READING | SPELLING | CAPITAL- IZATION | PUNCTU- ATION | USAGE | L TOTAL | VISUAL MATERIALS | REFERENCE MATERIALS | W TOTAL | MATH CONCEPTS | MATH PROBLEMS | MATH COMPUT. | M TOTAL | BASIC COMPOSITE | COMPLETE COMPOSITE | SOCIAL STUDIES | SCIENCE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS | | 102-34 | 117-45 | | | | | | | 100-32 | | | 113-42 | | | | | | | 24 |
| NPR-S | | 27-4 | 59-5 | | | | | | | 50-5 | | | 51-5 | | | | | | 42-5 | 110-39 |
| RS | | 15-37 | 26-50 | | | | | | | 14-29 | | | 12-50 | | | | | | 3-21 | 17-47 |

---

### STANFORD — Achievement Test Series, Ninth Edition

LOPEZ    REY    R
GR: 05   AGE: 11-03    GENDER: MALE
LEVEL: INTERMED 2  FORM: TA
STUDENT NO.: 330598  TEST: MULTIPLE CHOICE
TEST DATE: 03/97  1995 NORMS: SPRING  NATIONAL

| SCORE TYPE | | TOTAL READING | READING VOCAB | READING COMP | TOTAL MATH | PROBLEM SOLVING | PRO- CEDURES |
|---|---|---|---|---|---|---|---|
| RS | | 44 | 25 | 39 | 44 | 40 | 24 |
| N/PR-S | | 69-6 | 76-6 | 64-6 | 82-7 | 85-7 | 73-6 |
| N/NCE | | 60-4 | 64-9 | 57-5 | 69-3 | 71-8 | 62-9 |
| GE | | 7.3 | 7.7 | 7.2 | 9.1 | 10.1 | 7.8 |

| SCORE TYPE | LAN- GUAGE | PRE- WRITING | COM- POSING | EDITING | USING INFO | PARTIAL BATTERY |
|---|---|---|---|---|---|---|
| RS | 38 | 11 | 10 | 17 | 17 | 166 |
| N/PR-S | 57-5 | 54-5 | 53-5 | 61-6 | 75-6 | 72-6 |
| N/NCE | 53.7 | 52.1 | 51.6 | 55.9 | 64.2 | 62.2 |
| GE | 6.4 | 6.0 | 6.0 | 6.8 | 8.6 | 7.7 |

---

### STANFORD — Achievement Test Series, Ninth Edition

LOPEZ    REYNALDO  R
GR: 06   AGE: 12-03    GENDER: MALE
LEVEL: INTERMED 3  FORM: TA
STUDENT NO.: 0000330598  TEST: MULTIPLE CHOICE
TEST DATE: 04/98  1995 NORMS: SPRING  NATIONAL

| SCORE TYPE | | TOTAL READING | READING VOCAB | READING COMP | TOTAL MATH | PROBLEM SOLVING | PRO- CEDURES |
|---|---|---|---|---|---|---|---|
| RS | | 56 | 19 | 37 | 47 | 26 | 21 |
| N/PR-S | | 55-5 | 50-5 | 59-5 | 54-5 | 51-5 | 61-6 |
| N/NCE | | 52.6 | 50.0 | 54.8 | 52.2 | 50.5 | 55.9 |
| GE | | 7.1 | 6.8 | 7.4 | 7.2 | 6.9 | 7.8 |

| SCORE TYPE | LAN- GUAGE | PRE- WRITING | COM- POSING | EDITING | PARTIAL BATTERY |
|---|---|---|---|---|---|
| RS | 33 | | 10 | 14 | 136 |
| N/PR-S | 43-5 | 57-5 | 51-5 | 43-5 | 52-5 |
| N/NCE | 46.2 | 57.1 | 50.5 | 46.2 | 51.3 |
| GE | 6.1 | 5.4 | 7.3 | 6.2 | 6.9 |

---

### STANFORD — Achievement Test Series, Ninth Edition

LOPEZ    REYNALDO
GR: 07   AGE: 13-03    GENDER: MALE
LEVEL: ADVANCED 1  FORM: TA
STUDENT NO.: 330598  TEST: MULTIPLE CHOICE
TEST DATE: 04/99  1995 NORMS: SPRING  NATIONAL

| SCORE TYPE | | TOTAL READING | READING VOCAB | READING COMP | TOTAL MATH | PROBLEM SOLVING | PRO- CEDURES |
|---|---|---|---|---|---|---|---|
| RS | | 55 | 15 | 40 | 36 | 25 | 11 |
| N/PR-S | | 672 | 645 | 667 | 660 | 658 | 663 |
| N/NCE | | 45.2 | 29.1 | 55.9 | 43.6 | 46.8 | 60.2 |

| SCORE TYPE | LAN- GUAGE | PRE- WRITING | COM- POSING | EDITING | PARTIAL BATTERY |
|---|---|---|---|---|---|
| RS | 60 | 10 | 11 | 19 | 151 |
| N/PR-S | 654 | 631 | 644 | 673 | NA |
| N/NCE | 69.6 | 41.5 | 66.6 | 82.7 | 43.5 |
| | 60.4 | 45.2 | 55.3 | 69.3 | 46.5 |

SSR207-8S

---

| INSERT | DATE INSERTED | BY WHOM | TRANSCRIPTS SENT |
|---|---|---|---|
| | INSERTS ENCLOSED | | |
| llment Form | | *J. B. Lorenzo* | 10/3/91 |
| th Record | | | |
| ial Services | | | |
| otion and Retention Forms | | | |
| School Records | | | |
| entary School Records | | | |
| dardized Test Data | | | |

OPERATION SCREEN
pleted  10-18-91  Initials  R.A.

LAST NAME: LOPEZ   JR.   FIRST: REYNALDO   MIDDLE: R.   Month 12   Day 19   Year 85   SEX: M☒ F   RACE: HISP.☒

DATE OF BIRTH   ASIR

## IMMUNIZATION

### DATES

| IMMUNIZATION | 1 | 2 | 3 | Boosters | |
|---|---|---|---|---|---|
| DTP | 5-5-86 | 7-18-86 | 2-23-87 | 10-6-87 | 4-9-90 |
| Td | | | | | |
| TETANUS | | | | | |
| OPV | 5-5-86 | 7-18-86 | 2-23-87 | 10-6-87 | 4-9-90 |
| MEASLES ⎫ MMR | 4-10-87 | | | | |
| RUBELLA ⎬ | | | | | |
| MUMPS ⎭ | | | | | |
| OTHER | | | | | |

## SPECIAL TESTS

| SPECIAL TESTS | Date | Results |
|---|---|---|
| COCCI | | |
| HISTO | | |
| CHOLESTEROL | | |

## ACTIVE PROBLEMS

| MO/YR | ACTIVE PROBLEMS | DATE RESOLVED |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |

## MEDICAL HISTORY

| MEDICAL HISTORY | DATE |
|---|---|
| ALLERGY AND ASTHMA | |
| CONVULSIVE DISORDERS | |
| CRIPPLING CONDITIONS | |
| CHEST CONDITIONS | |
| CHICKENPOX | |
| DIABETES | |
| EYE, EAR, NOSE DISEASE | |
| HEART CONDITION | |
| MEASLES | |
| GERMAN MEASLES | |
| MUMPS | |
| RHEUMATIC FEVER | |
| STREP INF. OR SCARLET FEVER | |
| TONSILLITIS | |
| VALLEY FEVER | |
| WHOOPING COUGH | |
| OPERATIONS: | |
| SERIOUS INJURY OR ACCIDENT | |
| TUBERCULOSIS OR CONTACT | |
| OTHER: | |

## COMMENTS

Fluoride 91-92
"       92-93
Chavira 94-95
"       95-96

## PHYSICAL ASSESSMENT

| PHYSICAL ASSESSMENT | | |
|---|---|---|
| DATE | 7/22/98 | |
| EYES | 20/20 ou | |
| NOSE | | |
| TEETH | caries | |
| GUMS | | |
| THROAT | | |
| TONSILS | | |
| EARS | #78 | |
| GLANDS | | 11/7/09 |
| HEART | 72M | |
| LUNGS | | |
| ABDOMEN | | |
| HERNIA | | |
| ORTHOPEDIC | | |
| SKIN | | |
| POSTURE | | |
| NUTRITION | | |
| BLOOD PRESSURE | 131/70 | |
| SPEECH | | |
| PHYS. ED. REC. | | |

# L HEALTH RECORD

**CONCERNING HOME**

| Business Address (pencil) | Phone | Family Physician (pencil) | | PHONE |
|---|---|---|---|---|
| | | NAME | ADDRESS | |

**IN CASE OF EMERGENCY (pencil)**

| | PHONE | NAME | | PHONE |
|---|---|---|---|---|
| | | ADDRESS | | |

Parent or Guardian | Home Address (pe

FATHER
MOTHER
NAME
ADDRESS

FRIE

```
LOPEZ
REYNALDO  ROBERT
GR:   3      05/03/95
LOPEZ JR
REYNALDO  ROBERT
GR:   2      01/19/94
```

```
330598!B  20!B      !B      !B      !          P!R L!R L!      !     !
HT    53!R  20!R      !R      !R      !           !    !       !  !----!  !
WT 67 !L  20!L      !L      !L      !          !P  P!       !     !
330598!B  20!B      !B      !B      !          !R  L!R L!      !     !
HT    49!R  20!R      !R      !R      !           !    !       !  !----!  !
WT 54 !L  20!L      !L      !L      !          !P  P!       !     !
```

| | GRADE | K | | | |
|---|---|---|---|---|---|
| | MONTH/YEAR | 11/91 | 10-92 | | |
| HEIGHT | | 45 1/4 | 47 1/2 | | |
| WEIGHT | | 44 1/4 | 48 3/4 | | |
| VISUAL ACUITY | B | | | | |
| | R | 20/20 | 20/20 | | |
| | L | 20/20 | 20/20 | | |
| WITH GLASSES | B | | | | |
| | R | | | | |
| | L | | | | |
| VISUAL ACUITY (Recheck) | B | | | | |
| | R | | | | |
| | L | | | | |
| WITH GLASSES | B | | | | |
| | R | | | | |
| | L | | | | |
| FARSIGHTEDNESS | | | | | |
| BV FAR | | | P | | |
| BV NEAR | | | P | | |
| DEPTH PERCEPTION | | | P | | |
| COLOR DEFICIENT | | | | | |
| HEARING | R | P | P | | |
| | L | P | P | | |
| HEARING (Recheck) | R | | | | |
| | L | | | | |
| DENTAL STATUS | Good | | | | |
| | Needs Care | | | | |
| SICKLE CELL (1X only) | | | | | |
| Hgb OR HEMATOCRIT | | | | | |
| BLOOD PRESSURE | | | | | |
| SCOLIOSIS | | | | | |
| TB SKIN TEST  (mm) | | | | | |

# ARIZONA SCHOOL IMMUNIZATION RECORD

This form must be completed from an immunization record provided by parent or guardian.
See reverse side for instructions.

## I. IDENTIFICATION INFORMATION

CHILD'S NAME / NOMBRE DE NIÑO: Reynaldo Lopez

BIRTHDATE / FECHA DE NACIMIENTO: 12/19/85

# 330598

ENTRY GRADE (circle) / GRADO (marque con círculo): Pre-K (K) 1 2 3 4 5 6 7 8 9 10 11 12

SEX / SEXO: MALE / NIÑO ☒   FEMALE / NIÑA ☐

## II. IMMUNIZATIONS

| | 1st MO./DAY/YR | 2nd MO./DAY/YR | 3rd MO./DAY/YR | 4th MO./DAY/YR | 5th MO./DAY/YR |
|---|---|---|---|---|---|
| **(DTP) Diphtheria, Tetanus & Pertussis** La Difteria, El Tétano, La Tos Ferina | 5/5/86 | 7/18/86 | 2/23/87 | 10/6/87 | 4/9/90 |
| **(DT) Diphtheria & Tetanus** La Difteria, El Tétano | / / | / / | / / | / / | / / |
| **(Td) Tetanus & Diphtheria** El Tétano, La Difteria | 5/24/95 | / / | / / | / / | / / |
| **(OPV) or (IPV) Polio Vaccine** La vacuna Para La Poliomielitis | 5/5/86 | 7/18/86 | 2/23/87 | 4/9/90 | / / |
| **(MMR) Measles, Mumps & Rubella** El Sarampión, Las Paperas, y la Rubeola Month, Day and year required | 4/10/87 | 1/12/94 | / / | / / | / / |
| **(Hib) Haemophilus Influenzae b** Required for Pre-K program, children under 15 months to age 5. La Vacuna Compuesta Haemophilus b Los Niños 15 meses de edad a 5 años de edad necesitan tener La vacuna para poder atender la programa de pre-jardin de infantes. | Manufacturer | Manufacturer | Manufacturer | Manufacturer | |
| **TB Skin Test: (optional)** List most recent test Prueba de tuberculosis del piel: (opcion) Liste la más reciente prueba | / / | / / | / / | / / | / / |
| **Other** | / / | / / | / / | / / | / / |

Notes:

This record is part of the mandatory permanent pupil records as defined in Section 36-671 of the Health Code, and Section 15-871 of the Education Code and shall transfer with that record. Local health departments shall have access to this record.

ADHS/OCS/VPDS/ASIR 109R (2/91)

## FOR SCHOOL USE ONLY

Enrollment Date: 8 - 19 - 91

### Schedule for Completion (Check dose(s) needed)

| VACCINE | 1ST | 2ND | 3RD | 4TH | 5TH |
|---|---|---|---|---|---|
| DTP/DT Td | | | | | |
| OPV/IPV | | | | | |
| MMR | | | | | |
| Hib | | | | | |

## III. DOCUMENTATION

I certify that I reviewed a record of this student's immunization and it has been transcribed accurately.
Date 8/19/91

Signature of Official: John M. ___

Documentation presented:
☒ Arizona Lifetime Record
☐ Foreign county (name) _____
☐ Out-of-state record (name) _____
☐ Other (name) _____

## IV. STATUS OF REQUIREMENTS

☒ A. Immunization complete.
   Date 10/10/91
☐ B. Currently up-to-date: more doses are due later. Needs follow-up.
☐ C. Laboratory evidence of immunity.
   ☐ Measles ☐ Mumps ☐ Rubella

Exemption for:
☐ D. Medical Reasons — Permanent
   Date _____
☐ E. Medical Reasons — Temporary until:
   Date _____
☐ F. Personal Beliefs
   Date _____

**Exhibit 81**



**Exhibit 82**

THIS WILL BE THE TAPED STATEMENT AS GIVEN TO TIF, DETECTIVE
RANKIN, REFERENCE CASE 940502025. I'M AT ███████████████████,
███████, THE DATE IS, UH, MAY 19TH, ON THURSDAY, 1994, AND THE
TIME IS APPROXIMATELY 1533 HOURS. ALSO PRESENT IN THE ROOM IS,
UH, DETECTIVE O'CONNOR AND I'M SPEAKING TO THE MANAGER OF, UH,

LEGEND:        Q.  DET. RANKIN      A.  JUDY CHAVEZ
               Q2. DET. O'CONNOR

---

Q.  What's this place?
A.  ███████████.

Q.  ████████████? Um, Judy Chavez.  Judy, could you please tell
    me your full name, please?
A.  Judith Lynn Chavez.

Q.  Okay.  And what is your date of birth and your age?
A.  ██████ and I'll be ██ in July.

Q.  Okay.  Do you have a phone number here?
A.  ███████

Q.  ██████ Okay.  Um, now you had talked to, um, an' y-, well,
    first of all you realize why we're doing this in-, whole
    investigation an' we had talked to you earlier, we, or,
    actually, when we were all here on s-, Monday, May 2nd, you
    pretty much knew that we were investigating the homicide of
    a four-year-old girl named, by the name of Rachel?
A.  Yes.

Q.  Okay.  And you know who the people were that were involved?
A.  Yes.

Q.  Do y-...
A.  I know the man, I didn't know the woman, the mother.

Q.  He, he's a resident here, then, one of your residents?
A.  Yes, yes, yes.

Q.  Do you know his name?
A.  Barry Jones.

Q.  Okay.  Now, um, there was something that you told the, one
    of the detectives, um, Detective Amado, about seeing Rachel
    about a week or s-, ago, a week or so prior to that?
A.  About a week, week and a half ago.

Q.  Okay.  Prior to when the, the Sunday incident?
A.  Yes.

Q.  Okay.  Can you tell me about that?

HOMICIDE\CHAVEZ\RANKIN\#3166\CAO

Pima County SO 05/17/02
Barry Lee Jones
00371

STATEMENT OF JUDY CHAVEZ -- CASE #940502025                    2

A.  That I just noticed her standing at the doorway with two
    black eyes.  It was like a distance.

Q.  Where was she standing at?
A.  At the doorway of their trailer, of Barry's trailer.

Q.  Okay.  And you were down that way for some reason?
A.  Yeah, I went to the trailer next door 'cause her dog was
    loose and I wanted to go to tell her to tie it up.

Q.  The, the people next door?
A.  Next door, yeah.

Q.  What's the people next door's name?
A.  Shirley Devoss (ph).

Q.  Are they friends with the Jones?
A.  I don't know.  I'm not sure.  I'm, I know the, um, Barry's
    daughter, Brandy, would go over there and play with her
    kids, but that's far as I know...

Q.  ...hm...
A.  ...I don't know how close they are or whatever.

Q.  What it is that you actually saw when you looked up and saw
    the little girl in the doorway?
A.  Just two shaded eyes, underneath the eyes, they were like
    shade of dark.

Q.  What color?
A.  It was at a distance, it just looked like a shadow.

Q.  Mm, hm (yes).
A.  Kind of, it was, you know, 'cause I didn't see her up close,
    I couldn't really tell her, purple or what.

Q.  Okay.  Had you seen the little girl before that?
A.  No.  I've never seen her before.

Q.  Is that the first time you ever knew that she was there, or?
A.  Mm, hm (yes), I knew she was there, but I never seen her.  I
    seen her brother, the deaf brother, one, couple times out
    front and that was it.

Q.  Uh, huh (yes).
A.  And that's all I, I didn't know her little girl was there
    till that day.

Q.  Okay.
A.  I didn't know she lived there, actually, that day I thought

HOMICIDE\CHAVEZ\RANKIN\#3166\CAO

STATEMENT OF JUDY CHAVEZ -- CASE #940502025                           3

       she was just visiting.

Q.    I see.  Did you realize that there was a, a woman living
       there with Barry Jones?
A.    No.  I didn't know that either.

Q.    You didn't know that, okay.
A.    I knew she was there visiting, but I didn't know she was
       living there.

Q.    Uh, huh (yes).  Now, did you ask about the, the eyes?
A.    I asked, uh, Barry's daughter, Brandy...

Q.    ...mm, hm (yes)...
A.    ...what happened to her, and she told me she tripped over a
       dog and fell and hit her nose and that they did take her to
       the hospital and she just had a fractured nose.  That's what
       Brandy told me.

Q.    So Brandy gives you an explanation as to?
A.    Yeah, she told me what happened, 'cause I asked her what
       happened to the little girl, how she got two black eyes, and
       she told me she tripped over a dog at, I think she said her
       uncle's house.  They were playing in the back yard and she
       tripped an' fell and broke her, uh, fractured her nose.

Q.    Did they tell you that, uh, or Brandy told you that they
       took her to the hospital?
A.    That's what Brandy said, yeah.

Q.    She just offered that or did you?
A.    Yeah, she offered that, I didn't ask.  She said, well, we
       took her to the hospital and they just said she had a
       fractured nose.  So, I took it that they took her there.

Q.    Mm, hm (yes).  Did, did you know what hospital it was?
A.    No, I didn't ask.

Q.    Now, ha-, do you talk to Brandy every once in awhile?
A.    I used to, sh-, not, not very often, just whenever she'd
       come pay the rent.  She'd come up with the money for the
       rent space and stuff.

Q.    Mm, hm (yes).
A.    That's about the only time I'd see her, or if she's gettin'
       off the bus from school I'd say, hi, and stuff, that was it.

Q.    Did she ever share anything with you, anything personal?
A.    No, I never was really that close to her.

Pima County SO 05/17/02
Barry Lee Jones
00373

STATEMENT OF JUDY CHAVEZ -- CASE #940502025                    4

Q.   Okay.  So you never asked her wh-, what was goin' on at home
     or...
A.   ...no...

Q.   ...how things were, anything like that?
A.   No.

Q.   When was the last time, um, prior to the little girl's death
     that, that you saw her?
A.   Saw Brandy?

Q.   No, the little girl, Rachel.
A.   The little girl, the time that I seen her on the step with
     the two black eyes?  About a week and a half before that.

Q.   A week and a half or so before that?
A.   I'll say a week and a half, a week.

Q.   Is there anything else that I haven't asked you that you can
     recall, that you know of?
A.   Not really.  I don't know.

Q.   On Sunday, between the afternoon hours, until the late
     evening hours, were you out and about?  Millin' around?
A.   No, I don't usually go in the back on Sundays 'cause we're
     closed on Sundays.

Q.   So you just stay up here?
A.   Mm, hm (yes).  If, we-, if, we're usually not home on
     Sundays.

Q.   Do you recall that Sunday evening?
A.   Mm, hm (yes).

Q.   Were you out in the back anywhere?
A.   No, not at all.

Q.   Okay.  So do, you don't remember seeing Rachel or Barry
     Jones?
A.   No.

Q.   Do you remember seeing Barry Jones or anybody in, um, do you
     know what his vehicle looks like?
A.   He had a yellow and white van, I believe.

Q.   Did you remember seeing it drive out or anything?
A.   I don't really pay attention.

Q.   Okay.  Have you ever seen, uh, Barry Jones drive around in
     his van?

HOMICIDE\CHAVEZ\RANKIN\#3166\CAO

Pima County SO 05/17/02
Barry Lee Jones
00374

STATEMENT OF JUDY CHAVEZ -- CASE #940502025                    5

A.   Yeah, I seen a couple times, go in and out.

Q.   Do you recall if you ever seen, or, have you seen the little
     girl with him?
A.   No, no.  I, if she did, she was too little to see in the
     seat, but I'd just see him usually by himself.

Q.   Okay.
A.   Just like go, maybe to the store and back, 'cause he wasn't
     gone very long.

Q.   Detective O'Connor, do you have any questions that I haven't
     asked?
Q2.  I have one.  Have you heard of anybody else in the park
     talking about this incident, um, that they may have some
     information that we may not have contacted, they haven't
     come forward, but you think it's probably some good
     information that we should look into?  Is anybody, any
     other, uh, tenants here that you think we should go talk to?
A.   And, I don't know who you talked to already, Susie, if
     anybody, next door on the other side over here, you probably
     talked to her already.

Q.   Which one's Susie?
A.   Susie Hopkins, she lives in this trailer before Barry's.  As
     you're driving in, in space ⬛.

Q.   The one right before Barry's?
A.   Uh, huh (yes).

Q.   Right next door to him?  Are they good friends?
A.   Yeah, she's been here as long as he has, I believe.

Q.   Which is the one that you said her dog was running around?
A.   That's in ⬛   The one on the other side, at the end.

Q.   ...oh, on the opposite...
A.   ...that's Shirley, yeah...

Q.   ...lane.
A.   Yeah, as you're driving in, on, the first trailer, big
     trailer on the right hand side; that's Susie's, then
     Barry's, and then Shirley's, towards the end of the park.

Q.   I see.
A.   That's his dog, tell him to have tied up.

Q2.  Other than that, that Shirley, is there anyone else you can
     think of that when you're sitting around having coffee, or,
     or chattin', that you've heard somebody make some comment

HOMICIDE\CHAVEZ\RANKIN\#3166\CAO

STATEMENT OF JUDY CHAVEZ -- CASE #940502025                    6

    that, that you think is, is something that should be brought
    out and maybe we should look into?
A.  Not really, I'm, we don't really talk about it, much, you
    know, just say poor little girl, stuff like that, but, I
    don't know, I just say to myself that I should've called CPS
    myself when I seen her that way.  You can, probably might
    wanna talk to Dawn, maybe, 'cause she knew Barry, I guess,
    pretty well.

Q.  And how do you know Dawn?
A.  She lives in ██

Q.  Is that, what, do you know her last name?
A.  Mercer, I think.  Or Mercier.

Q.  Is she the one that came on TV, talking about it?
A.  No, that was Susie.

Q.  Oh, I remember Mary.
A.  And she used to live in ██ we transferred her to one of the,
    one that had been re-, renoveted (ph), renovated (ha).

Q.  Uh, anything else?
Q2. I don't have anything else.

Q.  Is there anything else you'd like to add?
A.  Not really, 'cause I just didn't, I didn't know them very
    well at all, I've only been here since October so.

Q.  Okay.
A.  Like I said, his daughter had come and paid the rent, an' he
    never came up here.

Q.  And she wouldn't talk to about anything, about her life?
A.  Mm, mm (yes).

Q.  Or she...
A.  ...I'd ask her about her love life and she'd laugh, I'm too
    young to have a love life and stuff like that, you know,
    that was about it, you know, we didn't, didn't really
    communicate very much.

Q.  Okay.  Well, I thank you.
A.  You're welcome.

Q.  Uh, statement will be concluded at approximately 1541 hours,
    same date.

Pima County SO 05/17/02
Barry Lee Jones
00376

STATEMENT OF JUDY CHAVEZ -- CASE #940502025                    7

STATEMENT CONCLUDED AT APPROXIMATELY 1541 HOURS.

WITNESS:

_____
DET. SONIA G. RANKIN, #672


_____
DET. MICHAEL G. OCONNOR, #642

TRANSCRIBED BY:

CAROLYN OLSON, MAY 24, 1994

HOMICIDE\CHAVEZ\RANKIN\#3166\CAO

Pima County SO 05/17/02
Barry Lee Jones
00377