**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barry Lee Jones,<br><br>               Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al,<br><br>               Respondents. | No. CV-01-00592-TUC-TMB<br><br>DEATH PENALTY CASE<br><br>**ORDER** |

Pending before the Court are Respondents' Motion to Preclude *Strickland*[1] Expert (Doc. 229); Motion to Preclude Petitioner From: (1) Cross-Examining Sergeant Pesquiera Regarding Her Bloodstain Interpretation Expertise, and (2) Eliciting any Opinion Testimony From any Witness Whether Sergeant Pesquiera was Qualified as an Expert Pursuant to Arizona Law (Doc. 232); and Motion to Limit Evidence to Original Claim (Doc. 234). The Court heard argument on these motions at the prehearing conference on October 27, 2017.

Respondents oppose Petitioner's use of a standard of care, or "*Strickland*," expert on the basis that such testimony is admissible only to help the trier of fact resolve factual issues, and is not admissible to establish that counsel's actions fell below the relevant standard of care. (Doc. 229.) Additionally, Respondents assert that expert testimony on the prevailing professional norms is irrelevant because Petitioner's noticed witness,

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

attorney Dan Cooper, is not more qualified than this Court to determine the relevant professional norms at the time of Jones's trial or postconviction proceedings, or to decide whether counsel's acts or omissions were objectively reasonable. For the same reasons, Respondents also object to the admission of Dan Cooper's declaration (Petitioner's Exhibit 139).

In assessing the reasonableness of counsels' investigation, the Court must assess counsels' performance in the context of " 'prevailing professional norms,' . . . which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.' " *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (quoting *Strickland v. Washington*, 466 U.S. 668, 688–89 (1984)). The Court is fully qualified to understand and apply the legal analysis required by *Strickland* and it is within the Court's discretion to allow or exclude proposed expert testimony concerning a legal standard of care. *Williams v. Woodford*, 384 F.3d 567, 613 n.17 (9th Cir. 2004) (holding that rejection of a proposed *Strickland* expert was not a prejudicial abuse of discretion); *LaGrand v. Stewart*, 133 F.3d 1253, 1271 n.8 (9th Cir. 1998) ("[T]here is no requirement that expert testimony of outside attorneys be used to determine the appropriate standard of care."). The Court finds that expert testimony on the issue of the prevailing professional norms at the time of Petitioner's trial and post-conviction proceedings may be helpful and will therefore allow expert testimony on this subject. *See Earp v. Cullen*, 623 F.3d 1065, 1075 (9th Cir. 2010) (upholding district court's decision to allow expert testimony regarding "what trial counsel should have done" but precluding expert from opining on the adequacy of trial counsel's performance). The Court will, however, exercise its discretion to preclude expert testimony on the subject of the adequacy of trial counsel's performance and any resulting prejudice therefrom. Respondents' objections to the related exhibit on the same grounds is overruled. To the extent the declaration contains statements regarding the experts' opinions on issues other than the prevailing professional norms, the Court will disregard them.

Next, Respondents argue that Petitioner should be precluded from cross-

examining the lead investigator, Sergeant Sonia Pesquiera, or any witness, about her bloodstain interpretation expertise. (Doc. 232.)

During Petitioner's trial, the court allowed Sergeant Pesquiera's bloodstain interpretation testimony over counsel's Rule 702 objection. (RT 4/12/95 at 65–66.) The court indicated the testimony the prosecutor was attempting to elicit sounded "awfully speculative," but permitted the prosecutor to question Pesquiera regarding "what an impression site is" while cautioning the prosecutor not to go "any further." (*Id.*) Pesquiera explained to the jury that, as a result of a week long course in bloodstain evidence and courses she had taken in forensic pathology through the University of Arizona, she was not an expert "in the field of blood stain evidence or being able to identify it." (*Id.* at 28–29; 62–63.) She "could appreciate what type of stains they were in relationship to where the victim could have been and the assailant could have been," but was not qualified to classify "what velocity" the stains were. (*Id.* at 62–65.)

Pesquiera testified that there appeared to be impression stains—"where you would rest an injured site on to a piece of material or mattress and it soaks through"—on the van carpet between the seats, where blood had soaked through. *Id.* at 64, 72. Pesquiera also testified that there were spatter stains on the van's passenger seat and some of the carpet consistent with a person that has a bleeding injury being struck or shaken causing the blood to spatter out. *Id.* at 72–73.

The Court previously denied Jones's request to depose Sergeant Pesquiera, finding the deficiencies of her blood interpretation evidence not relevant to the Court's analysis of whether the outcome of the proceedings would have been different if trial counsel had investigated whether there were innocent explanations for the blood located in Jones's van. (Doc. 185 at 36.) Thereafter, the parties jointly moved for the deposition of five witnesses, including Pesquiera. (Doc. 200.) The parties asserted as cause that allegations that the new forensic evidence presented in these proceedings undermined Pesquiera's homicide investigation, and that this was relevant to the Court's *Strickland* prejudice analysis. (*Id.* at 4.)

Respondents now suggest that this Court's order precludes any cross-examination of Pesquiera as to her background and qualifications in bloodstain interpretation. This Court's order, however, did not reach Pesquiera's qualifications, rather, it found good cause lacking to depose Sergeant Pesquiera for the purpose of exposing deficiencies in her own bloodstain interpretation. Respondents also argue that Jones should be precluded from eliciting any testimony, from any witness, that Pesquiera was not qualified as a bloodstain interpretation expert because that is a legal conclusion already decided by the trial court. Respondents also argue it is not relevant to the *Martinez* issue.

The Court finds that Petitioner's ability to present evidence, either through cross-examination of Pesquiera or direct testimony of James, regarding the limited degree of Pesquiera's training and expertise is cumulative of Pesquiera's trial testimony, and irrelevant to this Court's consideration of whether there is a reasonable probability of a different outcome had Petitioner's counsel sought the assistance of an expert in bloodstain interpretation.

Lastly, Respondents move to limit the scope of the evidentiary hearing to the procedurally-defaulted claims raised by Petitioner in his amended habeas petition (Doc. 58 ("Amended Petition")). (Doc. 234.) Specifically, Respondents have identified two categories of evidence which they assert exceed the scope of Petitioner's original claim: (1) evidence that there were serious flaws in Pesquiera's investigation of the timeline between Rachel's injuries and death; and (2) evidence presented by reconstruction and biomechanics experts, which proves that it was not possible for the Lopez children to have witnessed Jones assaulting Rachel as he drove into the Choice Market parking lot. Respondents argue that this evidence alters the claim alleged in the Amended Petition sufficiently to find that Petitioner is attempting to present new, untimely and unexhausted claims. Respondents also argue that these claims are outside the scope of the Ninth Circuit's remand order.

In response, Petitioner asserts that Respondents have waived this argument Petitioner also contends that the challenged evidence does not exceed the scope of the

claim or the remand order because it is offered as proof of prejudice of claims of deficient performance raised in the Amended Petition, specifically: (1) trial counsel's failure to investigate the critical medical timeline between Rachel's injuries and death, and (2) trial counsel's failure to properly challenge eyewitness testimony of the Lopez children.

Addressing Petitioner's waiver arguments first, the Court finds that Respondents' concession to the Court's expansion of the record, under Rule 7 of the Rules Governing Section 2254 Cases, to consider the proffered exhibits in determining whether Petitioner has demonstrated cause under *Martinez* (*see* Doc. 175 at 64–65) did not act as a general waiver of all threshold affirmative defenses to the underlying claim. Respondents preserved their objection to evidentiary development of the underlying constitutional claim. (*See* Doc. 175 at 72.) Next, Petitioner asserts that Respondents waived their objection to evidence of flaws in Pesquiera's investigation of the timeline between Rachel's injuries and death by entering a stipulation to depose Pesquiera which stated that Pesquiera's homicide investigation was relevant to the Court's *Strickland* prejudice analysis. The Court finds that, while it would have been preferable for the State to raise their procedural argument during supplemental briefing or in opposition to a motion to depose Pesquira, the Supreme Court has held that district courts have discretion to raise and consider these threshold barriers *sua sponte*. *See Day v. McDonough*, 547 U.S. 198, 209 (2006) (treating statute of limitations defense on par with other procedural defenses, and holding that district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition). The Supreme Court also recognized that these defenses " 'implicate[] values beyond the concerns of the parties' " such as judicial efficiency, conservation of judicial resources, safeguarding the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lending finality to state court judgments within a reasonable time. *Day*, 547 U.S. at 205–06 (quoting *Acosta v. Artuz*, 221 F.3d 117, 123 (2nd Cir. 2000)). Accordingly, despite the Respondents' failure to raise these affirmative defenses at an earlier stage of these proceedings, the Court, noting that Petitioner has had notice and an opportunity to

respond, *see Day*, 547 U.S. at 210 ("before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions"), will consider the issue raised by Respondents in this motion in limine.

Pursuant to Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is obligated to specify in a federal habeas petition all grounds for relief, as well as the facts supporting each of these grounds. *See Mayle v. Felix*, 545 U.S. 644, 661 (2005) (observing that Rule 2(c) requires pleading "separate congeries of facts" in support of each ground for relief); *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (observing that 'notice' pleading in habeas is insufficient and that petitioner "is expected to state facts that point to a 'real possibility of constitutional error'") (quoting Advisory Committee Note to Rule 4, Rules Governing Section 2254 Cases). In the context of exhaustion, a petitioner who presents a particular ineffective assistance of counsel claim in state court may develop additional facts to support that particular claim. This does not mean, however, that "a petitioner who presented any ineffective assistance of counsel claim below can later add unrelated alleged instances of counsel's ineffectiveness to his claim." *Poyson v. Ryan*, 743 F.3d 1185, 1202 (9th Cir. 2013), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798, 818–19 (9th Cir. 2015) (citing *Moorman v. Schriro*, 426 F.3d 1044, 156 (9th Cir. 2005)). A claim has not been fairly presented in state court if new evidence fundamentally alters the legal claim already considered by the state court or places the case in a significantly different and stronger evidentiary posture than it was when the state court considered it. *See Dickens v. Ryan*, 740 F.3d, 1302, 1318–19 (9th Cir. 2014) (citing, *inter alia*, *Vasquez v. Hillary*, 474 U.S. 254, 260 (1986); *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988); *Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988)). In the context of timeliness, the Court also considers the body of law which involves a determination of whether second-in-time petitions were previously presented for purposes of determining if the petition is successive. A "ground is successive if the basic thrust or gravamen of the legal claim is the same, regardless of whether the basic claim is supported by new and different legal arguments. . . . Identical grounds may often

be proved by different factual allegations. . . ." *Babbitt v. Woodford*, 177 F.3d 744, 746 (9th Cir. 1999) (quoting *United States v. Allen*, 157 F.3d 661, 664 (9th Cir. 1998) (internal quotations and citations omitted)).

The Court finds that the two categories of proffered evidence that Respondents assert exceed the scope of Petitioner's original claim—evidence that there were serious flaws in Pesquiera's investigation of the timeline between Rachel's injuries and death and evidence presented by reconstruction and biomechanics experts—neither fundamentally alter Petitioner's claims by new evidence nor do they raise new grounds for relief. The evidence is thus properly before this Court. As this Court previously found, Petitioner's Amended Petition alleged "specifically that his counsel: (1) conducted insufficient trial investigation; [and] (2) inadequately investigated the police work, medical evidence, and timeline of death versus injury." (Doc. 141 at 8; *see also* Doc. 115 at 8.) Petitioner also alleged that trial counsel failed to follow up on the preliminary investigative work, including physical measurements of Petitioner's van taken by their investigator "presumably to determine whether it was physically possible for the Lopez children to have actually seen Rachel sitting in the passenger seat of the van as they claimed. . . . Barnett informed Bowman of the photographs and measurements he took of the van. The fact that nothing was ever done with the measurements was particularly egregious since Ms. Chavez had told Barnett that Rachel was too little to be seen in the van." (Doc. 58 at 40–41.) The challenged evidence falls squarely into the category of additional evidence the Habeas Rules allow Petitioner to develop and present to demonstrate that he is entitled to relief on his claims. *See Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (good cause for Rule 6(a) discovery is shown where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief); *see also* Rule 8(c), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (the court should conduct the evidentiary hearing "after giving the attorneys adequate time to investigate").

Respondents also argue that Petitioner's evidence, developed after 15 years of

investigation and a budget for consultants and experts that exceeds $100,000, disregards *Strickland's* command that this Court must inquire whether trial counsel's performance was "reasonable considering all the circumstances," 466 U.S. at 688. The Court finds that this argument should be addressed by the Court when considering the merits of Petitioner's claims after the parties have had a chance to develop their evidence as to the prevailing professional norms at the time of Petitioner's trial.

IT IS THEREFORE ORDERED that Respondents' Motion to Preclude Strickland Experts (Doc. 229) is GRANTED IN PART. The Court precludes testimony from Petitioner's *Strickland* expert on issues other than the relevant prevailing professional norms.

IT IS FURTHER ORDERED that Respondents' Motion to Preclude testimony regarding Sergeant Pesquiera's bloodstain interpretation expertise (Doc. 232) is GRANTED.

IT IS FURTHER ORDERED that Respondents' Motion to Limit Evidence to Original IAC Claim (Doc. 234) is DENIED.

IT IS FURTHER ORDERED that Respondents objection to Petitioner's Exhibit 139 is OVERRULED.

IT IS SO ORDERED.

Dated this 30th day of October, 2017.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE