**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barry Lee Jones, | No. CV-01-00592-TUC-TMB |
| Petitioner, | |
| | <u>DEATH PENALTY CASE</u> |
| v. | |
| Charles L. Ryan,[1] et. al, | **ORDER** |
| Respondents. | |

Pending before the Court are Respondents' Motion to Stay Court Order of July 31, 2018 (Doc. 308),[2] and Petitioner's Cross-Motion for Release Pursuant to Federal Rule of Appellate Procedure 23(c) (Doc. 311). Both motions are fully briefed (Docs. 311, 319, 321). For the reasons that follow, Respondents' motion is DENIED and Petitioner's motion is DENIED without prejudice. The Court intends to enforce its order of July 31, 2018, (Doc. 299 ("Order")), unless Respondents initiate retrial proceeding by October 29, 2018 and actually commence retrial by March 13, 2019.

## I.      BACKGROUND

Petitioner Barry Lee Jones is a state prisoner under sentence of death. In 2001, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition"). The Court denied the

---

[1] The Clerk is direct to substitute Charles L. Ryan as the Director of the Arizona Department of Corrections, for Respondent Dora B. Schriro. *See* Fed. R. Civ. P. 25(d).

[2] "Doc." refers to numbered documents in this Court's case file (prior to August 2005) and this Court's electronic case docket (beginning August 2005).

Petition, finding Claim 1D, a guilt and penalty-phase ineffective assistance of counsel ("IAC") claim, procedurally defaulted. The Ninth Circuit Court of Appeals remanded Claim 1D for reconsideration in light of the procedural exception established in *Martinez v. Ryan*, 566 U.S. 1 (2012). (Doc. 158.) On July 31, 2018, following a seven-day evidentiary hearing, the Court concluded that Petitioner had established cause to excuse the procedural default of his meritorious guilt-phase IAC claim and issued a conditional writ directing the State to release or initiate retrial proceedings of Petitioner within 45 days and actually commence retrial in 180 days. (Doc. 299.) Judgment was entered accordingly (Doc. 300), and, on August 15, 2018, Respondents filed a notice of appeal to the Ninth Circuit. (Doc. 302.) Both deadlines in the conditional writ were extended once, by joint request, for 45 days. (Doc. 301.)

On September 12, 2018, Respondents filed a motion to stay the conditional writ. (Doc. 308.) On September 24, 2018, Petitioner filed a motion for his release pending appeal. (Doc. 311.) The Court referred the matter to the United States Pretrial Services Agency ("Pretrial Services") for an investigation and recommendation as to appropriate conditions for Petitioner's potential release. (Doc. 313.) Pretrial Services submitted a report to the Court and the parties on October 10, 2018. The motions were heard on October 12, 2018, at which time the Court denied the motion for a stay, and denied Petitioner's motion for release without prejudice on the record in court. This written order follows.

## II.    LEGAL STANDARD

### A.    Motion for Stay

Courts have broad discretion to condition judgments granting habeas relief as "law and justice require," and thus may delay release for a time to allow the State the opportunity to correct the constitutional violation. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (quoting 28 U.S.C. § 2243). If the State appeals the final judgment instead of initiating proceedings to correct the constitutional error, it may seek a stay of the petitioner's release by filing an appropriate motion in the district court prior to the

deadlines imposed in a conditional writ. *See* Fed. R. Civ. P. 62(c) (court may issue injunction pending appeal); Fed. R. App. P. 8(A)(1)(a) (party ordinarily moves first in the district court for a stay of the judgment); *cf. Hilton*, 481 U.S. at 775 (explaining that the language of Rule 23(c)—governing release of successful habeas petitioners pending appeal—allows broad discretion in considering whether a judgment granting habeas relief should be stayed pending appeal).

The Supreme Court has set forth the following factors a court should consider in determining whether to stay its decision or to release a successful habeas petitioner pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton*, 481 U.S. at 776. The questions whether to stay the decision granting habeas corpus relief and whether to release the prisoner pending appeal are "mirror images" of each other. *Franklin v. Duncan*, 891 F. Supp. 516, 518 (N.D. Cal 1995). The Ninth Circuit has explained that the test "represent[s] the outer reaches of a single continuum." *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1115–16 (9th Cir. 2008) (quoting *Lopez v. Heckler,* 713 F.2d 1432, 1435 (9th Cir. 1983)). "At one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury." *Id.* (quoting *Natural Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 862 (9th Cir. 2007)). "At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor." *Id.* at 1116 (quoting *Lopez,* 713 F.2d at 1435). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* (quoting *Winter,* 502 F.3d at 862). Further, courts "consider 'where the public interest lies' separately from and in addition to" irreparable injury. *Id.* (quoting *Winter*, 502 F.3d at 863).

**B.     Motion for Release**

In considering a motion for release of a petitioner pending appeal of a successful habeas petition a court should be guided by the language of Rule 23(c) of the Federal Rules of Appellate Procedure, in addition to the traditional stay factors. Rule 23(c) creates a presumption in favor of release of a habeas petitioner who prevails in district court, pending appeal.[1] Fed. R. App. P. 23(c). The Rule 23(c) presumption "may be overcome if the traditional stay factors tip the balance against it." *Hilton*, 481 U.S. at 777. In addition to the traditional standards governing stays of civil judgments, a court may consider other factors such as:   (1) the possibility the habeas petitioner will flee if released pending appeal, (2) the risk the petitioner may pose to the public, (3) the state's interest in continuing custody and rehabilitation pending resolution of the appeal, and (4) the petitioner's substantial interest in release pending appeal.  *Id.* at 777–78.

## III.     MOTION FOR STAY

**A.     Likelihood of Success on the Merits**

Respondents assert they are likely to succeed on the merits of their appeal, highlighting three issues for the Court's review: (1) the Court ordered an evidentiary hearing on Petitioner's claim in conflict with Supreme Court precedent interpreting 28 U.S.C. § 2254(e)(2) in the context of ineffective counsel; (2) the Court misapplied Arizona law by granting relief on Count Four, and (3) the Court erred in its Strickland analysis by failing to apply Strickland deference and the presumption of competence and by engaging in an incorrect prejudice analysis.

*//*

---

[1]     Specifically, Rule 23(c) provides that:

> While a decision ordering release of a prisoner is under review, the prisoner must–unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise–be released on personal recognizance, with or without surety.

Fed. R. App. P. 23(c).

## 1.    Evidentiary Hearing

Addressing the first traditional stay factor, Respondents argue that they are likely to succeed on their appeal because the Court erred in resolving a potentially case-dispositive question of law and in making certain factual findings.

First, Respondents argue the Court erroneously found that "if Petitioner can demonstrate cause and prejudice under *Martinez* to excuse the procedural default of Claim 1D, he is entitled to an evidentiary hearing on the merits to the extent such a hearing is necessary to resolve any disputed issues of fact" (Doc. 185 at 32). Respondents acknowledge that Petitioner is allowed, under the Ninth Circuit's ruling in *Dickens v. Ryan*, 740 F.3d 1302, 1321–22 (9th Cir. 2014) (en banc), to develop evidence for the purpose of demonstrating that cause exists to excuse a procedural default, but argue that, unless the Petitioner can also satisfy the requirements of §2254(e)(2), Petitioner may not support the merits of the underlying IAC claims with new evidence. At its core Respondents' argument is that, under *Martinez*, a petitioner may conduct extensive lengthy and expensive discovery, be permitted a full hearing on the substantiality of an IAC claim, and successfully demonstrate the ineffectiveness of both PCR and trial counsel, only to have the claim itself denied because the Court's discretion to hold an evidentiary hearing to resolve disputed issues of material fact is circumscribed by § 2254(e)(2). The Court disagrees.

Respondents' reliance on *Cullen v. Pinholster*, 563 U.S. 170, 185–86 (2011) to support their position is mistaken. As this Court previously stated, "[t]he evidentiary limitations described in [*Pinholster*], . . . do not apply to Petitioner's procedurally defaulted ineffective assistance claims because they were not previously adjudicated on the merits by the state courts." (Doc. 185 at 31) (citing *Dickens*, 740 F.3d at 1320–21 (rejecting the State's argument that *Pinholster* bars the federal court's ability to consider new evidence where the petitioner successfully shows cause to overcome the procedural default)). Citing *Pinholster*, 563 U.S. at 185–86, Respondents incorrectly state that, because the claim was not resolved on the merits in state court, § 2254(e)(2) requires

such evidence to be excluded when examining the merits of a procedurally defaulted claim. This is an incorrect reading of *Pinholster*, which held that "review *under § 2254(d)(1)* is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U.S. at 181 (emphasis added). Unlike the district court in *Pinholster*, which was required to conduct a "backward-looking" examination of the state-court decision at the time it was made, this Court has conducted a *de novo* review of Petitioner's claim because it was never raised in state court. *Pinholster* has no application here where there has never been any adjudication of the merits of the claim. Consequently, Respondents' argument in this regard is highly unlikely to succeed.

Next, Respondents next assert that there exists tension between this Court's decision and the Supreme Court's application of § 2254(e)(2) in the pre-*Martinez* decisions in *Holland v. Jackson*, 542 U.S. 649 (2004) (negligence of state post-conviction counsel "is chargeable to the client and precludes relief unless the conditions of § 2254(e)(2) are satisfied") and *Williams v. Taylor*, 529 U.S. 420, 437–40 (2000) (denying evidentiary hearing of *Brady* claim because post-conviction counsel's failure to investigate and locate a psychiatric report showed a lack of diligence and amounted to a failure to develop the facts under § 2254(e)(2)). The Court explained in *Pinholster* that a federal habeas court has discretion to take new evidence in an evidentiary hearing "when deciding claims that were not adjudicated on the merits in state court," and that discretion has limits, it is not, as Respondents, assert prohibited by § 2254(e)(2). *Pinholster*, 563 U.S. at 186. "Provisions like [§ 2254(e)(2)] ensure that 'federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Pinholster*, 563 U.S. at 186 (citing *Williams*, 529 U.S. at 427). To the extent there is "tension" between these cases and Court's ruling, this case is easily distinguished.

Under § 2254(e)(2), if a court determines that a petitioner has not been diligent in establishing the factual basis for his claims in state court it may not conduct a hearing unless the petitioner satisfies one of § 2254(e)(2)'s narrow exceptions, which are not

relevant to this case. If, however, "there has been no lack of diligence at the relevant stages in the state proceedings, the prisoner has not 'failed to develop' the facts under § 2254(e)(2)'s opening clause, and he will be excused from showing compliance with the balance of the subsection's requirements." *Williams*, 529 U.S. at 437. In *Williams*, a pre-*Martinez* decision, the Supreme Court found that a lack of diligence, "attributable to the prisoner or the prisoner's counsel," would establish a failure to develop the factual basis of the claim. *Id.* at 432.

In allowing Petitioner to develop and present new evidence in support of Claim 1D this Court concluded that if Petitioner can demonstrate he is not at fault for failing to bring the claim, and his procedural default is excused under *Martinez*, he is by extension not at fault for failing to develop the claim under § 2254(e)(2). (Doc. 185 at 33.) The Court is not alone in reaching this conclusion. Notably, the plurality in *Detrich v. Ryan*, 740 F.3d 1237, 1247–1248 (9th Cir. 2013) (en banc), suggested that it "makes little sense" to apply § 2254(e)(2) at all to an IAC claim underlying a *Martinez* motion because:

> . . . newly discovered evidence standard is not an apt source from which to draw a prejudice standard for ineffectiveness claims. The high standard for newly discovered evidence claims presupposes that all the essential elements of a presumptively accurate and fair proceeding were present in the proceeding whose result is challenged. An ineffective assistance claim asserts the absence of one of the critical assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard should be somewhat lower.

*Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Were this Court to have denied Petitioner an evidentiary hearing on his IAC claim when PCR counsel has been ineffective under the standards of *Strickland*, the harm the Supreme Court envisioned in *Martinez*—that "no court will review the prisoner's [trial counsel' IAC] claims"—would become a certainty. *See Martinez*, 566 U.S. at 11. Further, it is simply illogical, and extraordinarily burdensome to the courts and the litigants, in a post-*Martinez* world, for a court to allow full evidentiary development and hearing on the

*Martinez* "claim," but not allow consideration of that very same evidence as to the merits of the underlying trial-counsel IAC claim because his constitutionally ineffective PCR counsel failed to raise that claim. *Williams* and *Holland* are distinguishable in that neither case involved a so-called "*Martinez* claim." The equitable decision in *Martinez* is equally applicable to a showing of cause and prejudice of a defaulted claim as it is to evidentiary development of the claim itself. And it is not without limitation. Before a court can consider the new evidence on the merits of a procedurally defaulted trial-counsel claim a petitioner must first demonstrate (1) PCR counsel was ineffective under the standards of *Strickland*, and (2) the trial counsel IAC claim is substantial, requiring the court to consider the merits of the claim. These are difficult standards to meet.

At best Respondents' position is arguable. The Court has found no binding precedent clearly explaining the standards for development of new evidence on the merits of a defaulted claim after *Martinez*. Some courts have agreed with this Court's position, while others have at least suggested that evidentiary hearings on those grounds might be denied. *Compare Sasser v. Hobbs*, 735 F.3d 833, 853–54 (8th Cir. 2013) (*Williams* authorizes a district court that finds cause to excuse procedural default based on the ineffectiveness of post-conviction counsel to hold an evidentiary hearing on the claims) (quoting *Williams*, 529 U.S. at 437); *McLaughlin v. Laxalt*, 665 Fed. App'x. 590 (9th Cir. 2016) (unpublished) ("[A]lthough a state habeas lawyer's errors normally are imputed to a habeas petitioner for purposes of determining whether the petitioner has been diligent under § 2254(e)(2), [*Williams*, 529 U.S. at 432,] such imputation makes no sense in the context of a claim rescued from procedural default by *Martinez*."), *with Norman v. Stephens*, 817 F.3d 226, 234–35 (5th Cir. 2016) (stating, in dicta, that it would deny a request for evidentiary hearing, because petitioner's claims brought pursuant to *Martinez*, are "by their very nature . . . premised on the failure of 'the prisoner's counsel' to *develop* the factual basis of the claims in state court"); *Lopez v. Ryan*, No. CV098-72-PHX-SMM, 2012 WL 1520172, *11, n3 (D. Ariz. April 30, 2012) (noting that the Court is bound by the Supreme Court's directive in *Williams* that a failure to develop the factual basis of a

claim is not established unless there is a lack of diligence attributable to the prisoner or the prisoner's counsel, and further noting that, in *Williams*, the Supreme Court found that state post-conviction counsel's failure to investigate constituted a lack of diligence).

The Court finds Respondents have not demonstrated a strong or substantial likelihood of success on the merits of this argument, regardless of how that standard is articulated. *See Leiva-Perez v. Holder*, 640 F.3d 962, 966–68 (9th Cir. 2011) (explaining that an applicant for a stay need "not demonstrate that it is more likely than not that they will win on the merits," but must meet a "minimum quantum of likely success necessary to justify a stay," which may be articulated as "a reasonable probability," a "fair prospect," "a substantial case on the merits," or that "serious legal questions are raised"). Further, the Court finds that Respondents have not demonstrated the "minimum quantum of likely success necessary to justify a stay." *See id.* at 967.

## 2. Count Four

Respondents also argue that they have a strong likelihood of success on their argument that the Court erred by granting relief on Count Four.

In April and early May 1994, Petitioner was sharing his trailer with Angela Gray and her three children, including the four-year-old victim in this case, Rachel Gray and her siblings: 11-year-old Rebecca ("Becky") and 14-year-old Jonathon. Petitioner's 11-year-old daughter Brandie Jones also lived in the same trailer. The night before her death, Petitioner, Rachel's mother, and several others observed her bleeding from a head wound, vomiting, and appearing pale and ill. At approximately 6:15 a.m. on Monday, May 2, 1994, Petitioner drove Rachel and Angela to Kino Community Hospital in Tucson, Arizona, dropped them off and left. Rachel was admitted and pronounced dead on arrival. Her cause of death was determined to be homicide caused by a small bowel laceration due to blunt abdominal trauma. Rachel also had a laceration of her left scalp behind the ear, injuries to her labia and vagina, and multiple internal and external contusions.

Petitioner was arrested that same day and charged with five counts: (1) engaging

in an act of sexual intercourse with Rachel, in violation of A.R.S. § 13-1406 (Count One); (2) causing physical injury to Rachel by striking her abdominal area causing a rupture to her small intestine under circumstances likely to produce death or serious physical injury, in violation of A.R.S. §13-3623(B)(1) (Count Two); (3) causing physical injury to Rachel by bruising her face and ear and causing a laceration to her head, in violation of A.R.S §13-3623(C)(1) (Count Three); (4) causing Rachel to be placed in a situation where her health was endangered under circumstances likely to produce death or serious physical injury, in violation of A.R.S. § 13-3623(B)(1) (Count Four); and felony murder, in violation of A.R.S. § 13-1105 (Count Five).

Petitioner was tried before a jury in April 1995. The gravamen of the prosecution's case against Petitioner was that Rachel was solely in Petitioner's care on the afternoon of May 1, 1994, when her injuries, including her fatal abdominal injury, were inflicted. The trial judge instructed the jurors that three of the charges were predicate felonies for purposes of the felony murder count (Count Five): Count Two, alleging Petitioner struck Rachel in the abdomen rupturing her small intestine, Count Four, alleging Petitioner endangered Rachel by failing to take her to a hospital, and Count One, alleging Petitioner sexually assaulted Rachel. *See State v. Jones*, 188 Ariz. 388, 391, 937 P.2d 310, 313 (1997). The trial court instructed the jurors that the crime of child abuse under circumstances likely to cause death or serious physical injury required proof of the following three elements.

1.  The defendant acted under circumstances likely to cause death or serious physical injury;

2.  The defendant caused physical injury to a child, or, having custody or care of the child, the defendant allowed the health of the child to be endangered; and

3.  The defendant acted with one of the following mental states: (A) intentionally or knowingly, (B) recklessly, or (C) with criminal negligence.

(RT 4/13/95 at 67–69; ROA 135 at 670.)[3] The jurors were further instructed that the child

---

[3] "RT" refers to the reporter's transcripts from Petitioner's state court proceedings.

abuse charges could only be predicate felonies of the felony murder charge if Petitioner committed them intentionally or knowingly under circumstances likely to produce death or serious physical injury. *See Jones*, 188 Ariz at 391, 937 P.2d at 313. Petitioner was convicted on all charges. *See id*. The jurors found that both child abuse charges that qualified as predicate felonies (Counts Two and Four) were committed under circumstances likely to cause serious physical injury or death and that Petitioner's mental state was intentional or knowing. *Id*.; (ROA 684).

In 2014, after unsuccessful review in state court and after this Court denied Petitioner's habeas petition in 2001, finding Claim 1D defaulted, the Ninth Circuit directed this Court to reconsider that claim in light of *Martinez*, finding the defaulted claim "substantial" for purposes of remand. (*See* Doc. 158.) After evidentiary development and an evidentiary hearing, this Court granted the Petition, finding ineffective assistance of counsel as to all of the counts Petitioner was charged with, including Count Four—knowingly and intentionally endangering the victim under circumstances likely to produce death or serious physical injury in violation of A.R.S. § 13-3623(B)(1).

Respondents first argue that Petitioner did not challenge Petitioner's conviction on Count Four until after the evidentiary hearing in this case. In granting the writ, the Court considered this argument and rejected it: "Petitioner has maintained throughout these habeas proceedings that counsel failed to adequately investigate the medical evidence and the medical timeline of Rachel's injuries as to Petitioner's convictions as a whole." (Doc. 299 at 81–82, n17.)

For the same reasons, the Court finds this argument has no strong or substantial likelihood of success on appeal. Petitioner has consistently maintained that the deficient performance of counsel prejudiced his conviction *in toto*. (*See* Doc. 58, passim); Doc. 167 at 102–03 ("[T]he negative consequences of defense counsel's failure to conduct a minimally adequate investigation results in more than a reasonable probability that at

---

"ROA" refers to the 5-volume record on appeal from trial and sentencing.

least one juror (and surely all) would have 'had a reasonable doubt respecting guilt' and acquitted [Petitioner] of First Degree Murder.") (quoting *Strickland*, 466 U.S. at 693).) Petitioner also consistently argued that the altered evidentiary picture that could have been presented by competent counsel undermines confidence in the outcome of "the conviction." (Doc. 167 at 120–03.) By explicitly challenging the "conviction" and the first degree murder count, Petitioner necessarily argues that counsel's deficiency resulted in prejudice to all of the predicate felonies, including Count Four. Respondents addressed Claim 1D in the supplemental briefing to the petition as two subclaims—a guilt-phase claim, and a penalty-phase claim—but also referred to the conviction as a whole, not to individual counts. (Doc. 175, *passim*.) As Respondents previously argued, the felony murder count cannot be overturned if the verdict stands as to Count Four. (*See* Doc. 308 at 6.) It follows then that any challenge to the felony murder count implicates a challenge to all three predicate felonies.

Next, Respondents argue that the Court erred by finding Count Four "intertwined" with the other child abuse and sexual assault charges because the prosecutor supported the intentional or knowing infliction of the child abuse charge alleged in Count Four by arguing: "Rachel died because she was beaten in order to be raped. *She died as a result of that beating both because the internal injuries killed her and because only the [Petitioner] knew how badly she was hurt . . . .*" (RT 4/13/95 at 104 (emphasis added); *See* Doc. 299 at 81–83.) This Court concluded that "[i]f Petitioner was not responsible for the assault, under the State's own theory he would be less likely to have had reasons to prevent Rachel from being taken to the hospital." (Doc. 299 at 83.)

Contrary to Respondents' assertion that the Court, in an "unprecedented" order, set aside two presumptively-valid state-court convictions based only on a prosecutor's comments, the Court explicitly ignored the arguments and theories of counsel and considered each offense separately, finding little evidence that Petitioner committed the offense knowingly and intentionally. The Court did not set aside the convictions based on a prosecutor's comments, but simply reached the same conclusion the prosecutor urged

the jury to reach: that the evidence that Petitioner knew how badly Rachel was hurt was significant in determining whether he endangered Rachel intentionally and knowingly, or, in the absence of such evidence, acted with a lesser mental state. The Court accepted the testimony of the experts that Petitioner's failure to take Rachel to the hospital either caused or contributed to her death, and concluded that, "[a]t a minimum, in light of the evidence presented at trial and in these proceedings, the Court finds that there is a reasonable probability that the jury would not have found that Petitioner acted with a knowing or intentional mental state in Count Four if the defense had put on evidence questioning the medical timeline and suggesting that he was not the perpetrator of the assault. While Respondents are correct that the jury was properly instructed that the arguments of counsel are not evidence, it was also properly instructed that "what the lawyers said . . . may help you to understand the law and the evidence." (RT 4/13/95 at 64.) Assuming that the jurors properly followed instructions, they could infer, as the prosecutor argued, that Petitioner acted knowingly and intentionally in failing to seek aid for Rachel based on the uncontroverted evidence presented at trial that Petitioner inflicted Rachel's injuries. Conversely, the trial judge had also instructed the jury on two lesser included offenses and there is a reasonable probability that, if the jury had been presented with Petitioner's medical timeline evidence presented during these proceedings, at least one juror would have returned a verdict on one of the two lesser charges.

Respondents next argue that, under Arizona law it does not matter whether Jones knew how seriously Rachel was injured because a defendant's knowledge of how a child came to be injured, or the extent of the child's injuries, are irrelevant to the consideration of the mental state determination of intentionally or knowingly. (*See* Doc. 308 at 7 (citing *State v. Payne*, 233 Ariz. 484, 505–06, 314 P.3d 1239, 1260–61 (2013)).) The Court agrees with Petitioner, however, that what is relevant to the current inquiry is that the State demonstrated Petitioner acted knowingly and intentionally under Count Four by relying on an uncontested timeline that suggested he was the perpetrator of the assaults on Rachel.

1    In an argument that Respondents raised for the first time in a footnote in a
2 response to Petitioner's closing memorandum, they assert that, under Arizona law,
3 whether circumstances likely to produce death or serious physical injury exists is an
4 objective inquiry, and was affirmatively established by the medical experts' testimony at
5 the evidentiary hearing that Rachel was already dying on Sunday night, May 1, 1994, and
6 Petitioner's failure to take Rachel to the hospital caused her death. (Doc. 308 at 7 (citing
7 *Payne*, 233 Ariz. at 505–06, 314 P.3d at 1260–61).) Respondents also assert that the State
8 is only required to prove that a defendant intentionally or knowingly failed to obtain
9 medical care. (Doc. 308 at 7 (citing *Payne*, 233 Ariz. at 505–06, 314 P.3d at 1260–61).)
10 The Court finds Petitioner's counter-argument persuasive in this regard:

> [T]his does not render the *mens rea* element altogether meaningless. As the
> Arizona Supreme Court acknowledged in *Payne*, "the statute increases the
> offense level based on the actor's intent." *Id.* at 1261. The *mens rea* "is
> directed to the defendant's state of mind with regard to the danger to the
> child. . . . Thus, it is not sufficient that Petitioner intentionally undertook
> the act. Rather, he must have known or intended that the act would result in
> the possibility of harm to the child." *Varela v. Ryan*, No. CV-15-1971-JJT
> (JFM), 2016 WL 8252819 at *14 (Nov. 15, 2016).[] While Respondents
> focus on the "knowingly" mental state, and argue it is supportable by the
> evidence (*see* Doc. 319 at 7), they do not acknowledge that a jury could just
> have reasonably have found one of the lesser included mental states under
> the statutory definitions and the evidence now presented. For example, to
> find that Petitioner acted "recklessly," the jury would have had to find that
> Petitioner was "aware of and consciously disregard[ed] a substantial and
> unjustifiable risk" that Rachel was in risk of danger if he did not seek
> medical care. *See* A.R.S. §13-105(7)(c) (1994) (now codified at A.R.S.
> §13-105(10)(c)). Had a juror concluded that the State had failed to prove
> beyond a reasonable doubt that Petitioner caused Rachel's injuries, there is
> more than a reasonable probability that juror could decide that Petitioner
> acted either recklessly or negligently under Count [Four], or even that he
> was not guilty.

25 (Doc. 321 at 6–7.)

26    The Court has no doubt that Petitioner succeeded in demonstrating that, in light of
27 the new evidence, there is a reasonable probability that at least a single juror would have
28 entertained reasonable doubt as to the greater offense. *See Weeden v. Johnson*, 854 F.3d

- 14 -

1063, 1071 (9th Cir. 2017) (stating that reasonable probability is satisfied if only one juror would have struck a different balance). The Court finds Respondents have failed to demonstrate a strong or substantial likelihood of success on the merits of this argument. *See Leiva-Perez*, 640 F.3d at 966–68.

### 3. *Strickland* Analysis

Respondents next argue that they have a strong likelihood of success on their argument that the Court erred in its application of *Strickland*. Specifically, Respondents assert that the Court failed to apply *Strickland* deference and the presumption of competence and engaged in an incorrect prejudice analysis. The Court begins by addressing Respondents' deficient performance argument first.

#### a. *Deficient Performance*

During trial preparations, defense counsel sent forensic pathologist Dr. Keen a letter acknowledging Dr. Keen's agreement to review Rachel's autopsy report, and posing several questions for Dr. Keen to consider when reviewing the autopsy report, including whether Rachel's injuries could be dated and the amount of force necessary to inflict them. (EH Ex. 58 at 4799–800.)[4] Counsel confirmed in the letter that Dr. Keen had explained that his review of the autopsy "may involve obtaining access to photographs, slides and other physical evidence"; Bowman also confirmed that such access could "be arranged as necessary." (EH Ex. 58 at 4799.) Dr. Keen explained in these proceedings that he could not determine the timing of Rachel's injuries, other than a generic interpretation of "it's recent," just from the autopsy report; rather, he required access to slides to make a reliable determination in terms of hours or days. (EH RT 10/31/17 at 71, 73; EH Ex. 57 at 4101.) Dr. Keen explained he had no recollection of ever reviewing any photographs, slides, or other physical evidence at that time. (*Id.*) There was no record that he had ever received such evidence; if he had, it would have been recorded in two places:

---

[4] "EH Ex at ____" refers to the Bates stamped page number of exhibits admitted during Petitioner's evidentiary hearing in his federal habeas proceedings. "EH RT " refers to the reporter's transcripts from the Court's evidentiary hearing in his federal habeas proceedings.

the county sending the evidence (Pima County), and the county receiving the evidence (Maricopa County). (*Id.* at 71–72.) The record would probably also contain a billing for expenses such as copying. (*Id.* at 72.) Approximately one month later, on August 18, 1994, defense counsel and Dr. Keen spoke by telephone. (EH RT 10/30/2017 at 79–80; EH Ex. 12.) Neither defense counsel nor Dr. Keen can recall what was discussed during that call. (EH RT 10/30/2017 at 80; EH RT 10/31/17 at 74.) Four days later, on August 22, 1994, Rachel's body was released for burial with the consent of defense counsel and without a second autopsy being performed. (EH Ex. 36; EH RT 10/30/2017 at 81.) Dr. Keen did not testify at Petitioner's trial.

The Court found that defense counsel's brief consultation with Dr. Keen did not satisfy counsel's duty to investigate the timing of Rachel's injuries. (Doc. 299 at 65.) Although defense counsel initially posed a question to Dr. Keen as to whether Rachel's injuries could be dated, the evidence demonstrated that counsel failed to have Dr. Keen pursue the injury-dating investigation to its completion and that this failure was due to defense counsel's inattention and neglect, not reasoned strategic judgment. (*Id.*)

Respondents now argue that, because "[t]he record is silent about counsel's reasons for not providing tissue slides to Dr. Keen, and about the content of the conversation between Dr. Keen and counsel" the Court should have presumed counsel performed reasonably. (Doc. 308 at 9) (citing *Greiner v. Wells*, 417 F.3d 305, 326 (2d Cir. 2005), *Pinholster*, 563 U.S. at 191, *Atwood v. Ryan*, 870 F.3d 1033, 1055 (9th Cir. 2017)). Contrary to Respondents' assertion, the record was not "silent." Specifically, the Court found the following facts supported by the record and evidence presented at the evidentiary hearing: "Dr. Keen needed to be supplied with autopsy tissue slides and photographs in order to reliably assess the age of the injuries." (Doc. 299 at 65; *see also* EH RT 10/31/17 at 71–73; EH Ex. 57 at 4101.) "Counsel knew the slides were needed to make a reliable timeline assessment but failed to ensure they were provided to Dr. Keen." (Doc. 299 at 65; *see also* EH RT 10/20/17 at 99–100; EH Ex. 58; EH Ex. 24.D at 3).) Despite this knowledge, counsel failed to take steps to actually have Dr. Keen review the

slides.

There was no reasonable strategic basis for not providing the slides to Dr. Keen. Additionally, in a point Respondents seem to concede in this motion, the Court found the record refuted Respondents' allegations that the investigation into timing of injuries concluded when Dr. Keen reviewed the slides and came to the same conclusion as Respondents' expert, Dr. Howard, finding no proof to support that assertion, and ample evidence in the record to disprove it.

Further, the Court did not engage in speculation by finding that "[e]vidence that others may have caused Rachel's injuries further substantiated the need to investigate the medical evidence and its association with the timing of Rachel's injury." (Doc. 299 at 63.) Counsel need not investigate evidence "in every case, or even the ordinary case" but some "[c]riminal cases will arise where the only reasonable and available defense strategy requires consultation with experts." *Harrington v. Richter*, 562 U.S. 86, 106 (2011)). There was little physical evidence in the record directly implicating Petitioner, and, at the same time, there was evidence suggesting someone other than Petitioner may have assaulted Rachel; this was one line of evidence that should have put counsel on notice for the need to fully and completely investigate the timing of Rachel's injuries. Counsel recognized the significance of the timing of the injury when he stated to the jury that everything in the case centered on what happened on Sunday, May 1, "[s]pecifically a couple of disputed hours . . . ." (RT 4/6/95 at 60.) Nonetheless, after recognizing the importance of the medical timeline, in part due to the real possibility that someone other than Petitioner may have caused Rachel's injuries, counsel failed to follow through on this crucial investigation. If he had, Dr. Keen testified he would have disagreed with the State's expert's opinions with respect to the timing of Rachel's injuries. (EH RT 10/31/17 at 96–97.)

### b.    Prejudice

Respondents argue that the Court erred in assessing prejudice by failing to consider the impact of Petitioner's new evidence in the context of the trial record and in

light of rebuttal the State could have introduced.

First, Respondents incorrectly argue that the Court neglected to consider the damaging evidence in the record that either was or could have been admitted had Petitioner's new experts testified at trial that the timeline of Rachel's injuries excluded Petitioner. (Doc. 308 at 12.) Respondents assert that the Court failed to consider the impact of the testimony of Petitioner's experts at the evidentiary hearing, establishing his guilt on Count Four and, by extension, Count Five (felony murder). The Court however, clearly took this evidence into account, and found it relevant to the consideration of Count Four. The Court considered the expert's opinions in the Order specifically in the context of Count Four, and explained why this would not change the Court's finding of prejudice as to Count Four. (*See* Doc. 299 at 83–84.) The Court has already discussed, in Section III.A.2., above, why the Court believes Respondents have no chance of success on that point, but there can be no argument that the Court failed to consider it at all. (*See* Doc. 299 at 83 ("Petitioner's own experts in these proceedings do agree that Petitioner's failure to take Rachel to the hospital either caused or contributed to her death.").

The Court acknowledged the new expert's timeline did not exclude Petitioner, rather, it changed the relevant time period to a time where no attempt was ever made to determine if Petitioner had exclusive access to Rachel, or if anyone else did for that matter. Even if, as Respondents suggest, the experts could not provide a definitive medical diagnosis for Rachel's injuries and could not rule out Petitioner as the perpetrator, (*see* Doc. 308 at 12, n1), there is more than a reasonable probability that a jury, applying a presumption of innocence, would not have convicted Petitioner if the most the State could prove was that Petitioner could not be ruled out as the perpetrator of indeterminate injuries.

Finally, Respondents assert that additional evidence could have been presented regarding Petitioner's previous "assault" of Rachel. Respondents state that this included that Petitioner had assaulted Rachel weeks before the fatal beating; Rachel identified Petitioner as the assailant for that prior abuse, and was scared of him for several days

afterwards; two children saw Petitioner beating Rachel in the same manner that he previously beat his own children; Petitioner repeatedly lied to others about Rachel's injuries and seeking medical care for her; and Rachel specifically identified Petitioner as her attacker for the fatal injuries while dying. (Doc. 290, at 2–14.) Respondents fail to explain how Petitioner's experts' testimony would have opened the door to this evidence at trial. Furthermore, Petitioner correctly points out several instances where the record would refute the allegations or be inadmissible. (*See* Doc. 311 at 10 (*citing* EH Ex. 1 at 1187–88 (Becky told Det. Downing that Rachel got the black eyes after a girl hit her with a rake after Rachel tripped over a dog); EH Ex. 66 at 5136–37 (Terry Richmond explains that he saw Rachel with a black eye about a week before she became very ill and was told that Rachel tripped over a dog); *id.* at 5191–92, 5200 (Angela similarly explained that Rachel got black eyes when a girl hit her with a rake after she tripped over the dog); *id.* at 5189–90 (Rachel explained to Angela that a little girl, not Barry, hit her with the rake). Strong evidence that Petitioner lied regarding seeking treatment for Rachel was already before the jury in his original trial and thus is not additional rebuttal evidence. Rachel's alleged statements regarding the "shoe bar" were excluded from Petitioner's trial as inadmissible hearsay, (ROA 106; RT 4/4/95 at 138–50)), and Respondents have not explained how the medical evidence would have opened the door to that hearsay. Finally, the statements of the Lopez children were before the jury, and, as the Court explained in the Order, do not counter the compelling medical evidence. Rather, as Respondents admitted in briefing before the Ninth Circuit, the Lopez children's testimony was "impeached extensively at trial," and thus has limited evidentiary value. *See* Respondents' Response to Motion for Remand in Light of *Martinez v. Ryan* (Doc. 63) at 14–15, *Jones v. Ryan*, No. 08-99033 (9th Cir. Aug. 19, 2014).

The Court finds Respondents have not demonstrated a strong or substantial likelihood of success on the merits of Respondents' *Strickland* argument. *See Leiva-Perez v. Holder*, 640 F.3d at 966–68. Absent a strong showing that Respondents are likely to succeed on appeal, Respondents are not entitled to a stay. "It is not enough that the

chance of success on the merits be 'better than negligible.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Sofinet v. I.N.S.*, 188 F.3d 703, 707 (7th Cir. 1999)). "[M]ore than a mere 'possibility' of relief is required." *Id.* (quotation omitted).

Respondents argued during the hearing that even if they have less than a substantial likelihood of success, they may, at the other end of the continuum, demonstrate serious legal issues and that the balance of hardship tips in their favor to obtain a stay. (RT 10/12/18 at 22–23.) Under the traditional test, an applicant for a stay must show: (1) a strong likelihood of success on the merits, or, (2) a combination of probable success on the merits and the possibility or irreparable injury, or (3) that serious questions are raised and the balance of hardships tips sharply in the applicant's favor. *See Winter*, 502 F.3d at 862). Because the Respondents have failed, on the first end of the continuum, to show a strong likelihood of success on the merits, a probable success on the merits, or even that serious questions are raised, the inquiry ends. The Court need not balance the hardships to determine if a stay should be granted. Accordingly, the Court denies Respondents' motion to stay the Order.

## IV.    MOTION FOR RELEASE

Because the Court denied Respondents' motion for a stay, the Court need not analyze the remaining factors to determine if Petitioner should be released pending appeal. The parties took positions during the hearing that if the Court denies the stay, their mutual preference was for the State to determine release conditions after this Court's conditional writ goes into effect and the State proceeds with a retrial. (RT 10/12/18 at 4, 19.)

## V.    CONCLUSION

In conclusion, the Court has taken into account the traditional stay factors articulated in *Hilton* and denies Respondents' motion for a stay. The Court finds that Respondents have demonstrated neither a strong showing that they are likely to succeed on appeal nor a substantial case on the merits that would warrant a stay pending appeal. The Court further finds that consideration of the other factors does not tip the scales in

Respondents' favor because they have not raised a serious legal question. Accordingly, the Court denies the Respondents' request for a stay. Respondents have indicated that if the stay is denied the State is prepared to initiate pretrial proceedings by October 29, 2018, the date this Court's conditional writ takes effect.

Accordingly,

**IT IS HEREBY ORDERED** Respondents' Motion to Stay Court Order of July 31, 2018 (Doc. 308) is **DENIED**, and Petitioner's Cross-Motion for Release Pursuant to Federal of Appellate Procedure 23 (c) (Doc. 311) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the State must initiate trial proceedings by October 29, 2018, and that trial in this matter must commence by March 13, 2019.

**IT IS FURTHER ORDERED**, that in the event the Ninth Circuit does not stay this Court's order, Respondents shall file a status report on October 29, 2018, stating what steps have been taken to reinitiate proceedings, and a second status report on January 31, 2019, indicating the status of Petitioner's retrial proceedings.

**IT IS SO ORDERED**

Dated this 17th day of October, 2018.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE